Madhuri Trivedi,
ATTN: Women Who Code
44 Tehama St, 5th Floor, San Francisco, CA 94105
Fax: 708-778-4859 Phone: (650) 242-5135
Email: orangeinc@protonmail.com

# U.S. DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Madhuri Trivedi** | Case No.: |
| | Judge: |
| Plaintiff, | **COMPLAINT AND REQUEST FOR INJUNCTION** |
| v. | Whistleblower Retaliation under Dodd-Frank Act, 15 U.S.C. §78u-6(h); SEC Rule17 CFR § 240.21F-2 |
| **General Electric Company,** | Securities Exchange Act of 1934,15 U.S.C. 78j(b),Rule 17 C.F.R. 240.10b-5 |
| Address: General Electric Company | |
| 41 Farnsworth Street | |
| Boston, MA 02210, | Wrongful termination in violation of public policy |
| **GE Healthcare,** | |
| Address: General Electric Company | Violations of whistleblower protections under Sarbanes-Oxley Act ,8 U.S.C. § 1514A, et seq. ,Pub. L. 107-204 |
| 41 Farnsworth Street | |
| Boston, MA 02210, | |
| **Larry Culp, CEO of GE in his individual and official capacity,** | 8 U.S.C.§ 1324b(a)(1),8U.S.C.§1324b (a)(5)Prohibition Of Intimidation Or Retaliation |
| Address: General Electric Company | |
| 41 Farnsworth Street | Disparate treatment, intentional discrimination and retaliation in violation of Title VII |
| Boston, MA 02210 | |
| **GE board of directors,** | 45 CFR § 160.316 Refraining from intimidation or retaliation, Public Law 104-191. |
| Address: General Electric Company | |
| 41 Farnsworth Street | |
| Boston, MA 02210, | Violation of Dodd Frank act – Section 1036 -12 U.S. Code § 5536(a)(1) and 12 U.S. Code § 5536(a)(3) |
| **Fragomen, Del Rey, Bernsen & Loewy,** | |

**LLP**
Address: <u>1400 Broadway, New York, NY</u>
<u>10018, United States</u>

**Jenny Schrager, Partner** at Fragomen,
Del Rey, Bernsen & Loewy, LLP in her
individual and official capacity
Address: <u>1400 Broadway, New York, NY</u>
<u>10018, United States,</u>

**Mike Swinford,** Former CEO of GEHC
services in his official and individual
capacity,
Address: 155 franklin road, Brentwood, TN
-37027

**Carl Conrath,** senior engineering
manager, GE Healthcare in his official and
individual capacity,
Address: One Amgen Center Drive
Thousand Oaks, CA
91320-1799

**Foley & Mansfield law firm,**
Address: 250 Marquette Avenue ,Suite
1200  Minneapolis, MN 55401

Defendants.

Section 1057, Consumer Financial
Protection Act (CFPA) , 12 U.S.C.
5567

45 CFR § 164.530(g) standard:
refraining from intimidating or
retaliatory acts
National Defense Authorization Act -
NDDA, 10 U.S.C. §2409  Subpart 203.9

Breach of the implied covenant of good
faith and fair dealing
Breach of contract good faith,
Breach of  fiduciary duty

Promissory estoppel, equitable
estoppel,

Equitable tolling

9 U.S. Code § 12,
9 U.S. Code § 10(a)(3),
9 U.S. Code § 10(a)(2) 9 U.S. Code
§ 10(a)(1) and challenging arbitration
award under common law

Jury trial demanded.

Date Action filed:

## COMPLAINT AND REQUEST FOR INJUCTION

Plaintiff Madhuri Trivedi("Plaintiff"), for causes of action against defendants **General Electric,**

**GE Healthcare, Larry Culp, GE board of directors, Fragomen, Del Rey, Bernsen & Loewy,**

**LLP, Jenny Schrager, Mike Swinford, Carl Conrath, Foley & Mansfield law firm**

in this Complaint for Damages ("Complaint") as follows:

Page - 2 -of 188  COMPLAINT          Madhuri Trivedi v. General Electric et al.

1    1. Frank Abagnale, the infamous impostor from Catch Me If You Can, said

2   "Every breach, without exception, happens because somebody in that company did something

3   they weren't supposed to do or somebody failed to do something they were supposed to do—

4

5   didn't fix its tech, it didn't update patches, so the hackers got millions of pieces of data."

6    2. Plaintiff Madhuri who didn't work for the government nor had union protections,

7   blowing whistle given that HER H1B and whole greencard in GE's hand and anything would

8   jeopardize and destroy her immigration; and could impact her career;  ===with all this

9   consequences She boldly and courageously STOOD up for doing what she believed was legal for

10   her to do , not to join GE fraud scheme, cyber security vulnerabilities , product defects,

11

12   violations ---TOOK high risk road and suffered backslash, retaliation.

13    3. Trivedi's position is corroborated by Scott Erven, an independent cybersecurity

14   Researcher. Finally GE and Department of homeland security(DHS) issued ICERT ALERT in

15   February/March 2018(EXHIBIT 1) for cybersecurity vulnerabilities related to many types of GE

16   medical devices worldwide. Following GE devices were affected.

17   **AFFECTED PRODUCTS**

18   The following GE Healthcare products are affected:

19   - Optima 520, which are medical imaging systems, all versions,

20   - Optima 540, which are medical imaging systems, all versions,

21   - Optima 640, which are medical imaging systems, all versions,
     - Optima 680, which are medical imaging systems, all versions,

22   - Discovery NM530c, which is a nuclear medical imaging system, versions prior to Version

23     1.003,
     - Discovery NM750b, which is a dedicated breast imaging system, versions prior to Version

24     2.003,

25   - Discovery XR656 and Discovery XR656 Plus, which are digital radiographic imaging systems,
       all versions,

26   - Revolution XQ/i, which is a medical imaging system, all versions,

27   - THUNIS-800+, which is a stationary diagnostic radiographic and fluoroscopic X-ray system,
       all versions,

28

- Centricity PACS Server, which is used to support a medical imaging archiving and communication system, all versions,
- Centricity PACS RA1000, which is used for diagnostic image analysis, all versions,
- Centricity PACS-IW, which is an integrated web-based system for medical imaging, all versions including Version 3.7.3.7 and Version 3.7.3.8,
- Centricity DMS, which is a data management software, all versions,
- Discovery VH / Millenium VG, which are nuclear medical imaging systems, all versions,
- eNTEGRA 2.0/2.5 Processing and Review Workstation, which is a nuclear medicine workstation for displaying, archiving, and communicating medical imaging, all versions,
- CADstream, which is a medical imaging software, all versions,
- Optima MR360, which is a medical imaging system, all versions,
- GEMNet License server (EchoServer), all versions,
- Image Vault 3.x medical imaging software, all versions,
- Infinia / Infinia with Hawkeye 4 / 1, which are medical imaging systems, all versions,
- Millenium MG / Millenium NC / Millenium MyoSIGHT, which are nuclear medical imaging systems, all versions,

- Precision MP/i, which is a medical imaging system, all versions, and
- Xeleris 1.0 / 1.1 / 2.1 / 3.0 / 3.1, which are medical imaging workstations, all versions.

**IMPACT**

Successful exploitation of this vulnerability may allow a remote attacker to bypass authentication and gain access to the affected devices.

Impact to individual organizations depends on many factors that are unique to each organization. NCCIC recommends that organizations evaluate the impact of this vulnerability based on their operational environment and specific clinical usage.

...............................................

For the affected products, a CVSS v3 base score of 9.8 has been calculated; the CVSS vector string is (AV:N/AC:L/PR:N/UI:N/S:U/C:H/I:H/A:H)

**VULNERABILITY DETAILS**

**EXPLOITABILITY**

This vulnerability could be exploited remotely.

**EXISTENCE OF EXPLOIT**

Vulnerability information about the affected products is publicly available.

**DIFFICULTY**

An attacker with a low skill level would be able to exploit this vulnerability.

4. *Scott Erven reported these cyber vulnerabilities to GE in 2014.*

5. Plaintiff Trivedi started bringing up severity and sense of urgency/liability/ to fix address/stop integrating and shipping medical devices with InsiteEXC to GE from 2011.

6. *Insider threat mitigation didn't exist..as Bill Baribux –GE architect testified (EXHIBIT 3) InsiteEXC failed all security tests on day ONE in year 2008 ;so they moved it from public facing to inside GE network but GE has 300,000 employees and  as Scott Erven proved that InsiteEXC was vulnerable from hospital/outside GE network as well.*

7. From my phone conversation with Scott on Feb 22nd 2019 he was also wondering that how come GE not address it/(no fix, patch or recall) despite having lots of press around it for 4 years and many security researchers knew about it and wrote. After Scottt report in 2014 ; vulnerabilities were unpatched even though it was wide open to be hacked and manipulated

8. (Somehow all of a sudden GE released a patch in Feb/March 2018.)

9. This is just a tip of an icerburg –vulnerability Scott reported ;was few of 465 total critical defects.

10. GE knowingly conspired, deceived, fraudulently sold medical device products and

services to customers, investors and government by not publicly disclosing defects, cybersecurity

vulnerabilities, also serious hackable –for years for sake of generating revenue, money while

putting public health and safety at risk and mercy/hands of hackers. GE made numerous press

releases, released you tube video, product brochures for surgery, ultrasound and all kind of

medical devices with misleading, false information.

11. The company's "scheme to defraud its customers by knowingly selling defective

and potentially dangerous remote control product on most of all their medical devices". GE

fraudulently induced the federal government (including the Department of Defense and Veterans

Administration) , state governments to buy its defective product through both misstatements and

material omissions. Each of us has the right to expect any medical equipment used for our

medical care to be safe and effective, but we are all placed at great risk when medical equipment

companies violate our trust and knowingly sell equipment that is defective," the evidence shows

GE's callous disregard for the fact that these defective product(s)—which they consciously,

aggressively sold after knowing existence defects—could mean life or death for unsuspecting

patients, loss/theft of their protected health information(PHI), wrong diagnosis of life threatening

disease or not having timely diagnosis due to cyber security vulnerabilities/defects. This case is

not just about recouping money for taxpayers—**it is an indictment of a company that placed a**

**higher premium on profits than public health and safety."- Public policy violation as well.**

12. On the day Trivedi was terminated by GE, GE architect Bill Barbiuax told Trivedi

that "you did the RIGHT thing, but GE is BIG. Nothing will happen to GE.  Bill and GE sending

a message" MIGHT is RIGHT" Also by sending a message to all current and future employee

that if "you speak up against GE for any/all wrongdoing GE is DOING; We RETALIATE like

what we Did to Madhuri Trivedi."  Then GE created "FILE TO FIRE" – generate paper trails to frame her to show her firing.( Few attorneys told Trivedi that "GE did was File to FIRE)

13. United States Supreme Court

DESERT PALACE, INC., dba CAESARS PALACE HOTEL & CASINO v. COSTA(2003) No. 02-679

For instance, in Reeves v. Sanderson Plumbing Products, Inc., 530 U. S. 133 (2000), **we recognized that evidence that a defendant's explanation for an employment practice is "unworthy of credence" is "one form of circumstantial evidence that is probative of intentional discrimination." Id., at 147 (emphasis added).** The reason for treating circumstantial and direct evidence alike is both clear and deep-rooted: "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." Rogers v. Missouri Pacific R. Co., 352 U. S. 500, 508, n. 17 (1957).

14. **See Furnco, supra, at 580. The ultimate question in every disparate treatment case is whether the plaintiff was the victim of intentional discrimination. This lawsuit and treatment Trivedi received shows that GE was engaged in intentional discrimination.**

15. Several immigration attorneys mentioned to Trivedi over phone right at the time when she was fired that

> "GE has finance/accounting cooked books, checked history. Since next step in my immigration while I was at GE was to file form I140 with DHS/USCIS I 140 ; in I 140 form GE was required to show their finances and total number of US based employees. GE didn't want to SUBMIT TRUE finances to government. So GE got rid of plaintiff and made up PRETEXT issues of relationship skills to fire."

16.   I was deprived from my rights to litigate these claims earlier along with several

other reasons IMPORTANT REASON as due to withdrawal of my H1B B lawyers earlier DIDN"T provide proper legal advice .

### THE PARTIES

17. Madhuri Trivedi is a plaintiff. Madhuri is a citizen of India.

Plaintiff Trivedi came to USA on Spouse H4B visa in 2003, because of domestic violence and other abuse from her Ex-husband she got divorced in 2006;after divorce that was on Student Visa-F1 and then on H1 B visa.

18. Madhuri worked for GE in Boston, MA and Waukesha, Wisconsin.

Defendant General Electric is a corporation incorporated in New York, currently Headquartered in Boston and during Plaintiff's employment was HQ in Connecticut and GE is a multinational corporation.

19. On January 03 and Jan 05,2019; J P Morgan wall street analyst covering GE **Mr. Stephen Tusa  contacted GE ,CEO- Larry Culp** and sent them EXHIBIT 2 along with below email.

But GE didn't reply to Mr. Tusa nor to me ever.

---

Received: **Wednesday, January 9, 2019 4:02 PM**
From: **Tusa, Stephen X stephen.tusa@jpmorgan.com**
To: Madhuri **Trivedi**
RE: Update

---

Nothing yet, sorry

**From:** Trivedi Madhuri
**Sent:** Wednesday, January 09, 2019 10:06 AM
**To:** Tusa, Stephen X
**Subject:** Update

Hello Mr. Tusa, Any updates from GE? Is it too soon to follow up to GE.

1   Thanks and regards,

2   Madhuri

3   Sent with ProtonMail Secure Email.

4

5   This message is confidential and subject to terms at:
    https://www.jpmorgan.com/emaildisclaimer including on confidentiality, legal privilege, viruses
6   and monitoring of electronic messages. If you are not the intended recipient, please delete this
    message and notify the sender immediately. Any unauthorized use is strictly prohibited.

7

8   _____

9   Sent: **Thursday, January 3, 2019 11:20 AM**

10  From: **Madhuri Trivedi**

11  To: **stephen.tusa@jpmorgan.com stephen.tusa@jpmorgan.com, Madhuri Trivedi**

12  **Former GE employee, GE fraud, related issues**

13

14  _____

    Respected Mr. Stephen Tusa,
15  I didn't know earlier that you cover GE hence I didn't sent you email.
    Below email including with attachment was sent to people shown below.
16
    I need a closure about GE mess and difficulties. I was busy in things so took a break from all this
17  headache causing things related to GE,immigration fight. I had bad experience with attorneys in
    past so doing all this myself and have almost become law enthusiastic apart from techie-startup
18  founder.
19  **I am hoping that you would reach out to GE and tell them to leave me alone and fix it- do**
    **something. GE hasn't responded this email at all. This email below was part of the supreme**
20  **court writ I submitted.  I am thinking to send below email which I sent to John Flannery to**
    **Larry Culp now that he is a new CEO but I don't think he would respond or take any**
21  **action like John and Jeff Immelt he will also trash it. (who cares attitude)**
22  My blogpost has lots of details about my lawsuit against DHS.
    Blogpost:
23
24  https://medium.com/@madrtrivedi/after-investing-15-years-in-this-country-and-contributing-to-
    us-healthcare-and-economy-including-9c91cf93beac
25  I don't want to come out as someone who is not letting go wrong , illegal things GE did to me but
    it is that GE is a bad company and they have done illegal things to me and getting away .
26  I made one mistake -instead of going to supreme court for DHS lawsuit -I should have filed
    another new lawsuit in another federal court but now lessons learned.
27
28  **Hope to hear from you SOON. Thanks and regards,**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

20.**Below is my email to Larry Culp and Ge board of director along with JPM analyst Steve Tusa.**

---

Received: **Thursday, January 24, 2019 2:58 PM**

From: **Madhuri Trivedi**

To: **directors@corporate.ge.com directors@corporate.ge.com, Madhuri Trivedi, larry.culp@ge.com larry.culp@ge.com, Mike.Holston@ge.com Mike.Holston@ge.com**

---

Mr.Larry Culp and GE board of directors,
Please respond and resolve. Any other company of GE size would have responded and took action but this is GE.


Sent: **Tuesday, January 22, 2019 1:54 PM**

From: **Trivedi @protonmail.com To: directors@corporate.ge.com**

Fw: GE stack ranking

------- Original Message -------
On Sunday, January 6, 2019 6:02 AM, Trivedi  wrote:

Mr.Tusa,
So after joining GE healthcare  in Wisconsin - GE project lead and manager started issues when I was not covering up things in tests (participating in their scheme which for a while they didn't tell me there were 600 critical defects & harassing me-I found out these defects and related on my own when tests started failing ) and signing off on tests.At the same time, I found a workaround that would allow 200-400 engineers to remote access (patch work) devices which for 3 months nobody found solution & these engineers couldn't do their job.
There was HR training on how to use GE performance system and what it means- (Which GE dropped after getting rid of me as I raised issues in my legal fight that it is broken-stacking employees against each other )... SO my HR manager was giving training and his boss Adam Holton(he was head of HR for entire $5 billion GEHC serivce business) was sitting next to him (I didn't know who Adam was...Plus HR training was right next to GEHC serivce CEO's office..I was new and I thought that since GEHC HQ is in UK-London- management sits there--I had no clue about his office next and some of senior management people sitting in the training.Given HR manager knew what was going on through my manager talking to him--HR manager

sarcastically in threatening way mentioned about how GE stacks employees against each other - so I got that..I said in that meeting that "good and bad both left- bell curve --mediocre band(mediocre word I spoke in lower slow tone/volume and then I stopped )"

So GE top management was aware that I understood these things..
.I had read prior to joining GE that Jack Welch introduced stacking employees.

******************END of  EMAIL

21. Put that this paragraph reference in each claim

NOTE: During plaintiff's arbitration, plaintiff  Trivedi raised concern that GE's stack ranking performance appraisal system is not working. Soon after Trivedi's arbitration; GE abandoned its stack ranking performance appraisal.

*"This summer, GE underline announced it was abolishing its "rank and yank" system, which assigns employees a performance score relative to their peers"*

*https://www.fastcompany.com/3052135/why-the-annual-performance-review-is-going-extinct*

22. **Additional  email to Larry Culp and Ge board of director along with JPM analyst Steve Tusa.**

------- Original Message -------On Tuesday, January 22, 2019 1:42 PM, From:

**Madhuri Trivedi**

To: directors@corporate.ge.com, Madhuri Trivedi ,Tusa, Stephen X"

<stephen.tusa@jpmorgan.com>wrote:

GE board of directors,

Mr. Stephen Tusa has kindly forwarded my email below to GE CEO Larry Culp. But GE hasn't responded to Mr. Stephen Tusa's email. Earlier I didn't know Mr. Tusa covered GE hence I didn't

included him in the email sent which is also part of my supreme court writ. Board of directors have lots of duty fiduciary, ethical, professional , legal and more.

GE did clean up of board of directors and CEOs after my legal fight and email but still hasn't responded to me. Also GE ditched it's famous Stack ranking system for employee performance review which I raised as broken in my arbitration with GE..Despite that are admitting it is GE's problem.

GE should thank ,me for that I brought all these issues which needed attention.

I look out to hear from you SOON.NOTE:This email below was part of the supreme court writ I submitted.  My phone number: 650-242-5135My linkedin: www.linkedin.com/in/trivedim

        23. Larry Culp has all the details as I sent in January 03 and Jan 05, 2019 but he has IGNORED email and this matter;otherwise he could have settled this matter and done JUSTICE; but didn't even care to RESPOND. He is here as a defendant in his individual and official capacity.

------- Original Message -------
On Wednesday, January 9, 2019 4:02 PM, Tusa, Stephen X <stephen.tusa@jpmorgan.com> wrote:

Nothing yet, sorry

        24. I sent email to former CEO Jeff Immelt in 2013 and 2014.

        25. I sent /emailed EXHIBIT 2 to John Flannery in 2017. I also called John Flannery assistant and she acknowledged that Mr. Flannery has my email and have read it. —Ed Garden of Train partners who became GE board of directors around that time was also copied in this email- along with directors@corporate.ge.com...

        26. Mike Swinford, former CEO of GEHC services knew this matter even before I was

Page - 12 -of 188 COMPLAINT        Madhuri Trivedi v. General Electric et al.

illegally terminated.. Mr. Swinford and GEHC CTO Mike Harsh even came to my arbitration hearing. (EXHIBIT 24)

27. **GE boards of directors are body governing public company are hence they are defendants.** Including but not limited to SEC. 101<15 USC 7211>Establishment; Administrative Provisions.(c)Duties of the Board

I emailed them EXHIBIT 2 at directors@corporate.gc.com in 2016-2017 as well.

28. I contacted them multiple occasions since I was illegally terminated.

29. Also board of directors like Robert Swireinga and Susan Hockfield both knew this matter since 2013-2014.

30. I spoke with Robert on PHONE --and Robert also sent back email with INQUIRY he did to GE

---------- Forwarded message ----------
From: **Robert J. Swieringa** <rjs22@cornell.edu> Date: Tue, Dec 3, 2013 at 12:23 PM
Subject: RE: what happened at GEHC To: Madhuri <mcis99@gmail.com>
Madhuri,
In response to your emails to me and our phone conversation today, I have made inquiries with people at GE and will let you know about any developments. Thanks, Robert Swieringa
Robert J. Swieringa
Professor of Accounting
Anne and Elmer Lindseth Dean Emeritus
Johnson Graduate School of Management
337 Sage Hall
Cornell University
Ithaca, NY 14853-6201
Phone: 607-255-0422
Fax: 607-255-6889
        Email: rjs22@cornell.edu

   ✓ I contacted Susan Hockfield via emails that I sent her to her MIT email address and her assistant acknowledged (I spoke with Susan's assistant on phone )she read and after responded mentioning that "she is too high as a director to get involved in an individual matter of mine ";

✓ Even though I was MIT alum and she was MIT president. But she chose not to take any action and didn't fulfill her fiduciary and other duty obligation.

✓ Robert and Susan are no longer board of directors.

✓ Robert did inquiry(EXHIBIT 3) and GE stonewalled ,didn't do anything an on top of that GE complained to arbitrator that I have contracted GE board of director and arbitrator became more hostile after learning this.

✓ GE is required to disclose what happened to GE board of director Robert Swierienga's INQUIRY –any and all paperwork related to that; Since I don't have GE internal communication from Robert to GE or vice versa..Only thing I have is my email to Robert and Robert's email to me mentioning that He did INQUIRY.

✓ I emailed Larry Culp  and GE board of directors; I forwarded JPM analyst Stephen Tusa's email.–on January 22nd 2019 and again on January 24th 2019.

✓ **I had emailed GE board of directors earlier exhibit 2 in 2017.**

31. **Jenny Schrager, Partner at Fragomen, Del Rey, Bernsen & Loewy, LLP ; is a Defendant in her individual and official capacity in this lawsuit.**

32. Jenny's law firm Fragomen, Del Rey, Bernsen & Loewy, LLP is a defendant in this lawsuit.

33. **Carl conrath was a senior engineering manager, involved through out from hiring to firing me, hence he is party in this case**

34. **Foley & manfield was a lawfirm hired** and paid to send GE letter, look into quitam and provide legal advice including immigration for my matter, **they are party in this case.**

## VENUE

35. 28 U.S.C § 1391 venue is proper since GE has office(s), reside and have operations in this district. Plaintiff Trivedi also worked at GE Intelligent platforms, Boston.

36. Till her last day at job at Wisconsin; Same GE Intelligent platforms , Boston management and Director overseeing her at Boston were involved in funding though GE corporate (GE parent company itself) at the project Trivedi was assigned to work on at GE Healthcare, Wisconsin. Though Boston director Reema Poddar was not directly interacting with Trivedi via email, phone etc while she was working at Wisconsin.

37. At GE Intelligent platforms Boston; Trivedi her job related to H1 B visa sponsoring was done through a division of GE; GE Transportation who processed her Department of labor LCA and H1 B filing. At GE Boston , Trivedi worked on project that was funded through GE corporate( GE parent company).

38. *As per 28 U.S. Code § 1391. Venue generally (b)Venue in General. A civil action may be brought in— (1) a judicial district in which any defendant resides,* <u>Since GE and GE healthcare are defendants and reside related to their offices, business, operation and jurisdiction of US district of  Massachusetts court as per *28 U.S. Code § 1391 (c) For purposes of venue under this*</u> *chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced*

Citing Judicial Improvements and Access to Justice Act, §1013(a), 102 Stat. 4669 (emphasis supplied)

*PUBLIC LAW 100-702—NOV. 19, 1988 102 STAT. 4669 -SEC. 1013. CORPORATE VENUE. (a) IN GENERAL.—Section 1391(c) is amended to read as follows: "(c) For*

*purposes of venue under this chapter, a defendant that is a corporation shall be deemed*

*to reside in any judicial district in which it is subject to personal jurisdiction at the time*

*the action is commenced.*

39. Here GE, GE healthcare defendants considered to reside

40. Thus, 28 U.S.C. §1391 permits a corporation to be sued in any judicial district in which it is licensed to do business or is doing business in that such judicial district is regarded as the residence of such corporation for venue purposes.

41.          As noted above, under 28 U.S.C. §1391, venue against a corporation will lie in any judicial district in which it is incorporated, licensed to do business or is doing business.

42. Defendant General Electric and GE healthcare – are considered "corporation" and are "multistate" corporations. GE is incorporated in New York.

43. GE and GE healthcare is licensed to do business and are doing business in judicial district of district of Massachusetts.

as such it is regarded as the residence of GE and Ge healthcare for VENUE purposes.

44. Continuous, Systematic Contacts for court is permissible when the defendant's activity in the district is continuous and systematic-- Defendants' GE healthcare and GE board of directors are considered to have continuous and systematic contact with this district court forum in district of Massachusetts ;

45. GE is headquartered in Boston, MA and Boston is GE's principal place of business hence GE is considered at home ------------where it is incorporated or principal place of business..

46. Complaint alleges violations of federal securities laws in connection with GE's public filings. As per

15 U.S. Code § 78aa. Jurisdiction of offenses and suits (a) In general The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the **United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder**, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder................Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

47. The phrase "this chapter" in  15 U.S. Code § 78aa refers to Chapter 2B of Title 15 of the United States Code – that is, 15 U.S.C. §§ 78a to 78mm. Hence Venue for this court is proper for cause of actions bought by Trivedi under Chapter 2B of Title 15 of the United States Code.

48. The Exchange Act's venue provision establishes nationwide service of process and, this Court also has  jurisdiction over her remaining claims as well.

49. Jenny Schrager, Partner at Fragomen, Del Rey, Bernsen & Loewy, LLP considered GE business partners and GE defendants ; Hence VENUE is proper for jenny and Fragomen defendants.

50. VENUE can be agreed upon by CONSENT.

51. GE board of director's official address is Boston HQ> Larry Culp's work address is also Boston HQ. SEC filings for GE have Boston HQ as its address.

## JURISDICTION

52. This court has jurisdiction over plaintiff's claims pursuant to Whistleblower Retaliation under Dodd-Frank Act 15 U.S.C. §78u-6(h)(B)(i)-An individual who alleges discharge or other discrimination in violation of subparagraph (A) may bring an action under this subsection in the appropriate district court of the United States for the relief provided in subparagraph (C).

As per 15 U.S.C. §78u-6(h)(1)(B) (iii) ;within six  to ten years after the date on which the violation of subparagraph (A) occurred. **GE can't force mandatory arbitration agreement under this/whistleblower provisions.** Plaintiff was terminated on May 31, 2013.

Plaintiff has bought these claims within statute of limitations  after the date on which violations occurred/ she became aware.

Therefore, this court has original Jurisdiction of this matter

53. This court has jurisdiction over Securities Exchange Act of 1934,15 U.S.C. 78j(b), and Rule 17 C.F.R. 240.10b-5

54. This court has jurisdiction over all defendants' (mentioned in this complaint)violation of common law.

55. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (federal question statue), 28 U.S.C. § 1343

56. This Court has jurisdiction over plaintiff's claims pursuant to 45 CFR § 160.316 Refraining from intimidation or retaliation, Public Law 104-191.

57. This case arises, in part, under federal statutes including Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000C, et. seq. Therefore this court has original jurisdiction.

58. 8 U.S.C.§ 1324b(a)(1),8U.S.C.§1324b (a)(5); federal statutes hence this court has original jurisdiction for claims brought under these statutes.

59. This court has jurisdiction over claims pursuant to *10 U.S.C. 240. 10 U.S.C. 2409*

60. This Court has original subject matter jurisdiction over claims brought under **"Relief available under Dodd Frank act -Section 1055 -12 U.S. Code § 5565(a) (1) "** because it concerns federal consumer financial law, 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331 where court has original jurisdiction, CFPA, 12 U.S.C. § 5536(a)(1), CFPA, 12 U.S.C. § 5536(a)(3), 28 U.S. Code § 1367 as it related to other claims brought in this complaint where court has original jurisdiction. Private cause of action is available under **12 U.S. Code § 5565(a) (1).** Though it can be to consumers but in this circumstances to Trivedi as well.

61. This court has jurisdiction pursuant to <u>Sarbanes-Oxley</u> Act, PUBLIC LAW 107–204.As per *29 CFR § 1980.103 (c)Place of filing. The complaint should be filed with the OSHA office responsible for enforcement activities in the geographical area where the <u>employee</u> resides or was employed, but may be filed with any OSHA officer or <u>employee</u>. Addresses and telephone numbers for these officials are set forth in local directories and at the following Internet address: http://www.osha.gov.* As Plaintiff filed OSHA department of labor complaint in Timely manner with Wisconsin-Chicago regional office via fax on May 3rd, 2014(EXHIBIT 6, EXHIBIT 7).. OSHA erroneously responded on July 14, 2014 that it doesn't fit any of their 22 statutes. (EXHIBIT 8).

**Below is email chian with OSHA-DOL regional supervisor Robert Kus, Benjamin, Sherrill and OSHA investigator who was located in Milwaukee Ms. Tamara Simpson. I replied to Tamara's email below with my Termination Date.**

**From:** Simpson, Tamara - OSHA [mailto:Simpson.Tamara@dol.gov]
**Sent:** Wednesday, June 04, 2014 2:22 AM**To:** Madhuri Trivedi
**Subject:** RE: info
Madhuri,Could you provide me your termination date? Thank you.

*Tamara Simpson*
Investigator
Whistleblower Protection Programs
US Department of Labor/OSHA
310 W. Wisconsin Ave., Room 1180
Milwaukee, WI 53203
(414) 297-3315, ext. 235
(414) 297-4299 fax
Simpson.Tamara@dol.gov

**From:** Madhuri Trivedi [mailto:madhuritrivedi@hotmail.com]
**Sent:** Wednesday, May 14, 2014 5:12 AM**To:** kus.robert@dol.gov**Subject:** madhuri
I spoke with Tamara. She will contact me soon for further things. Regards and Thanks for your assistance.
Sincerely,Madhuri

**From:** Madhuri Trivedi [mailto:madhuritrivedi@hotmail.com]
**Sent:** Wednesday, May 14, 2014 1:30 AM**To:** kus.robert@dol.gov**Subject:** info
Thanks for your time.

I kind of want to give up now. After prolonged and several delays and dragging it ; in this private arbitration  . Also arbitration  lacked due process.
I did arbitration because my MIT professor requested that I do it & said that"you are so afraid of arbitration; company will take you there".  He mentioned you have nothing to lose.. you can start your own company in future.
I will talk to employment attorney in chicago area today.
Sincerely,Madhuri

> **On May 13, 2014, at 1:30 PM, "Kus, Robert - OSHA" <Kus.Robert@dol.gov> wrote:**
> **> The case is assigned to Tamara Simpson at the Milwaukee area office.  She can be reached at 414-297-3315.>**
> -----Original Message-----
> From: Madhuri Trivedi [mailto:madhuritrivedi@hotmail.com]
> Sent: Tuesday, May 13, 2014 1:29 PM> To: Kus, Robert - OSHA> Subject: Re: Info
>
> Sorry..I called you an hour after receiving this message and left a message as you were on other line. Would you be working on investigation for this matter?
> > On May 13, 2014, at 10:39 AM, "Kus, Robert - OSHA" <Kus.Robert@dol.gov> wrote:

1    > > Madhuri,>

2    > I am in the office right now if you would like to talk.  I can be reached at 630-896-8700.
     > > Please contact me if you have any questions.
3    > > Respectfully,>
     >
4

5    > Robert J. Kus
     > Regional Supervisory Investigator
6    > USDOL-OSHA
     > 365 Smoke Tree Plaza
7    > North Aurora, Illinois 60542
     > Telephone: 630-896-8700 x124
8    > Fax: 630-892-2160
9    -----Original Message-----
     From: Benjamin, Sherrill - OSHA [mailto:Benjamin.Sherrill@dol.gov]
10   Sent: Tuesday, May 13, 2014 2:34 AM
     To: Madhuri Trivedi
11   Cc: Kus, Robert - OSHA
12   Subject: RE: Whistleblower

13   Ms. Trivedi,

14   I forwarded your complaint to Regional Supervisor Investigator (RSI) Robert Kus for assignment. RSI Kus
15   or the Investigator he assigned to your complaint would be the best person for you to discuss, explain or
     clarify any aspect of your complaint.
16   I have included RSI Kus in this e-mail for his information.

17

18   Sincerely,
     Sherrill F. Benjamin
19   Acting Assistant Regional Administrator
     Region V Whistleblower Protection Program
20   365 Smoke Tree Plaza
     North Aurora, IL  60542
21   benjamin.sherrill@dol.gov
22   630-896-8700 x 106
     312-353-5105
23   312-933-2808 (cell)

24   -----Original Message-----
     From: Madhuri Trivedi [mailto:madhuritrivedi@hotmail.com]
25   Sent: Monday, May 12, 2014 3:51 PM
26   To: Benjamin, Sherrill - OSHA
     Subject: Whistleblower
27

28

     Page - 21 -of 188 COMPLAINT          Madhuri Trivedi v. General Electric et al.

1  Respected Mr. Benjamin, I have filled whistleblower complain via fax on May 4 . I wanted to talk to you
   in some details about that . My phone is 484 362 9716. Talk to you soon. Thanks.
2

3       62. Below is excerpt from GE"ADR "Solutions" manual- it says while arbitration is
4
            procedding, agency filing deadline stops.
5
6  Where a party's initial submission of a Covered Claim to Solutions occurs before the
   expiration of the applicable statute of limitations for filing in court, the opposing party
   agrees to stop the further running of the statute of limitations while the parties complete
7  the Solutions process.  In the case of administrative agency filing deadlines, the Company
   agrees to request that the agency treat the running of filing deadlines as having been
8  stopped.  Nothing in this paragraph is intended to interfere with the right of administrative

9       63. Court has supplemental jurisdiction for claims arising out of related this matter.
10
11      64. Google **ended arbitration requirement for ALL of the employee**
12
   **disputes/claims.** Earlier google allowed only sexual harassment claims to be taken to court but
13
   then Google changed. Goal of arbitration was to have resolution of disputes in alternate way and
14
   have access but then has become one of the tool for employers to get away with illegal,
15
   wrongdoing, misconduct, violations. Arbitration is systemically designed for employers and not
16
   for employees; also arbitrator gets PAID by an Employer (in my case GE paid arbitrator
17
   $40,000. So it is a BUSINESS for arbitrator and American arbitration association. )Big
18
19 corporations have a way to get away in such private environment. Employer especially company
20 like GE can SPEND INFINITE/ENDLESS TIME, RESOURCES and MONEY on
21 LITIGATION/Legal fight (any such activities)which employees can't even imagine to afford to.
22
   In end result it HURTS society and all of us.
23
24      65. Arbitrator Peter Meyers didn't allow deposition of GE architect
25  into evidence at arbitration hearing. where Bill testified that GE product was insecure and
26 defective for years and lot more...The whole arbitration was illegal and I even left hearing on
27
28

second day and GE did arbitration hearing alone without me-GE and arbitrator on second day for whole day finished arbitration..

**Arbitrator also didn't enter into arbitration hearing evidence "deposition of plaintiff Madhuri Trivedi" where I alleged retaliation, discrimination, whistleblowing, hostile, offensive, intimidating work environment and more. Arbitrator was picking and choosing selective documents, testimony into hearing evidence that would benefit GE( from whom he was getting PAID so he has vested interest to) and not employee Trivedi; along with LINE of QUESTIONING that went at hearing.**

66. 9 U.S. Code § 12. Notice of motions to vacate or modify; service; stay of proceedings; though Foley and mansfiled law firm I hired to send a letter to GE in July 2014. Arbitrator award was given in August 2014, Foley&mansfiled had that award next day but instead of <u>mentioning this notice of motion to vacate; these lawyers forwarded me to Quitam</u> <u>lawyers and while **closed employment file..as shown in EXHIBIT  ..Hence I request this**</u> **court to CONSIDER MITIGSTING CIRCUMSTANCES THT WERE BEYOND CONTROL AND KNOWLEDGE OF TRIVEDI that this 9 U**.S. Code § 12. Notice of motions to vacate or modify was not filed in district court earlier.

67. This court along with original jurisdiction for other claims ; here

**9 USC § 10(a)(3)** FAA allow for vacatur  for other arbitrator misconduct that leads to an unfair arbitration hearing, including (2) a refusal to hear evidence pertinent and material to the controversy, or (3) other misbehavior that substantially prejudices the "rights of any party."

✓ Forsythe Int'l, S.A. v. Gibbs Oil Company of Texas , 915 F.2d 1017, 1023 (5th Cir. 1990) - To vacate an arbitration award based on the refusal to hear and material

evidence, the evidentiary error "must be one that is not simply an error of law but which so affects the rights of a party that it may be said he was deprived of a fair hearing." Forsythe Int'l, S.A. v. Gibbs Oil Company of Texas, 915 F.2d 1017, 1023 (5th Cir. 1990); **Hence arbitrator in Trivedi's case deprived Plaintiff Trivedi of a fair hearing as mentioned above and to be proved at discovery and trial.**

✓ FAA a catch all clause allowing vacatur for any other misbehavior resulting in substantial prejudice to the rights of any party.  This clause has been successfully invoked, for example, when the arbitrators received and re lied on evidence on an ex parte basis outside the presence of the opposing party.

68. 9 U.S. Code § 9. Award of arbitrators; confirmation; jurisdiction; procedure ; GE and Trivedi has not confirmed award of arbitrator TILL DATE AUGUST 2019 in any district court through JUDGEMENT.

69. New Jersey is one such state (New Jersey Arbitration Act, N.J. Stat. § 2A: 23B-4c) and there are others, including Texas and California. Nafta Traders, Inc. v. Quinn, 339 S.W.3d 84, 98-101 (Tex. 2011) ("We hold that the FAA does not preempt enforcement of an agreement for expanded judicial review of an arbitration award enforceable under the [Texas Arbitration Act]"); Cable Connection, Inc. v. DIRECTV, Inc., 190 P.3d 586 (Cal. 2008) (parties may structure their agreement to allow for judicial review of legal error under California Arbitration Act)

70. Trivedi didn't know what "Solutions" was when she joined GE company and signed that as a condition to get GE job offer. It is not proper for GE to later FORCE "solutions" like they did when GE never provided copy of "Solution" at the time to condition of employment **EXHIBIT 28, 29 was signed.  Trivedi came to know about mandatory arbitration ehn**

1  **immigration attorney Jeff Goldman sent a letter to GE CEO Mike Swinford and GE**

2  **attorney replied that Trivedi is bound by arbitration as shown below excerpts .**

3  **Email—————**
**From:** Stekloff, Neil (GE Healthcare) [mailto:Neil.Stekloff@ge.com]
4  **Sent:** Wednesday, August 14, 2013 11:51 AM
5  **To:** Jeff Goldman
**Subject:** RE: Madhuri Trivedi
6
7  **CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY**

8  Mr. Goldman:

9  I am in receipt of your letter to Mike Swinford regarding Madhuri Trivedi.  As I suspect you are
aware given that I was cc'd on your e-mail, I am labor & employment counsel for GE
10  Healthcare.  You can direct all further correspondence regarding this matter to me.
11  …………………………………….

12  I also must point out that Ms. Trivedi agreed, as a condition of employment, to GE's alternative

13  dispute resolution (ADR) process, called Solutions.  See her signed Solutions acknowledgment,

14  attached, which requires binding arbitration as its last step (Level IV).  The step before

15  arbitration, Level III, is non-binding mediation before a neutral mediator – which GE pays for.

16  ***********End of email here
17
18      71. As per GE's solution manual PAGE 6- for arbitration , below are EXCLUDED

19  claims, and where third party is needed(though I didn't know at the time of arbitration about it)

20  Despite Neil Stekloff mentioned in email ONLY about mandatory arbitration.

21  Ge attorney wrote to my immigration attorney Jeff Goldman that Trivedi is bound by Level IV
22
mandatory arbitration while as stated above when Third party was necessary—to take advantage
23
24  of me /my lack of knowledge , Jeff goldman being immigration attorney –GE never mentioned

25  above..

26  Also excluded claims as above violation of Ge policy –those were reported to GE ombuds

27  person..

28

Given that my immigration was in GE hand GE ombuds, other HR manager no one had any intention to do anything right, legal and did best to cover up

- Claims based on alleged violations of the GE Policy on Working with Governments including, but not limited to, alleged violations of the federal False Claims Act (except retaliation claims) or federal procurement laws or regulations (These should be reported to the Office of the Ombudsperson or Company Compliance representative); and

- Claims brought by or against Covered Employees, where a third party would be necessary to the resolution of any claims or where the absence of the third party could subject the Company or the Covered Employee to inconsistent obligations, and all parties do not agree to participate in Level III and to be bound by an arbitration under Level IV of Solutions.

72. Even The Hall Street Court left the door open for parties to expand or modify the scope of review for arbitration agreements governed by state arbitration statut es or the common law. Id.at 590

73. Trivedi also assert that she has good faith basis for challenging the arbitral award.

74. Private cause of action jurisdiction of this court (I have a separate section about private

cause of action in this complaint so please refer to that for )

75. **FEDERAL JUDGE ANDREW HANEN IN BROWNSVILLE TEXAS**

**Judge Hanen READ my ENTIRE GE and DHS/immigration file for a person of extra ordinary ability...I contacted his chambers and they forwarded 6 pound of material to judge which he himself read. He wrote to Department of justice attorney Rick Lara to do GRAND JURY CRIMINAL INVESTIGATION about GE and also concluded that I have met burden to prove that I am a person of extra ordinary ability..His finding have DICTA weight and importance as a FEDERAL Judge...** Judge Hanen Read my GE file for whistleblower retaliation and arbitration and found illegal , criminal conduct so he wrote to do GRAND JURY criminal investigation about GE, GE medical devices, my termination, fraud,

1  violations and this whole things.

2  And I also sent him my Immigration petition EB1 file that I petitioned with USCIS —(United

3  states citizenship and immigration services)..He separately concluded that I am a person of Extra

4  ordinary ability and in national interest waiver as that's what the petition I filed with immigration

5

6  after I was illegally( including but not limited to in retaliation and for not joining GE's fraud

7  scheme) terminated by GE…

8      76. I screwed up by not filing in Brownsville, TEXAS where federal Judge Hanen was

9  Presiding and instead filed DHS lawsuit in California and got stuck with judge

10  Donato. Judge Hanen would have ruled in my favour in my DHS case and also in my favor in

11

12  GE matter---he would have ordered grand jury criminal investigation though court order, and

13  held GE responsible for all the things they did

14  FBI agent in Brownsville Texas were judge wrote to do GRAND JURY investigation--
--- Shaun Owen FBI agent wanted to put GE as a criminal organization ---

15             ---------- Forwarded message ----------
16         From: **Lara, Rick (USATXS)** <Rick.Lara@usdoj.gov>
         Date: Thu, Oct 1, 2015 at 1:08 PM
17         Subject: FW: Fwd:
         To: "Owen, Shaun H. (SA) (FBI)" <Shaun.Owen@ic.fbi.gov>
18         Cc: Madhuri Trivedi

19         Shaun, I am forwarding the e-mail as discussed in our phone conversation.
20
         Thanks,RL
21

22      77. This case by all means and legal standing deserves discovery and trial—and it would

23  be illegal not to have this case go through all trail process, discovery and litigation.

24  While Plaintiff Trivedi has been honest right from filing complaint about OSHA response and

25  DODIG response which both were not going to help me and I could have not told court that

26

27  OSHA erroneously concluded it didn't fit their 22 statutes and DODIG said statute of limitation

28

expired..I could have filed incomplete pleading but I choose to not be evasive and provide as much true, complete, whole picture I can to court…

## 78. <u>SEC LETTER BELOW</u>

<u>Plaintiff Trivedi incorporates by reference SEC letter below, as though fully set forth herein, as well as facts currently unknown into paragraphs 1 to 33-last pragraph in this complaint,.</u>

SECURITIES AND EXCHANGE COMMISSION(SEC) ENFORCEMENT ACTION –COMPLAINT RELATED TO GE HEALTHCARE

**SEC File #**████████**1/GE Healthcare**

From: ████████████@*sec.gov*>
02/13/2019 (3 months ago)
**To**: Madhuri Trivedi

Dear Madhuri Trivedi:

We are taking your complaint very seriously, and have referred it to the appropriate people within the SEC.

Please understand that the SEC generally conducts its investigations on a confidential basis and neither confirms nor denies the existence of an investigation unless we bring charges against someone involved.  We do this to protect the integrity and effectiveness of our investigative process and to preserve the privacy of the individuals and entities involved.  As a result, we will not be able to provide you with any future updates on the status of your complaint or of any pending SEC investigation.

I've attached a flyer that describes our policy as it will apply to your complaint.  Please contact me if you have other questions.

Sincerely,

████████████

1

2

3

## Information About SEC Investigations

4

5    Each year, thousands of investors ask the Securities and Exchange Commission to
investigate the activities of other investors, financial professionals, corporations, brokerage
6    firms, investment companies, stock exchanges, and others. These complaints generally suggest
some impropriety or misconduct and sometimes make a plea to the SEC for direct assistance in
7    resolving a grievance.

8
     The SEC has the authority to investigate whether violations of the federal securities laws
9    have occurred, and we make every effort to evaluate promptly and thoroughly the information
provided by investors. But we cannot investigate every investor complaint. While many
10   investor complaints do lead to full investigations and, if appropriate, to enforcement actions, we
cannot guarantee that our review will lead to further investigation or that the SEC will take any
11   legal action.

12
     We also cannot provide you with updates on the status of your complaint or your request for
13   an investigation. The SEC generally conducts investigations confidentially for two main
reasons. First, we can conduct investigations more effectively if they are not announced
14   publicly. For instance, important documents and evidence can be destroyed quickly if people
hear of an investigation. Second, we keep our investigations confidential to protect the
15   reputations of companies and individuals if we find no wrongdoing or decide we cannot bring a
successful action against them. The SEC will not typically confirm or deny the existence of an
16   investigation unless, and until, it becomes a matter of public record as the result of a court action
or administrative proceeding.
17

18
     When there is proof that someone has violated the securities laws, the sanctions may
19   include financial penalties, orders to surrender profits, cease and desist orders, or an injunction
by a court to prevent further violations. The SEC may also bar individuals from working for a
20   securities firm, investment adviser, or investment company. We can also ask a federal court to
bar individuals from being officers and directors of publicly held companies. In some situations,
21   we may refer a case to the Department of Justice for possible criminal prosecution.

22
     The SEC publishes news releases about its lawsuits and administrative actions, and the
23   news media often report on them. You can read and download the SEC's "Enforcement
Actions" on our website at **www.sec.gov/divisions/enforce/enforceactions.shtml**. Or you can
24   obtain hard copies by contacting us at:

25
                                    Office of Public Reference
26                                  100 F Street, N.E.
                                    Washington, DC  20549-0102
27

28
                Madhuri Trivedi v. General Electric et al.

Phone: (202) 551-8090
Fax:   (202) 777-1027

E-mail: publicinfo@sec.gov

## 79. EQUITABBLE TOLLING

79.1.     Tolling is a legal doctrine that allows for the pausing or delaying of the running of the period of time set forth by a statute of limitations, such that a lawsuit may potentially be filed even after the statute of limitations has run.

79.2.     Equitable tolling is a common principle of law stating that a statute of limitations shall not bar a claim in cases where the plaintiff, despite use of due diligence, could not or did not discover the injury until after the expiration of the limitations period.

79.3.     For example, when pursuing one of several legal remedies, the statute of limitations on the remedies not being pursued will be equitably tolled if the plaintiff can show:

- Lack of prejudice to the defendant
- Reasonable good faith conduct on part of the plaintiff.

80. It has been held that equitable tolling applies principally if the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his or her rights. Importantly, it has also been held that the equitable tolling doctrine does not require wrongful conduct on the part of the defendant, such as fraud or misrepresentation.

81. Hence Plaintiff Trivedi incorporates by reference, as though fully set forth herein Equitable tolling as it applies to cause of actions brought here in this complaint.

# FACTS RELEVANT TO CLAIMS ALLEGED HEREIN

## A. Background of Plaintiff's employment at GE

82. Plaintiff has bachelor in electronics and telecommunication engineering with distinction grade from India, Post graduate diploma in business administration(PGDBA) from India, Masters in Computer Information science from Cleveland state university, Ohio; and has done graduate certificate course( equivalent to Masters level but not a degree) in Systems design and management from Massachusetts institute of technology, Cambridge, MA. She has prior to joining GE worked in multiple domains including in enterprise solutions, biotech, enterprise security and healthcare IT;for big corporation as well as do or die entrepreneurial startups.

83. **Plaintiff joined GE healthcare in Waukesha, Wisconsin in 2011 as a Lead engineer- fulltime GE employee.**

84. ....prior to that I worked for GE intelligent platforms in 2010..GE interviewed me in 2009 and next day offered job on phone as a fulltime GE employee. After few weeks VP of engineering Reema Poddar mentioned that as GE has taken from government TARP(Troubled asset relief program) money; hence GE can't do my H1-hence would bring me on board first as a consultant-employed through Adecco-noramtec consulting(have them to H1B) and then after 2-3 months will do H1...I believed in their scheme and agreed. (At GE Intelligent Platforms in Boston; as part of a two engineer team reporting to Chief Technology Officer of GE Transportation Steve Edner, Plaintiff did Application development /support for remotely monitoring GE assets. This solution generated multi million in revenues for GE Intelligent platforms).GE emailed that they are happy and will do my H1 B transfer to GE (from Adecco/Noramtec consulting) as fulltime job with GE. GE filed my H1 B LCA with labor department- attached approved copy(by mistake lawyer wrote my OLD married name as

1   'Shukla') (EXHIBIT 20) –I left GE intelligent platforms as GE told me shortly after this that

2   they are terminating my contract. I didn't fight back then –At that time also immigration attorney

3   for GE was Fragomen Del Rey, Bernsen & Loewy, LLP law  firm's Jenny S. Schrager.

4
5   **(GE Boston)GE Intelligent Platforms/GE Transportation LCA in**
    **2010 and Full time job –HR manager, H1 B visa at Boston in 2010**
6

7   From: George.Harmon@ge.com > To: madhuritrivedi@hotmail.com
    Date: Wed, 16 Jun 2010 15:46:13 -0400

8   Madhuri
    The attached Labor Condition Application is associated with your H-1B

9   Filing. Please keep this with your records and acknowledge receipt by
    dating and signing the top page. Then return the top page to me via

10  e-mail or fax 814-690-1760.

11  Please note that the filing associated with the attached LCA has been
    reviewed, endorsed, and returned to Fragomen via UPS for further

12  processing with USCIS.
    **From:** Trivedi, Madhuri (GE Intelligent Platforms, Non-GE)

13  **Sent:** Friday, May 14, 2010 10:31 AM

14  **To:** Collins, Melanie (GE Intelligent Platforms)
    **Subject:** RE: Today's Discussion

15  HI Melanie
    I am happy to be on board and for this offer. I will fill out the forms soon.

16   Regards and thanks Madhuri

17  _____
    **From:** Collins, Melanie (GE Intelligent Platforms)

18  **Sent:** Thursday, May 13, 2010 2:40 PM
    **To:** Trivedi, Madhuri (GE Intelligent Platforms, Non-GE)

19  **Subject:** Today's Discussion

20  Hi Madhuri,
    I just wanted to send you a recap of our discussion today. We'd like to extend you a full time

21  offer with base salary of $84,000 with a start date of "TBD". This is due to the fact that it will
    take a week or two to transition you to full time employment as it pertains to our systems,

22  payroll, etc. Start date should be early June timeframe.

23   I've also attached an overview of our benefits for your review.We are so happy to have you on
    board and appreciate all of the great work you've done for us.

24   Kind Regards,Melanie
     **Melanie Collins**

25  Human Resources Manager

26  GE - Intelligent Platforms  . :: +1 508-698-7566 l Dial Comm: *309-7566 ⌐ ::
    Melanie.Collins@ge.com

27

28  ************END of email

85. After GE intelligent Platforms in Boston ; I joined State of Indian –department of Disability and rehabilitation.I was getting paid less at State of Indiana then what GE healthcare offered but I was contended at State of Indiana; it was also low stress job. I resigned from state of Indiana job as GE Healthcare induced me into giving a greencard, permanent residency, more salary as while at state of Indiana I was on my fifth year of H1 B( approaching total six year of h1B time).

86. –It was my mistake to move from Indiana to remote , cold place where GE had no real intention to give me permanent job which I needed in order for my greencard but I was INDUCED by GE(lots and lots –one can SAY MOST of product development-software firmware is outsourced and not done in USA or /and in Waukesha ) .

87. .It was my mistake that I moved to Waukesha from State of Indian –department of Disability and rehabilitation job.

88. Later GE healthcare came back in 2011 for Waukesha, WI full time job; even before in-person interview I emailed GE manager David Mehring and architect Nate Davis ( EXHIBIT 21)  that my PERM (with department of labor)for greencard needs to be filed at least 365 days before My total 6 years of H1 runs out( H1 B expires) in order for me to get 1 year extension for my H1 B until I get greencard.(.But after HIRING me, knowingly GEHC didn't file PERM at least 365 days before my H1 so even when GEHC was terrorizing me I could left GE and work at another company –so this was a conspiracy.). Jenny Schragger  Fragomen immigration attorney should be in jail along with GE people.

89. **Below is what shows history, relationship between GEIP, Boston and GEHC, Waukesha, WI.**

90. Same GE intelligent platforms people from BOSTON, MA including Reema Poddar

1   -my former senior Boss (head of remote service solution at Boston) was driving new platform

2   that Jeff Immelt was developing –and he bet billion of it—At Boston I worked on and I was first

3   handful of engineers who developed asset management platform NOW it became PREDIX –jet

4
5   engine , energy electric grid, locomotive rail engine—GE , Reema Poddar did best by

6   humiliating me as a consultant and giving HIGHEST degree of tension about converting my

7   consulting role into full time –( GE Intelligent Platforms in Boston,MA , Reema first offered full

8   time job and then after dragging it for sometime and telling that as GE took government money -

9
10   TARP(Troubled asset relief program) –I FIRST join GE as a consultant instead of full time

11   employee—)

12   **Below is GEIP, Boston projects I did:**

13



Madhuri Trivedi v. General Electric et al.

## 91. GE BOSTON

## GE Transportation(GE Boston)

**From:** Baldwin, Christopher (GE Intelligent Platforms)
**Sent:** Thursday, May 20, 2010 1:12 PM
**To:** Paiva, Kenneth (GE Intelligent Platforms); Trivedi, Madhuri (GE Intelligent Platforms, Non-GE); Bowman, Ward (GE Intelligent Platforms); Kapusta, Bill (GE Intelligent Platforms); Miller, Shane (GE Intelligent Platforms); Wienzek, Mark (GE Intelligent Platforms)
**Cc:** Blair, Jason (GE Intelligent Platforms); Watt, Blayne (GE Intelligent Platforms); Savoie, Matthew (GE Intelligent Platforms)
**Subject:** Transportation system design document

This is a document to capture our Transportation project work for the next 2 weeks for this POC. It will need to be updated for the fuel screens when we get queries from GET (hopefully today).

Comments welcome@Chris

## GE POWER (GE Boston)

**From:** Baldwin, Christopher (GE Intelligent Platforms)
**Sent:** Wednesday, May 26, 2010 10:46 AM
**To:** Paiva, Kenneth (GE Intelligent Platforms); Wienzek, Mark (GE Intelligent Platforms); Miller, Shane (GE Intelligent Platforms); Trivedi, Madhuri (GE Intelligent Platforms, Non-GE)



**Cc:** Kapusta, Bill (GE Intelligent Platforms)
**Subject:** GE Jenbacher docs

Jenbacher docs.  I'll have to sift through them and my notes and come up with a requirements document for us to move on.  I think it will be more like Energy than Transportation with actual assets to monitor.

Chris

**From:** Wienzek, Mark (GE Intelligent Platforms)
**Sent:** Friday, May 07, 2010 1:16 PM
**To:** Bowman, Ward (GE Intelligent Platforms)
**Cc:** Blair, Jason (GE Intelligent Platforms); Watt, Blayne (GE Intelligent Platforms); Baldwin, Christopher (GE Intelligent Platforms); Neri, Stephen (GE Intelligent Platforms); Paiva, Kenneth (GE Intelligent Platforms); Trivedi, Madhuri (GE Intelligent Platforms, Non-GE)
**Subject:** UI Automation in Silverlight

Ward,

Not sure if Engineering has started looking into making the DVS system accessible through UI automation but I think we should start thinking about it.  Mark

Below are several links:

**Silverlight Accessibility Overview**
- http://msdn.microsoft.com/en-us/library/cc707824(VS.95).aspx

**UI Automation of a Silverlight Custom Control**
- http://msdn.microsoft.com/en-us/library/cc645045(v=VS.95).aspx

**AutomationProperties.AutomationId Attached Property**
- http://msdn.microsoft.com/en-us/library/system.windows.automation.automationproperties.automationid(v=VS.95).aspx

*************end of emails


92.  Reema Poddar and all those Boston People came to know that I have joined GE

healthcare in Waukesha…

93.  Soon after joining GE healthcare in Waukesha, WI;  I realized that GE healthcare

HIRED ME as they wanted to get ahead of GE Boston people, playing internal GE subsidiary

politics ; BECAUSE THEY WANTED INSIDER INFORMATION ABOUT GE BOSTON

AND ALSO MY EXPERIENCE IN REMOTE SERVICE AT GE BOSTON APART FROM

OTHER EXPERIENCE AND SKILLS BUT SOME OF THE FACTOR WAS ME WORKING

IN SAME REMOTE SERVICE (also I worked in remote service at United Technology

corporation in Connecticut; UTC is a competitor of GE in jet engine business ).GE healthcare in

waukesha wanted to get GE corporate funding that GE Boston people were allocated and Boston

people were Driving that remote asset management project—which GE healthcare people were

MAD at because GE healthcare people thought that we have already been doing Remote Service

for some years while GE boston people have no experience in remote service…(I have email

communication some of it to prove this)Plus GE healthcare people thought and believed that as

being in healthcare GEHC have more knowledge of it than GE Boston people—how the Hell GE

Boston got the funding and HOW TO GET all the GE CORPORTE FUNDING and attention

back to GE healthcare in terms of REMOTE SERVICE and REMOTE Asset management..so I

was a SCAPEGOAT of GE division infighting and this intra subsidiary politics…

94. I worked super hard in Boston, MA hoping that if I do so GE will hire me as a full

time as GE has promised and I did delivered…But again during our last couple of meetings;

engineering manager himself started discussing –and it came up that lots of work needed to be

done in terms cybersecurity – needed LOT more TIME, money and Schedule than Rapid

application development GE Boston was doing; especially for GE aviation jet engines and GE

energy Electric grids, GE locomotives , GE water tanks--GE Intelligent Platforms in Boston –

Reema Poddar, Engineering managers and program mangers didn't care to allot time, resources

to address this and kept deploying these solutions for various GE divisions and GE customers..

Plaintiff Trivedi's role was different and there were separate Cybersecurity effort/people( Trivedi

didn't mean NOR wanted to Step in Toes of those cybersecurity efforts/people –do their job

instead of what she was assigned and Trivedi was not assigned on cybersecurity work PLUS

TRIVEDI needed scheduling permission in terms of Time and Tasks to do from PROGRAM

MANAGERS for example Ken Paiva  and General manager who allocate finances in order to do

and several people were required to do this instead of JUST ONE PERSON TRIVEDI)--- I

didn't fight and was 100% polite –I was focused on delivering what GE Boston told me to do..

95. …Coming back to GE healthcare in Waukesha, WI –as I alleged in my complaint "Insite exc" was falling apart--with 465 critical defects –and GE retaliated, framed me for not joining GE healthcare's fraudulent scheme for SIGNING OFF on Test plans that Insite EXC is working fine (so GE healthcare can release it for SURGEY MOBILE ARM OEC 9900) and other medical devices—I declined and I wrote to managers that GE is not following quality procedures, it has security defects, vulnerabilities , GE's massive mountain size EGO was hurt plus I was an IMMIGRANT WOMAN WHOSE IMMIGRATION WAS IN GE's HAND – exposing GE and it's managers about such wrongdoing –Despite such a desperate cry, calls, emails and including but not limited to threats by GE's internal divisions to SUE GE- as GE was not fulfilling it's service contract obligation –GE signs with hospital and doctors when they buy GE healthcare medical devices---I am aware of email sent to general manager David Elario  by GE division ( for example X Ray, Surgery divisions) that they would Sue Global service Technology –GST( I worked at GST division who provided SERVICE technology and support to GE medical devices)..

96. GE healthcare and it's management were NOT at ALL SERIOUS to replace Insite EXC (replacing it totally with new remote service and control platform..)—…NORE GE healthcare was working on either fixing Insite EXC critical defects, cybersecurity vulnerabilities, performance, quality and more. ZERO sense of doing it Immediately or as soon as POSSIBLE>

97. INSTEAD GE under new initiative by Jeff Immelt was working on developing JUST ONE PLATFORM THAT WORKS FOR ALL GE DIVISIONS- at Waukesha, WI – we were working with GE intelligent platforms in FOXBOURO, Boston< MA , GE Energy, GE digital in Detroit, GE transportation in Pennsylvania and bunch of other division who on daily basis wrote bad, GE internal divisions' infighting, insulting email to each other, fought daily –diverted blame

on each other—and wanted to get all or as much as financial funding from GE corporate and also

CREDIT, recognition, politics and appreciation etc for developing new platforms –so wanted to

show other GE division as stupid and incompetent…and again it was same Immigration attorney

handling my immigration case in Waukesha < WI Jenny Schrager (Exhibit 11, 20, 23 of plaintiff

complaint in this court) ---ONE REMOTE SERVICE PLATFORM that FITS all GE assets such

as GE energy,GE intelligent platforms, GE transportation, GE healthcare medical devices—was

not going anywhere for more than two years PRIOR to me joining GE Healthcare and also while

I was at GE –it was number of issues and was stagnant --- Reema Poddar and others from GE

Boston were driving this one REMOTE platform FITS all GE assets ---new initiative --SO GE

healthcare thought that along the line after unknown number of years , at one point of time –

hopefully we will replace "Insite EXC" when this new BIG platform that works for all GE

ASSETS will be developed.

98. During Trivedi's First project insite exc integration; Trivedi uncovered cyber

securities issues, quality issues and defects , fraud ---GE manager moved second half my

duration at GEHC but at that time

–customers, support group would still call me/email for insite exc support as no one was helping

them and they couldn't do their job –including MRI—I mentioned that to manger in one on one

and manager continued retaliation…second project had lots of infighting , disfunction and

chaos…GE was failing and when lead systems designer were not able to do technical job they

diverted his blame to me..sachin kendale(his linkedin profile EXHIBIT 34) naresh wrote code

that took 20-40 minute on screen to load 1000 devices---second project I was assigned to FIX

BUGS/defects –there were more than 250-300 open defects and design issues on second project

that Trivedi was assigned to test and FIX…While I was doing testing again it opened can of

worms for which technically incompetent GEHC Greg Stratton, Nate Davis, Sachin Kendale, Naresh , some staff in India was responsible along with other GE energy, GE transportation, GE digital..Gregg statton was LSD and he was responsible for replacing Insite where he couldn't--- In code review also I found out was he was doing wrong so he was exposed.(these emails are part of arbitration record.).he would fight daily on phone with other GE managers, write abusive emails—Trivedi was sitting right next to him..when sitting next to him due his such hostile behavior ; Trivedi was disturbed..and right round the time of sikh temple shooting in MILWAUKEE ( Gregg Statton had valid gun license and he routinely when for HUNTING DEERS etc); as (mentioned in Mediations statement and letter by immigration attorney to CEO GE) that Gregg Stratton pointed fingers to me "shaping gun" ---**due to all this I moved my desk temporarily away from Greg as it was unproductive, hospital and imtimidatin..GE manger** made big issue of how it will look and soon put me on PIP…at this same time I was asking senior management that my manager is retaliation because of my first project insite exc related , raising security concerns ..and I should be given a another reporting manager and management kept denying while aggressively integrating and releasing insite exc..

99. There was no issue of my poor skills –the issue was my insite exc speaking up , GE's failure on second project to develop product within all GE divisions---Larry culp himself recently said that GE has to improve quality and stop infighting

100.    Below press release shows that GE CEO Larry Culp HIMSELF has admitted that GE has infighting problems and problem of its products' quality…Plaintiff Trivedi alleges here in this complaint that these two factors play important role in GE getting rid of her while Madhuri was doing her job.

Press release:---

**https://www.cnbc.com/2019/05/22/reuters-america-update-2-ge-needs-to-end-infighting-fix-quality-tighten-management-ceo.html**

**UPDATE 2-GE needs to end infighting, fix quality, tighten management -CEO**

Published Wed, May 22 2019 2:49 PM EDT Reuters    Alwyn Scott

(Recasts with comments about fixing GE's internal problems)

May 22 (Reuters) - General Electric Co, once seen as the epitome of corporate greatness, is trying to end infighting between its divisions, tighten up management and fix quali**ty problems in its products, Chief Executive Officer Larry Culp said on Wednesday.**

101.     **Plaintiff was terminated on May 31, 2013. Mediation was done in later 2013 and arbitration hearing was on May 2014.  Arbitrator Final award was given on August 11, 2014.**

102.     Plaintiff contacted Food and Drug administration in December 2013 (EXHIBIT 5).

103.     Plaintiff contacted Department homeland security in September 2013 by filing visa and going in person to Milwaukee, WI DHS office.

104.     **For Dodd Frank act claims,** breach of contract, SOX claims taking to district court, SEC related claims, some other others –Plaintiff was not aware of her right to go to district court earlier. **No attorney she retained mentioned that prior.**


**B.  FBI supervisor Agent and FBI special agent in charge**

105.     Plaintiff contacted FBI in Milwaukee, WI in April 2014. FBI Milwaukee Supervisor Clayton Wible who after looking into details called back that GE matter is False Claims Act/Quitam matter.

106.   <u>I contacted FBI again in California, San Francisco; wrote to special agent in</u> charge David Johnson in November 2015 about criminal investigation related to GE, my matter. He assigned FBI agent. Last I met him in FBI San Francisco lobby in January 2017 and he said he is leaving FBI and was SORRY; said that "it is not him".

107.   Below is emails as reference.

From: Wible, Clayton M. (MW) (FBI) <Clayton.Wible@ic.fbi.gov>

Date: Tue, Aug 25, 2015 at 6:37 AM Subject: RE: Please contact US att General Loretta Lynch To: Madhuri Trivedi

Madhuri, As we have discussed before, I am unable to intervene or lobby on your behalf. While the following does not represent legal advice, I can only suggest the very action(s) I have suggested in the past: hire new, or keep working with existing, legal representation to address your immigration matters. For the above reasons and more, I cannot and will not be contacting AG Lynch as you requested. Sincerely, SSA Wible

108.   **Later David was appointed as Executive assistant director of FBI reporting to James Comey. In January 2017, David left FBI.**

From: Johnson, David J. (SF) (FBI) <David.J.Johnson@ic.fbi.gov>

Date: Tue, Nov 24, 2015 at 9:20 AM Subject: RE: MIT alum: Work authorization, Extreme hardship declaration, financial loss, humanitarian and distress

To: Madhuri Trivedi Cc: "San.Francisco" <San.Francisco@ic.fbi.gov>

Good morning—I have received your email and will have someone reach out to you. Thank you. David

## C. <u>GE fraud related</u>

109.  <u>**Connectivity –lucrative money making service contracts ( which generates**</u>

<u>**annual recurring revenue for GEHC( in terms of upto $8 billion per year) instead**</u>

<u>**of ONETIME sale of medical device) was better than critical defects-bugs-security**</u>

<u>*vulnerabilities-design nonconformance –all of these put public health, safety, security*</u>

<u>*and privacy of their data at risk and exposure. Poorly protected & patched , Internet*</u>

<u>*Network connected with No proper and adequate detection & alerting,*</u>

<u>*Vulnerabilities of devices are RECIPE of DISASTER in hospital, & health system .*</u>

<u>*When Plaintiff mentioned  that "why we are still shipping defective Insite2 product" :*</u>

<u>*David Mehring mentioned that during a group meeting that "Connectivity is better*</u>

<u>*than Insite2 product" (means at least medical device will have connectivity).*</u>

### <u>"InsiteEXC" "Insite2"</u>

110.  At GE Healthcare, remote service and connectivity medical device "InsiteEXC" /

"Insite2" was remotely communicating and controlling 100,000 medical devices.

Medical devices were **ultrasound, MRI, surgery , Lunar, radiology servers** and

more. (Most of the GE medical devices were SOLD with INSITE EXC

PREINSTALLED; InsiteEXC was part of service contract offerings.

111.  There were defects in terms of 465-2000 total bugs and **465 defects(EXHIBIT 9)**

**in category of critical design non conformances in PRODUCTION (means**

**already in USE at hospitals);** unresolved for several years and medical  Device

Insite Exc was launched in 2004.

# SPR Trends

| Count of id | | Classification | .T | |
|---|---|---|---|---|
| Year | State | Defect-Design NC | Improvement Opportunity | Grand Total |
| - 2004 | Assigned | 2 | 2 | 4 |
| | New | 4 | 4 | 8 |
| - 2005 | Assigned | 5 | 8 | 13 |
| | New | 6 | 4 | 10 |
| | Resolved | 1 | 1 | 2 |
| - 2006 | Assigned | 45 | 14 | 59 |
| | New | 32 | 9 | 41 |
| | Resolved | 27 | 7 | 34 |
| - 2007 | Assigned | 27 | 5 | 32 |
| | New | 258 | 52 | 310 |
| | Resolved | 18 | 8 | 26 |
| - 2008 | Assigned | 9 | 1 | 10 |
| | New | 6 | 1 | 7 |
| | Resolved | | 1 | 1 |
| - 2009 | Assigned | | 1 | 1 |
| | New | 5 | 2 | 7 |
| - 2010 | New | 12 | 2 | 14 |
| - 2011 | Assigned | 3 | | 3 |
| | New | 5 | 2 | 7 |
| Grand Total | | 465 | 124 | 589 |

**Changes in 3Q:**
- 15 SPRs closed
- Reviewed and "dispostioned with justification" 12 Unacceptable Risk sprs imported incorrectly from DDTS

5.2 release

**Open Issues:**
- 465 Design Non-Conformances
- 124 Improvement Opportunit
- Will be closed with justificatio when RSvP program retires Questra back-office

112.   It lacked security features, audit trails, activity logging and security reporting.. (i)

the

design and technology of Insite EXC  were flawed as they were plagued with 465 critical defects

unresolved for several years including  severely deteriorating performance  ---including but

limited to that online engineers could not do remote connection to check, fix medical device(

remote connection was a SELLING POINT for this product and all service contracts for insite

EXC were signed based on remote connectivity; (ii) GE didn't publicly disclosed this issues; (iii)

the Company lacked adequate management controls to report/fix/address these issues; and (iv) as

a result of the foregoing, GE's public statements were materially false and/or misleading and/or

lacked a reasonable basis.

113.   Fraud attorney at <u>Cohen Milstein</u> law firm said that it is fraudulent inducement.

114.   GE performed sham quality tests and "willfully concealed the existence, frequency

and severity of the products' defects," with "grossly inadequate testing procedures". Tech

leads/seniors were skipping quality steps, testing needed.

115.   For knowingly selling defective, life threatening medical devices used by Department

116.   of Defense, Veterans Hospitals; medicare, medicaid ; other public government programs.

117.   **Department of defense signed $400 million of service contracts in last ten years**

118.   GE SEC filings 10-K state that *"<u>Our products are subject to regulation by numerous</u>*

*<u>government agencies, including the U.S. Food and Drug Administration (U.S. FDA), as well as</u>*

*<u>various laws that apply to claims submitted under Medicare, Medicaid or other government</u>*

*<u>funded healthcare programs."</u>*

119.   ( In 2013 , at Veterans hospital in NY patient died due to faulty GE MRI system.....so

GE has been reckless in their devices).

120.   For bringing this fraud and defects to management's attention and NOT willing to

participate in their fraudulent scheme. Madhuri- I was harassed, received abusive treatment and

wrongly accused of insubordination . She was also ostracized and marginalized by management.

Since then I have been suffering terrorizing acts due to GE and their influence at all level

Page - 46 -of **188** COMPLAINT          Madhuri Trivedi v. General Electric et al.

121.   EXHIBIT 17 attached- for many GE devices, they are making claims that it has

HIPPA /HITECH robust, security, audit trails, reporting which is false.

122.   These medical products were critical to the care of the hospital patients, including

armed services personnel and veterans, and  The fact that the defective nature of these products

was not disclosed is unconscionable

123.   While doing public release—intentionally hide information from shareholders and

124.   SEC as per section 302 and 402  public release, inside and outside-company sales,

marketing and customer brochures with/for various medical devices such as surgery arm, cardio

etc. Sales information online for medical devices and public press release----and elsewhere

where GE omitted and misstated /failed to disclose any InsiteEXC issues/facts/truth --instead

bolstered it ..

125.   **the company is required to disclose all "material information" –information**

**that**

**an investor would consider important in the evaluation of an investment decision.**

126.   Several Finance managers at GE knew it and they work with internal and external

auditors...

127.   Laws prohibit deceptive practices for use, benefits of company business, revenue,

profit...

128.   Failing to disclose material information concerning its usage, operation,

maintenance

not as advertised, sold and mentioned in contract agreement; with intentional inducement ..failed

to willfully disclose and actively concealed defects for upto years( last 5-7 years where hundreds

of critical defects). Fraudulent Concealment by GE.

## I.   InsiteEXC internal customers struggle for months to establish connectivity and Trivedi found short term fix

129.    While after joining GEHC in 2011, right on my 2nd week on joining GEHC I found a

work around where earlier online engineers ( internal customer Missy Polak Ryan also complained)couldn't do remote connection to medical devices in hospitals and hence couldn't fulfil service contract OBLIGATIONS WITH CLIENTS/signed with DOD-department of defense/other hospitals—for months they were struggling and engineering staff couldn't find solution to problems. On my 2nd week I found a work around and send document first to Glen Livermore which was used by hundreds of online engineers/service engineers, was CRITICAL globally to do remote connectivity -it was a bandage –short term fix ( to stop bleeding in operations and remote service and allow online engineer to do their jo and HENCE fulfil SERVICE CONTRACT OBLIGATIONS WITH CLIENTS). Long term fix was to developed new platform from ground up.

130.    Male GE engineering staff looked (was obvious to they were incompetency) technically incompetent after above incident and as I started making waves.. Soon after that

## II.   Deposition of GE architect Bill Barbiux

131.    Deposition of GE architect Bill Barbiux taken by Madhuri. Transcript deposition pieces(EXHIBIT 16)

**Page 3** Q Did I treat you with respect when I was withGE?

A Yes.

1   Q You had good working relationship with me , right?

2   A Yep.

3   Page 61 Q So in your opinion, the work I did for – I did for security VNC server

4
5   issues on Surgery was good work, and it was good for GST given that I was a couple

6   of months old within the company, and it was -- I was bringing tons of issues, and it

7   was too much for them.I was expressing tons of concerns, and it was truth. It was

8   not just -- It was happening. Things were not working the way they were supposed

9   to.

10
    Q Good work for GST.
11
12  A Yes. Technically, I thought what you were doing -- a lot of what you were doing

13  Made sense……………..

14  Page 107 Q Do you have knowledge that there were design nonconformances,

15  means defects in Insite ExC in production?

16
    A Yes.
17
18  Q Do you have any idea of how many of them?

19  A I don't recall. I know there were several hundred or more.

20  Q So it says 465.

21  A Okay.

22  Q So your -- I'm talking about -- I'm just consolidating everything in one
23
24  sentence. Your point was connectivity is better than defects in Insite ExC. At the least we

25  wouldhave connectivity?

26  A Right.

27  Page 168 Q At the time of Insite ExC release, when it was public facing, it failed

28
             Madhuri Trivedi v. General Electric et al.

1   a security test or had the security concerns?

2   A Yes.

3   Page 170 Q Insite ExC in production had security issues. Is that correct?

4
5   A The user interface, which is a little bit different, yes, had some security

6   vulnerabilities found during Scabba testing. Our mitigation was several things:

7   One of them was to move the user interface inside GE.

8   Q So some of the security vulnerability still exist today?

9   A Yes

10  Q So any GE employee inside GE network can potentially try to exploit that
11
12  vulnerability?A Depends on the vulnerability.

13  Q So is this -- Do you consider that's insider threat detection, and not having

14  Proper insider threat detection in place? Its considered insider threat detection, right?

15  .................Given those security issues still exist where an insider can try to

16  potentially – or can try to exploit those.
17
18  Q Is it considered good security strategy or is it --

19  A To move the interface to the inside?

20  Q And keep those security vulnerability as --

21  A That was one of our only options. ................The user interface was upgraded

22  from 4.1 to 5.2. That's where a lot of the vulnerabilities came in, so –
23
24       132.   There are several other items Bill admitted as well (EXHIBIT 16 )

25       **III.    Retaliation and fraudulent integration of InsiteEXC when Trivedi reports to**

26       **management, executive Dave Elario who further threatens to take Trivedi off**

27       **job and more aggressively releases Insite**

28

133.   Plaintiff suffered disparate treatment, retaliation harassment including sexual in nature for not joining GE's fraud scheme.

134.   GEHC manager David Mehring and project lead scheduled 23 days (EXHIBIT 26)

for me to finish ;

1000 pages worth of testing procedure and at the same time develop new testing procedure for 1000 pages that would work on linux and windows platform both and also work on linux while

135.   Plaintiff Trivedi was working on a project "integration of Insite2/Insite EXC on surgery platform"; Ms. Trivedi found and investigated issues of product being vulnerable for security attacks/hacking. Security vulnerabilities were agent was accessible by multiple ports.

136.   Being new to company I did contributed and delivered values. There is a Trend of shifting/putting blame inappropriately for things I am not responsible or I have no control over it, discrimination (being a female engineer and nationality) and retaliation for bring out those security/quality issues; while they were showing disregard to address/fix and prevent these very important issues from happening. It was a job needs to be taken seriously. This is a SERIOUS problem and I was trying to take care and was doing best job. My performance was geared for making sure that these kinds of quality/security issues does not happen to medical devices. At GEHC, I put this at first and foremost in my daily job and duties.

137.   When I pointed out deficiency on systems; manager/leads got upset and treated me

discriminatory. Other employees who were doing this kind of work were not held accountable. They were not making waves. I was retaliated for coming out/coming forward. Manager

differentiated between them and Ms. Trivedi in treatment when it came from a minority woman who is a hard working engineer. Ms. Trivedi was put on a PIP to **improve relationship** There are several factual evidences including but not limited to that Ms. Trivedi was working with dedication to quality, technical rigor, Inclusiveness and clear thinking.

138.    When I requested a meeting with Dave Elario; he did not come as her mother got sick

he said. I sent information to him regarding what was happening via email. After sometime to find a solution; in early February I requested Dave Elario's boss Mike Swinford to meet and help. Mike sent Dave Elario to meet with me. Dave Elario got very upset at me as I went to his boss and told me that even if his boss Mike wants to transfer me to another group/manager, Dave E. won't let that happen and he will advise Mike Swinford against that and against supporting me. Also Dave Elario threatened that he will take me out of job. (Ms.Trivedi thought there would be an open door policy.) After a week of this they put me on a Performance improvement plant(PIP). During PIP also managers lied of what we discussed my progress, manipulated discussion and kept harassing me; beating me up no matter what I did..I was also all burnt out and exhausted- mentally, emotionally and physically due to their torture and such disperate treatment, retaliation.

139.    My email to Dave Elario with highlights paragraph relevant this cause of

actions and allegation here. And Dave Elario's response email that I work on my relationship skills.

**From:**        *Elario*, David (GE Healthcare) <David.*Elario*@med.ge.com>

**Sent:**        Friday, November 16, 2012 8:07 AM

**To:**        Trivedi, Madhuri (GE Healthcare) <Madhuri.J.Trivedi@ge.com>

**Subject:**        Re: information

---

Madhuri,

Thank you for the info. I know you spent time with Mike Truman and others a few weeks back. If there are open issues, please circle back with Mike or Dave Mehring.

One thing I've learned over the years is that not all of my ideas are supported. I've always tried to work to understand rationale at times but sometimes the business does make decisions to move in a direction. Sometimes, I've seen that my idea while not right at the time later got accepted. In the end, we all should stay focused on working on our responsibilities and building strong relationships.

Dave *Elario*
GM Core HCS Services
Global Services

3114 N. Grandview Blvd

---

..........................................

**From:** Trivedi, Madhuri (GE Healthcare) **Sent:** Thursday, November 15, 2012 1:04 PM **To:** Elario, David (GE Healthcare) **Cc:** Trivedi, Madhuri (GE Healthcare) **Subject:** FW: information

Hi Dave Elario,

Resending this email again; it's 2MB size. Thank you for your time.

Best,Madhuri

**From:** Trivedi, Madhuri (GE Healthcare) **Sent:** Saturday, November 03, 2012 6:20 AM **To:** Elario, David (GE Healthcare) **Cc:** Trivedi, Madhuri (GE Healthcare) **Subject:** information

Respected Dave Elario,

Hope your mother is feeling well now. I wanted to go over few things during our meeting.

▫ There had been some security/configuration issues when I was testing Insite Exc-agent for remote desktop was running on IPV4/IPV6 and also on multiple ports by default(so it is wide open for world to access and hack the system). There was lots of investigation and solutions I worked on to address these...but the project lead for that did not have any time scheduled for this. And was not helpful to address this. I had several HITECH/HIPPA training before and have worked in Healthcare and know it's addresses confidentiality, availability and security of data. so I wanted to address this as it was crucial.

So instead of addressing and investigating why it's failing; LSD and PL(mentioned this to manager
...................................
also) they were over confident and took Windows and Linux as same when it's apples and oranges. &
created problem for me.

.......................................

⯀ Greg yelled at RSVP team manager and lead several times and at the end for no reason he did that to
me. David Mehring told me that he has temper problem. So I have moved my cube(also I wanted to stay
away from microwave)

⯀ ONLY Due to my work and support since December 2011 till date InsiteExc customers-OLE(more than
100 OLEs have used documentation I created for support) can access device remotely using XP/Windows
.......

So instead of addressing/supporting these; they took it other way--..Is there any guidelines when a
person is (doing a right thing and still tech leadership/manager do not take that into consideration and
instead use it against) for us so that the person who brings this up and it is properly addressed and taken
care and the person does not get into problem for doing right thing...

⯀ Doing right thing is what matter not pleasing people. I have always communicated nicely in a pleasing
way; people should understand enormity.

Due to all this people who report to core team and other GST team don't even report all good work I
do..Like my Exc support was never reported by the person in a quarterly review even though they know
that I am doing it while they report about other team member. Should not things that actually happened
should be reported.

This is short summary. I may send some remaining details later. I have worked in life science, Electronic
Med Records, Health insurance area and remote service- each day I come to work excited forgetting all
this behind but still others are not letting it go. When I am being blamed for things I am doing right..I
have told Dave M that I will improve my influencing skills going on and I am already reading a book-and
doing online courses.

⯀ I take ownership and deliver in agile (flexible to requirements and iterative) for projects from concept
through delivery; but all this is unnecessary friction- mentioning all this to manager during 10n1 also do
not do any good...are waste of time and energy and brings down my productivity because other people
are also reporting to them so they listen to them more even though it's not right. I take work as a
worship. Thank you very much for your time..

140.    Despite internal GE groups writing emails to Dave Elario that they can't fulfill

contract obligation that they sign with customers( private , public and government hospitals ,
doctors who use these medical devices). And I Madhuri also informed managers/Dave Elario
about these issues.

141.   Dave Elario-General manger at GE bragged how aggressively GE is integrating
Insite

Exc( name of defective medical device) in couple dozen medical device types. This was audio
video recorded during quarterly internal townhall for all employee meeting. Despite all these; He
and GE kept integrating, installing and releasing into production and to costumers(hospitals) on
all kinds of medical devices(aka ultrasound,); ..And were proud to finish modality integrations
on as many modality as fast and as quickly and as they can. While beating Madhuri and working
on systematically to get rid of her. Even after Dave Elario was made aware of issues and that it is
misleading, false and omission by not disclosing these issues as well as GE was saying that it
was HIPPA-HITECH complaint but Insite EXC lacked adequate controls for this; --most critical
is Insite EXC failed security tests from DAY 1 and knowingly GE released it on all kind of
medical devices for years..

142.   It is Conspiracy and false case made against Madhuri to end her employment with
GEHC . When GE kept harassing me when I was doing my job, tests failed and as GE knew
defects but knowingly didn't tell me about them instead tortured me that I am slow and stupid.
but the truth was I did understand but they were technically incompetent and were doing fraud by
concealing these material defects to me, customers and public- stakeholders and stockholders,
regulator)

143.   **Below is my First Project "Insite EXC" , manager's review where Dave Sallis**

wrote that it is GE's problem. Also GE fired Dave Sallis just a month ( April 2014)before

my arbitration hearing on May 2014…

EXHIBIT 22 that

"Sean Scillen Quarles and Bradley attorney who represented GE at arbitration- he

knowingly didn't provide EXHIBIT 22; where manager Dave Sallis "gave good rating in my

performance review and wrote that it is GE's problem"-Sean didn't give this document during

discovery(otherwise I would called Dave Sallis as WITNESS in hearing—and gave on the day of

hearing –seconds before hearing began.."



144.    With Second project RSVP GEIP project , there was lots of stress and

tension between team leads/managers/memebers and overall..as there were three

companies-GEHC, GEIP and GE Energy; hence different approaches, directions, priorities

and it was not working well(even before Madhuri joined the team)

145.    In Second project ;GE Digital manager Joe Purcell in Detroit and GE Digital

team lead Barry in Detroit had concerns/conflicts with/about GE healthcare and Greg

Stratton.

146.    Mohieddine Barhoumi included me in defect review meeting where all

leads/mangers/test engineers involved to help defect fixing . My contribution was

impressive in those meeting and overall defect fixing. Joe Purcell, Barry and test engineers

from GEIP appreciated and thanked my approach, communication, collaboration and technical skills. Test engineers wanted to do what Madhuri was suggesting and they were delighted. In Second Project Joe Purcell, Barry also gave excellent performance review including soft skills and relationship but GE healthcare manager David Mehring and GEHC managers swalloped that and excluded any positive review I got about my "getting along" and "relationship" ..

147.     I believe it is marital discrimination as well as I am divorced so illegaly and pointing finger based on "relationship"---spouse of GE Executive lacked technical executives and were driving product quality at GEHC..GEHC architect Ofir Dahan fought with GEHC managers including my managers that "why these technical incompetent spouses of GE managers and executives are driving quality of medical devices when she/they have no clue what she/they are doing". Ofir resigned from GEHC in April 2013(one month before I left)..GEHC managers Carl Conrath and David Mehring lied that Ofir was fired for not getting along and fighting but Ofir told me months back that he is leaving GEHC and ofir did RESIGN but GEHC manager Carl Conrath and David Mehring thought that Madhuri wouldn't know true reason why Ofir left so best is to LIE..

148.     During Second project other GE division (such as GE corporate, GE Energy, GE Transportation, GE digital)project leads and managers were happy with me but GE healthcare Wisconsin manager continuously retaliating and harassing me —for no reasons —diverting their failure and blame onto me..

149.     GE PRETEXT explanation is that I was transferred into second project); into which GE managers all across country and in outside of USA where writing abusive emails, verbal abusive phone calls, infighting and blaming each other —were totally

1  **dysfunctional with 1% productivity as for two plus years didn't produce anything. During**

2  **my last month at GEHC, GEHC was looking to BUY READYMADE Software/firmware**

3  **from OUTSIDE Company.**

4

5

6

7

8  **<u>Below are details about H1 B visa, immigration withdrawal while arbitration</u>**

9  **<u>pending, Thermo fisher job offer, GE & Jenny's email that Trivedi can't use</u>**

10

11  **<u>PERM elsewhere so she can extend her H1 B after getting fired</u>**

12

13

14  150.   Jenny **worked on my H1B visa and department of labor certification related**

15  **to H1 B in 2010 when I was employed at GE, Boston EXHIBIT 20.**

16  151.   **Later Jenny worked on my H1 B visa when I joined GE healthcare in**

17  **Waukesha, WI. Jenny also sent EXHIBIT 23**– permanent residency letter. And **Exhibit 11**

18

19  **when my arbitration was pending that she and GE has cancelled my H1 B visa and won't**

20  **pursue filing I 140 after my PERM in May 2013 was approved as "a person of extra-**

21  **ordinary ability".** Jenny has shown a cold, pre planned , heartless, illegal unethical actions with

22  similar intent to be part of GE's scheme of retaliation.

23

24

25  **From:** Jenny Schrager [mailto:JSchrager@Fragomen.com]
   **Sent:** Wednesday, July 03, 2013 2:12 AM
26  **To:** Madhuri Trivedi
   **Cc:** Holton, Adam (GE Healthcare); barbara.tremel@med.ge.com; Price, Catherine N (GE
27  Healthcare)
   **Subject:** RE: madhuri
28

Madhuri -

We need to make this clear. Unless we receive authorization from GE's internal legal counsel, we cannot postpone withdrawal of the H-1B petition. Second, unless GE Healthcare can guarantee that they have a permanent offer of employment available to you (in the same position/location as listed on the PERM application), the green card application will not move forward (i.e. GE Healthcare will NOT file the I-140 petition).

In addition, we cannot opine on whether you have a claim pursuant to the Violence Against Women Act.

Please note that we are GE's immigration counsel at this time. As you are undergoing the mediation process within GE, kindly remove my name from copy on future email correspondence as this is an internal GE matter.

Finally, we are not authorized to provide you with any further immigration guidance as you are no longer a GE employee. You may wish to seek personal counsel for any future immigration or employment issues.

Regards,
Jenny
Jenny S. Schrager
Partner
Fragomen, Del Rey, Bernsen & Loewy, LLP
7 Hanover Square
New York, NY 10004-2756
Main - 212.688.8555
Direct - 212.230.2883
E-mail - jschrager@fragomen.com
https://www.fragomen.com

From:       Madhuri Trivedi <madhuritrivedi@hotmail.com>
To:         "Holton, Adam (GE Healthcare)" <adam.holton@ge.com>, "Price, Catherine N (GE Healthcare)" <catherine.price@med.ge.com>,
Cc:         "jschrager@fragomen.com" <jschrager@fragomen.com>, "barbara.tremel@med.ge.com" <barbara.tremel@med.ge.com>
Date:       07/02/2013 04:37 PM
Subject:    RE: madhuri

---

Adam,
what about immigration support.
Once my H1 extension happens and greencard is portable

(I found out that employee can change the job based on H1 extension that prior employer filed based on that employer's Labor certificate/ I 140.......to a new employer as log as old employer continues supporting I 140 till it becomes portable..no monetary support is needed.......this is one option)

1

2   Sincerely,
    Madhuri

3

4   _____

5   From: madhuritrivedi@hotmail.com
    To: adam.holton@ge.com; catherine.price@med.ge.com

6   CC: jschrager@fragomen.com; barbara.tremel@med.ge.com
    Subject: RE: madhuri

7   Date: Tue, 2 Jul 2013 15:30:07 -0500

8   **Jenny,** What about Violence against woman act at workplace for immigration.

9   **Immigration mentions support to woman in workforce if such things have taken place from**
    **low to critical severity and that can/have caused hardship to woman.** There is the a law if

10  such things against women happened at workplace. That addresses such things.

11
    Sincerely,

12  Madhuri

13  _____

14  From: madhuritrivedi@hotmail.com
    To: adam.holton@ge.com; catherine.price@med.ge.com

15  CC: jschrager@fragomen.com; barbara.tremel@med.ge.com; madhuritrivedi@hotmail.com
    Subject: RE: madhuri

16  Date: Tue, 2 Jul 2013 12:46:27 -0500

17
    Adam,

18  As I have mentioned below things related.

19  1) I just need to get back to job mainly for immigration /logistics issues. Once my H1 extension
    happens and greencard is portable

20
    (I found out that employee can change the job based on H1 extension that prior employer filed

21  based on that employer's Labor certificate/ I 140.......to a new employer as log as old employer
    continues supporting  I 140 till it becomes portable..no monetary support is needed.......this is one

22  option)

23
    2) In the meantime which will be relatively short time; high skilled immigration law will be in

24  place which senate passed a bill for recently. So  In future ,I may stay with same current GE
    group , go elsewhere within GE or go outside of GE.

25
    3) Consider this as negotiation points to resolve things and find solutions and come to common

26  agreements. I know in december there was appraisal training video session with several GEHC

27  HR leaders. And you mentioned that even if employee gets unfair rating they need to work on a
    plan that manager gave ..While another HR leader said that if employee gets unfair ratings they

28

should get a new manager to work for and not a plan. There was a recorded session so you can double check.

While I was employed I requested to Dave Elario and others to change the manager when manager was being unfair. That's what Bill Barbiaux also mentioned that they treated you badly and they were unfair.

So please consider me getting back to job as a short term things till immigration is worked out. Why should I go through extreme hardship and also being a woman when I was doing good job and they were unfair ... and those people did not address defects in production for ten years for example.

Sincerely,
Madhuri

—————————————————————————————————————————————

From: madhuritrivedi@hotmail.com
To: adam.holton@ge.com; catherine.price@med.ge.com
CC: jschrager@fragomen.com; barbara.tremel@med.ge.com
Subject: RE: madhuri
Date: Tue, 2 Jul 2013 10:53:29 -0500

**I added info:**

**Otherwise it will create lots of hardship for me.** I was doing a good job and they gave unfair ratings. There was a hostile and unprofessional environment(Dipti wrote unprofessional email on my fifth working day for no reason and through out later on she was hostile and unprofessional..reporting to manager such created more problems), managers and some leads treated me badly and where unfair. Like Greg S. yelling, being hostile , showing & using body language to use gun and then several time surfing on internet real guns from office desk (I saw that because I sat next to him) to threaten for no reasons(at that same time Milwaukee temple shooting happened and being Indian It was scary). I was doing a quality job there was a huge stress within teams and management due to backoffice falling apart issues and huge conflicts and stress in a project with GE Intelligent platforms ;which GEHC broke up after two years of working with them. Old tool had lots of defects and they wanted me to work on newer tool with keeping defects and I wnated to fix those. I have found out/investigated 30 incidents related to security, networking, missing operating system libraries, connectivity, incorrect tests written for production software, incomplete requirements, incorrect design and architecture which had performance issues and scalability problems. These incidents had varying severity from critical (stopping program for two months); product can potentially be hacked on medical devices where it was installed, to medium and low severity. I was doing my job and it was my expertise.

 All these shouldn't be considered.
It's like what can this poor girl do ; hence we will continue being unfair.

**Immigration mentions support to woman in workforce if such things have taken place**

**from low to critical severity and that can/have caused hardship to woman**. There is the a law if such things against women happened at workplace. That addresses such things.

Sincerely,
Madhuri

_____

From: madhuritrivedi@hotmail.com
To: adam.holton@ge.com; catherine.price@med.ge.com
CC: jschrager@fragomen.com; barbara.tremel@med.ge.com; madhuritrivedi@hotmail.com
Subject: RE: madhuri
Date: Tue, 2 Jul 2013 10:31:40 -0500

Jenny >> As you asked "I don't know what you are referring to when you indicate "I know there is something that company can do as there is no need to pay and it's fine." Kindly clarify. "
>> The employer may delay notification of the INS. The law does not place any deadline on an employer to inform the INS of termination of employment. Upto 60-90 days employers do help employees so to find new employment. May be it is a GE policy because of payment of wages. But can that be leave without pay or ..I mean it's mutual agreement between me and company..I can give in writing that I am waiving any payment of wages in the meantime etc. Even ADR response was worked on it makes sense to hold on H1 till the response is received.
Employer could give worker reasonable time to find a new petitioning employer.
**Otherwise it will create lots of hardship for me.** As I have mentioned in ADR that I was doing a good job and they gave unfair ratings that led to me loosing a job wrongfully.
**My first step for greencard has been completed. It is not portable; GE can support till it becomes portable so I can transfer that without loosing any benefits. In the meantime new immigration law will be in place. So GE can support for short time and then I can change the job if I need to.**
Also Adam, I sent out Solutions Form on 06/09. Ayesha was out whole week for a vacation. And then it was moved to next Friday hence two weeks just passed by with no progress. As a senior HRM you can relate how important timing wise it is to address. I did everything I could from my side.
**Immigration mentions support to woman in workforce if such things have taken place from low to critical severity and that can/have caused hardship to woman.**

Sincerely,
Madhuri

_____

From: madhuritrivedi@hotmail.com
To: adam.holton@ge.com; catherine.price@med.ge.com
CC: jschrager@fragomen.com; barbara.tremel@med.ge.com; madhuritrivedi@hotmail.com
Subject: RE: madhuri
Date: Tue, 2 Jul 2013 10:31:40 -0500

Jenny >> As you asked "I don't know what you are referring to when you indicate "I know there

is something that company can do as there is no need to pay and it's fine." Kindly clarify. "
>> The employer may delay notification of the INS. The law does not place any deadline on an employer to inform the INS of termination of employment. Upto 60-90 days employers do help employees so to find new employment. May be it is a GE policy because of payment of wages. But can that be leave without pay or ..I mean it's mutual agreement between me and company..I can give in writing that I am waiving any payment of wages in the meantime etc. Even ADR response was worked on it makes sense to hold on H1 till the response is received.
Employer could give worker reasonable time to find a new petitioning employer.
**Otherwise it will create lots of hardship for me.** As I have mentioned in ADR that I was doing a good job and they gave unfair ratings that led to me loosing a job wrongfully.
**My first step for greencard has been completed. It is not portable; GE can support till it becomes portable so I can transfer that without loosing any benefits. In the meantime new immigration law will be in place. So GE can support for short time and then I can change the job if I need to.**

Also Adam, I sent out Solutions Form on 06/09. Ayesha was out whole week for a vacation. And then it was moved to next Friday hence two weeks just passed by with no progress. As a senior HRM you can relate how important timing wise it is to address. I did everything I could from my side.

**Immigration mentions support to woman in workforce if such things have taken place from low to critical severity and that can/have caused hardship to woman.**

> 152.    **Because Jenny intentionally and knowingly didn't file my PERM certificate 365 days before my H1 B visa EXPIRE; so that I can EXTEND my H1 B BEYOND total SIX years( even when GE fired me illegally and cancelled H1 B). So if Jenny would have filed my PERM with department of labor 365 days before my H1B was expiring even when I got fired by GE in 2013; I could have got my H1 B extended at some other employer.**

**From:** Jenny Schrager [mailto:JSchrager@Fragomen.com]
**Sent:** Wednesday, July 03, 2013 2:18 AM
**To:** Madhuri Trivedi
**Cc:** Holton, Adam (GE Healthcare); barbara.tremel@med.ge.com
**Subject:** Re: copy of certified PERM

We need GE's authorization to provide you with this. It is generally not provided to employees. Note that you will not be able to use the PERM with another employer to extend your H-1B status.

Jenny S. Schrager
Partner

Fragomen, Del Rey, Bernsen & Loewy, LLP
7 Hanover Square
New York, NY 10004-2756
Main - 212.688.8555
Direct - 212.230.2883
E-mail - jschrager@fragomen.com
https://www.fragomen.com
Follow us on Twitter -- http://twitter.com/fragomenglobal

Temporary Address:1301 Avenue of the Americas10th FloorNew York, New York 10019

From:      Madhuri Trivedi <madhuritrivedi@hotmail.com>
To:      "Holton, Adam (GE Healthcare)" <adam.holton@ge.com>,
Cc:      "jschrager@fragomen.com" <jschrager@fragomen.com>,
"barbara.tremel@med.ge.com" <barbara.tremel@med.ge.com>
Date:      07/02/2013 04:45 PM
Subject:      copy of certified PERM

Jenny,
I don't have copy of PERM.
Would you please email copy of certified PERM.Tnx.

153.    As I mentioned I already had a full time JOB OFFER in June 2013 from Life

Technology/Thermo Fisher scientific at Madison, Wisconsin facility working of DRUG

DISCOVERY JUST TWO WEEKS after I was fired by GE. But Life tech/Thermo fisher job got

stuck on H1 B visa as there was no time left to extend H1 B and file a BRAND NEW PERM

with department of labor by another employer –thanks to conspiracy by GE, GE manager David

Mehring (**EXHIBIT 21** shows  I emailed David Mehring and Nate Davis prior to joining GEHC

that GE must file PERM 365 before H1 expires), GE architect Nate Davis, Jenny and Fragomen,

**Below is Life Tech/Thermo Fisher job related true and correct excerpts of emails for H1 B
visa transfer:**

**From:** Madhuri Trivedi [mailto:madhuritrivedi@hotmail.com]

All visa petitions and PERM attached.

From: madhuritrivedi@hotmail.comTo: bryan.nguyen@lifetech.comDate: Mon, 29 Jul 2013
13:14:51 -0500

Sending visa docs.. Will send anotehr email with rest. Could I be in touch with your immigration people. Tnx.

H1_UTCFS.pdf (659 KB)          H1_RDT.pdf (611 KB)          Trivedi - ETA 9089.pdf (195 KB)

scan1.pdf (681 KB)

Entry-Exit Dates Chart.doc (35 KB)     H-1b_BT.pdf (59 KB)          scan 2and3.pdf (2 MB)

**From:** Nguyen, Bryan [mailto:Bryan.Nguyen@lifetech.com]
**Sent:** Tuesday, July 23, 2013 1:27 AM
**To:** Madhuri Trivedi
**Subject:** RE: madhuri

If you're willing....can you provide our legal with the following information?  Thanks.

    a.      All of her H-1B approval notices
    b.      A copy of her most recent H-1B petition.
    c.      A copy of her PERM labor certification, if available.
    d.      A copy of her I-140 receipt or approval notice, if available.
    e.      A copy of her I-485 receipt notice, if available.

-Bryan
**From:** Nguyen, Bryan [mailto:Bryan.Nguyen@lifetech.com]
**Sent:** Saturday, July 20, 2013 5:17 AM
**To:** madhuritrivedi@hotmail.com
**Subject:** RE: madhuri

Madhuri,

I'm sorry but my phone has no more battery life. I will forward this to legal and will wait for their approval.

-Bryan

**From:** Nguyen, Bryan [mailto:Bryan.Nguyen@lifetech.com]
**Sent:** Friday, July 19, 2013 8:52 PM
**To:** madhuritrivedi@hotmail.com

Hi Madhuri,

Our legal team is educating us on the transfer process. When did you leave GE exactly?

-Bryan

## IV.   CYBERSECURITY

154.   Whistleblower Trivedi had reason to believe that by telling authorities about a cybersecurity problem, or a company's failure to disclose one, they would be reporting a securities-law violation.

155.   Below email communication highlighted between Trivedi and general manager Josh Hana.

That I got incorrect performance appraisal rating because of team member's technical incompetence by prexetual manner rating me as "not inclusive"; also in retaliation to bringing up security compromise.



**From:** Trivedi, Madhuri (GE Healthcare)
**Sent:** Tuesday, May 21, 2013 2:38 PM
**To:** Hanna, Josh (GE Healthcare)
**Cc:** Khan, Ayesha (GE Healthcare); Trivedi, Madhuri (GE Healthcare)
**Subject:** information

Hi, Josh/Ayesha

**Bringing such things to Carl/Dave has not been helpful and I have no choice but communicate to Josh/you in order to address root cause of the whole issue.**

As you both were new and not involved in much of history this is just one example.

This is just an example; I can go on for list of such items ( For Insite2(EXC), Old RSVP, New RSVP )where I had to bring up things as part of my job and my expertise. When doing that making issue about my growth value "How you do it" is a retaliation. Because leads missed it..maybe they were feeling insecure from inside when their short comings came out to be known by me. And Dave M /Carl didn't do much to address those in proper manner and make my issue even when it was said nicely. After several (close to 30-35) of such incidents and reporting to Dave M(some to Carl) ; nothing happens and then they give me hard time for no reason...I will have to go above the chain and escalate that to make sure senior management is aware and at least someone would address those in proper manner. After all I am a human being too and there is a limit one person can go on with such thing.



| From: | Trivedi, Madhuri (GE Healthcare) </o=GEMAIL/ou=First Administrative Group/cn=Recipients/cn=212070205> |
|---|---|
| Sent: | Tuesday, May 21, 2013 4:22 PM |
| To: | Hanna, Josh (GE Healthcare) <Josh.Hanna@med.ge.com> |
| Cc: | Khan, Ayesha (GE Healthcare) <Ayesha.Khan@ge.com> |
| Subject: | RE: information |

Josh, As you mentioned to know more what I am trying to point out here. I can stop by at your desk and explain quickly. Or can meet at Ayesha's office with three of us quickly to go over this emails( two emails mainly...I sent few updates to two subject emails today as to provide more information).

Such findings led to people feeling insecure and making me look non inclusive.

**From:** Trivedi, Madhuri (GE Healthcare)
**Sent:** Tuesday, May 21, 2013 3:42 PM
**To:** Hanna, Josh (GE Healthcare)
**Cc:** Khan, Ayesha (GE Healthcare); Trivedi, Madhuri (GE Healthcare)
**Subject:** RE: information

I said below close to 30 such incidents which involved security, usability, workflow, networking, IPV6, operating system missing libraries, design, architecture, requirements , performance of SW applications and scalability and meeting GEHC requirements.



| **From:** | Trivedi, Madhuri (GE Healthcare) </o=GEMAIL/ou=First Administrative Group/cn=Recipients/cn=212070205> |
| **Sent:** | Wednesday, May 22, 2013 8:45 AM |
| **To:** | Hanna, Josh (GE Healthcare) <Josh.Hanna@med.ge.com> |
| **Cc:** | Khan, Ayesha (GE Healthcare) <Ayesha.Khan@ge.com> |
| **Subject:** | RE: Quality Center access & its details |
| **Attach:** | RE_ information.msg |

Josh, I have attached another email. They have given me incorrect rating for minor issue which I am not even part of. So is that fine?

I said in email attached there were close to 30 such incidents which involved security, usability, workflow, networking, IPV6, operating system missing libraries, design, architecture, requirements , performance of SW applications and scalability and meeting GEHC requirements. These incidents were of varying severity from critical(stopped program for two months to low)

Such findings led to people feeling insecure and making me look non inclusive.

**From:** Trivedi, Madhuri (GE Healthcare)
**Sent:** Tuesday, May 21, 2013 3:46 PM
**To:** Hanna, Josh (GE Healthcare)
**Subject:** FW: Quality Center access & its details

**Respected Josh,**

**Security compromise I found out last year when I was supporting FEs/OLEs for our product(which has 60,000 plus devices connected  ) and communicated to all team leads/managers last year which my**

1
2   Reporting such things in which I am not even invloved in creating those security vulnerability should be
supported by leads/managers. They might have felt insecure because their short coming came to known
by a newer person(I was just five month old employee within organization ☺ )

3

4   **Also earlier the findings as part of support work email which I sent to GEHC teach leads/manager
on June 11, 2012 and Dave M's reply email I received  as email attachment.**
5

6   .

7   I am sending this as a kind of last email to clarify as I know your time is important. And I don't want to
escalate that either unless needed.

8
    Please let me know if I need to provide more clarifications to any of such items I mentioned .
9

10

11   Regards and thanks,

12   Madhuri

13       156.    <u>FDA/department of homeland security and hospitals have raised serious concerns</u>

14   <u>about cyber security of medical devices and possibility of attacks.</u>

15
         157.    <u>R</u>elated to security. Ms. Trivedi was proactively and diligently doing her job in
16
             this
17

18   regards. Scott Erven –security researcher has been invited on various seminars for cyber

19   security…so because of my efforts partly these cyber securities are getting attentions.

20
         158.    *In 2015, the Securities and Exchange Commission (SEC) <u>settled charges</u> that R.T.*
21
22   *Jones Capital Equities Management violated the "safeguards rule" ; regarding its failure to*

23   *adopt reasonable policies and procedures. Even though no one appeared to be harmed, the SEC*

24   *censured R.T. Jones and fined the firm $75,000. Justifying the enforcement, the SEC said, "Firms*

25   *must adopt written policies to protect their clients' private information and they need to*

26   *anticipate potential cybersecurity events and have clear procedures in place rather than waiting*

27
    *to react once a breach occurs." In the Matter of R.T. Jones Capital Equities Mgmt. Inc.,*
28

1   *Investment Advisers Act Release No. 4204 (Sept. 22, 2015), available at*

2   *https://www.sec.gov/litigation/admin/2015/ia-4204.pdf*

3       159.   *The Voya settlement represents a substantial step forward in the SEC's regulation*

4
    *of cyber-related activities. In the Matter of Voya Financial Advisors Inc., Exchange Act Release*
5
    *No. 84288, Investment Advisers Act Release No. 5048, at 3 (Sept. 26, 2018), available at*
6
7   *https://www.sec.gov/litigation/admin/2018/34-84288.pdf.*

8       160.   **GE was knowingly, defiant of lacked security and defects and despite my**

9   **reporting and GE themselves knowingly.**

10      161.   "For public companies and other entities regulated by the Securities and

11            Exchange

12
13  Commission, mismanagement of their cybersecurity violate securities laws."

14      162.   A **material defect** is one that the Seller is aware of and would have materially

15  impacted your **terms of** purchase and which the Seller was aware.

16
    163.   *SEC's expectations highlights the role of "cybersecurity whistleblowers," those*
17
*reporting internally, in building the type of improved corporate culture necessary to discover*
18
19  *and remediate cybersecurity risks.*

20

21      **V.**   **GE issue in this matter goes into question the oversight of the board.**

22  Under federal securities laws, directors have a legal obligation to disclose information to the

23
public.•Disclosure requirements are established by the Securities and Exchange Commission.
24
25      164.   Pat Hale- MIT professor for Systems engineering and a past president of

26            INCOSE(

27

28

International council on systems engineering)requested MIT general counsel to get involved and address this matter. But MIT general counsel and staff declined. Pat Hale retired before couple of years..

**VI.    GE managers, senior management knew or recklessly failed to ascertain whether those statements were false and misleading. this behavior, in violation of the Securities and Exchange Act.** SEC. 302. <<15 USC §7241.>> CORPORATE RESPONSIBILITY FOR FINANCIAL REPORTS.

165.    SEC has endorsed efforts to stop further violations of the Act, such as reporting suspected misconduct to internal supervisors.

166.    Laws prohibit deceptive practices for use, benefits of medical device. Failing to disclose material information concerning its usage, operation, maintenance not as advertised, sold and mentioned in contract agreement; with intentional inducement, failed to willfully disclose and actively concealed defects.

### D.  Mediation and Arbitration with GE

167.    After GE terminated me illegally I filed EB1 –person of extra ordinary ability employment based -petition with USCIS(govt. agency);along with Harvard medical executive creating job for me at Harvard (job was after I get my EB1 approved as earlier Harvard said that they won't do H1 B ) ; and my innovative startup orangehealth for peer to peer crowdsourced support , management and actions for health conditions---and along with other credible evidences –I also mentioned National interest waiver EB2 category in that petition; but USCIS declined …

168.    Here is press release for my startup –

**"OrangeHealth Seeking Investors for Mobile App Peer-to-Peer Platform for Managing Diabetes, Other Health Conditions"**

> http://www.prnewswire.com/news-releases/orangehealth-seeking-investors-for-
>
> mobile-app-peer-to-peer-platform-for-managing-diabetes-other-health-conditions-
>
> 300477365.html

SAN FRANCISCO, June 21, 2017 /PRNewswire/ -- Madhuri Trivedi, an engineer, scientist, entrepreneur and immigrant, has launched her new company OrangeHealth and is currently seeking investors for its product. Trivedi is seeking seed funding in the range of $200k to $350k to further launch the app in various geographical areas, add more features, and launch a peer-to-peer platform app for sharing information. The new app will provide peer-to-peer crowd sourced community support with deep learning artificial intelligence (AI) to better manage diabetes.

She also has created and launched a new mobile health improvement app that is already used by more than 6,000 people to manage allergies, find a doctor, is used for predictive analytics for eating habits, and reminders at the time of eating.

"Prevention is key for managing illness like diabetes, but it's just as important that people can gain the information and support," says Trivedi.

"Right now, because of some challenges in my immigration status, while I have the technical support to build the app, I need funding to help with its launch because I am unable to work. The only way to get this app off the ground is through investors willing to support this important work," adds Trivedi.

She wrote heavily about precision medicine in April 2104, received a job offer in 2014 with Harvard Medical to create a cancer vaccine, artificial protein. President Obama in the 2015 State

of Union Address, launched precision medicine initiative. Trivedi has been unable to take the Harvard position because of immigration denials and challenges. While at General Electric, Trivedi's labor certificate for immigration was approved as "a person of exceptional ability" EB2 category. GE, however, didn't file the next step so she could work in the U.S.

After leaving GE, with the Harvard medical job offer and her entrepreneurial start-up, Trivedi filed for immigration under "a person of extra-ordinary ability" EB1 category, which DHS denied. Trivedi has a number of letters of support from professionals associated with her scientific and technical work .

Trivedi has a long career as an expert in her field. While at Raindance, Trivedi developed the world's first digital-equivalent to personal computer instrument for genome sequencing used for drug discovery in 2009. Here she was part of a 20 people start up that went on to generate hundreds of millions for revenue. Dr. Jonathan Rothberg, founder of the startup, was awarded National Medal of Technology and Innovation by President Obama and made $700 million selling the sister company to Life Technology. Trivedi did not make any money from the sale of the company.

She has made major significant contributions in extraordinary ability and national interest while working at Fortune 10/50 corporations, successful entrepreneurial startups. Only individuals with both exceptional technical ability as well as persistence and commitment can deliver what Trivedi has in a high-risk environment with do or die start up success.

About OrangeHealth

OrangeHealth provides quality and affordable healthcare tools and services through a software portal and peer to peer network. For more information, visit OrangeHealth.wixsite.com/orangehealth.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*END of Press release

169.    Since I used up almost all of my H1 B time and there was no time left for another employer to do PERM with labor department in order for me to get further H1 B extension..Life technology/thermo fisher scientific offered me fulltime job just two weeks after I was fired from GE but got stuck at H1 B level as I mentioned I had no time on H1 for employer to do PERM.

170.    GE immigration attorney and HR email that GE canceled my H1 B visa while mediation and arbitration is PENDING. And won't pursue any immigration I 140 paperwork.(EXHIBIT 11) –same Jenny Schrager –Mean fragomen lw firm attorney.

171.    Trivedi filed Mediation statement(EXHIBIT 13) through Cross Law firm(Waukesha, WI).

172.    GE offered ONE MONTH salary-that's it-nothing related to immigration at mediation in return for plaintiff to waive all her rights/claims/cause of actions against GE. Plaintiff declined to settle at mediation.

173.    Trivedi filed arbitration complaint with American Arbitration association. (EXHIBIT 4). She was pro-se / representing herself ;and prepared arbitration statement.

174.    Arbitrator was insulting and continuously cutting me off from asking questions during hearing ..when manager did perjury on second day morning of hearing I quit arbitration hearing and GE finished it alone. .Arbitrator didn't rule in my favor.

175.    After that Foley and Mansfiled sent a letter without bring up laws as I mentioned earlier in this lawsuit. I wrote an email to Seymour Mansfield in 2016 –that law firm failed to provide me legal service and bring up laws.

176.    Sean Scillen Quarles and Bradley attorney who represented GE at arbitration- he

knowingly didn't provide EXHIBIT 22; where manager Dave Sallis "gave good rating in my performance review and wrote that it is GE's problem"-Sean didn't give this document during discovery(otherwise I would called Dave Sallis as WITNESS in hearing—and gave on the day of hearing –seconds before hearing began and I have that in hearing transcript.

177. Neil Stekloff ; GE's internal counsel  for employment and labor(EXHIBIT 2) was involved. As a lawyer he also violated obstruction of justice.

178. *17 CFR § 205 and (15 U.S.C. 7245) Case 3:15-cv-02356-JCS Document 132 SEC amicus brief on attorney code of conduct Section **307 of the Sarbanes-Oxley Act of 2002 (the "Act") (15 U.S.C. 7245)***

It was GE counsel's legal duty to report SEC violations but Sean Scullen-quarles and Bradley, Neil and all others teamed up to cover-they should not be practicing law anymore.

### E.  GE declined government arbitrator; who told that he will RULE in Plaintiff's FAVOUR if selected.

179.    Peter Davis- a chief arbitrator/legal counsel at Wisconsin Employment
         relations

commission. peterg.davis@wisconsin.gov .He mentioned to me on phone that if he is selected as an arbitrator for my case with GE, he will make sure to fix my immigration and he will rule in my favor. He told me this on Dec 2013 that I is willing to talk about this to anyone...

180.    GE attorney declined via email to have him as arbitrator (GE argued that if Peter
         is selected then arbitration documents would have become public documents as he
         was a PUBLIC ARBITRATOR hence GE is declining).

Subject: RE: Trivedi/GE Healthcare 11-15-2013 lh [QBLLP-ACTIVE.FID36842469]

From: sean.scullen@quarles.comTo: madhuritrivedDate: Wed, 27 Nov 2013 20:55:08

I don't understand your question -- in a mediation the mediator doesn't take sides and is a neutral that works with both parties to try to reach a voluntary resolution.  In some of the cases in which Mr. Gibbons has served as a mediator we have been successful in reaching such a resolution and in others we have not.  **You are correct that the WERC people are not mutually agreeable.**

**Sean Scullen**

From: Madhuri Trivedi Sent: Wednesday, November 27, 2013 2:50 PMTo: Scullen, Sean (MKE x1421)Subject: RE: Trivedi/GE Healthcare 11-15-2013 lh [QBLLP-ACTIVE.FID36842469]

what about mediation that you worked with him on...**so Wis. Emp. relations people are not mutually agreeable between us..** Sincerely,Madhuri

From: sean.scullen@quarles.com To: madhuritrivedi

Subject: RE: Trivedi/GE Healthcare 11-15-2013 lh [QBLLP-ACTIVE.FID36842469]

Date: Wed, 27 Nov 2013 20:47:51 +0000

Mr. Gibbons has not served as an arbitrator in a case that I have handled or for GE as far as I am aware.  **I'm not sure who the Wisconsin Employment Relations arbitrator you're referring to is, but we are not interested in using someone from that entity.**

Sean Scullen

From: Madhuri Trivedi Sent: Friday, November 22, 2013 11:20 AMTo: AAA Carol PlacellaSubject: RE: Trivedi/GE Healthcare 11-15-2013

So we can have Peter Davis as arbitrator..If we can then I will contact Mr. Scullen. I wanted to reach out to you first. Sincerely,Madhuri.

181.    I have submitted in my Trivedi v.USDHS lawsuit my communication emails with Chuck Grassley's office, his chief of staff and his directors.. I called his office and gave my name, email address to make sure they and all directors, chief of staff read my email and they at least confirmed on phone that they have READ my email.. His office forwarded my email to senate judiciary committee. It was disappointing since senator Grassley was a lead lawmaker and huge fan of false claims act and despite FBI looking into it and having GE matter as FCA –nothing came out from his office.

**F.  GE internal dispute resolution policy called 'Solutions' - Excluded Claims and Law firms, attorneys' plaintiff retained with PAID FEES didn't provide legal advice nor brought up to GE, mediator, arbitrator-- SOX, Dodd Frank, Quitam, NDDA DOD and several other laws, Whistleblower protection laws. Nor the ones who did free review.**

182.    **GEHC Chief technology officer Mike Harsh told me on phone in 2017( he came**

**to my arbitration hearing in 2014 and after hearing he left GE after 35 years of service.) NO ATTORNEY will bring up laws that in my situation as GE pays a LOT to attorneys.**

   *I.    **GE internal dispute resolution policy called 'Solutions' =Excluded Claims,***

        *excluded from Levels III and IV of Solutions, are claims that allege concerns such as the following Claims that do not allege legally protected activity or enforceable rights in the jurisdiction in question; ..Claims based on alleged violations of the GE Policy on Working with Government including, but not limited to, alleged violations of the federal False Claims Act ………….Claims brought by or against Covered Employees,*

*where a third party would be necessary to the resolution of any claims or where the*

*absence of the third party could subject the Company or the covered employee*

*inconsistent obligations, and all parties do not agree to participate in Level III and*

*are to be bound by an arbitration under Level IV of solutions policy.————————*

***Excluded Claims, which are excluded from Level IV of Solutions:*** *In addition,*

*claims which, by applicable statute, regulation or other legal requirement are*

*precluded from mandatory coverage under a pre-dispute binding arbitration are*

*considered excluded from level IV solutions.(see appendix C)*

### *Appendix C*

*In addition to the descriptions in Sections K ("Covered Claims") and L ("Excluded*

*Claims") of the Solutions Procedure, claims that are considered "Excluded*

*Claims" with respect to Level IV of Solutions, because by applicable statute,*

*regulation or other legal requirement they are precluded from mandatory coverage*

*under a pre-dispute binding arbitration agreement, include:*

> ***Claims arising under section 1514A of the Sarbanes Oxley Act of 2002,***
>
> ***as amended,***
>
> ***Claims arising under section 1057 of the Dodd-Frank Wall Street***
>
> ***Reform and Consumer Protection Act***
>
> ***Claims arising under Section 748 of the Dodd-Frank Wall Street***
>
> ***Reform and Consumer Protection Act (relating to Section 23 of the Commodity***
>
> ***Exchange Act)***

183.   Jeff Goldman sent a letter to GE but he was just an immigration attorney so it is understood that He can't bring up employment rights.

184.   But other attorneys who I paid were. **All of the below mentioned attorneys READ –**

**GE's solutions policy which is ADR- mediation, arbitration and it states Dodd Frank, quitam, SOX and other excluded claims as stated above..**but none of these attorneys told me anything regarding this and I found out on my own LATER kind of recently about Dodd Frank act related section 718 excluded claims. So I was kept in DARK by my own hired employment attorneys.

185.   Law firms attorneys never mentioned my rights and laws related to GE violations related to any of above excluded claims and more. Though it clearly says that Dodd Frank Act section 718 whistlblower claims are excluded. Since GE is a public company as lawyers it was their duty tell me about SEC and fraud and filing a lawsuit under Dodd Frank act section 718 that I am eligible in court. -- as per legal, professional, ethical obligations as they were PAID money to represent, retained and conduct mediation, arbitration and send legal letter to GE,  provide legal consultation…bring up laws ..But no one did..

186.   And I lacked legal knowledge. **For me it was like a sailing in legal ocean and reading laws.. And I trusted kind of what they told which was a BIGGEST MISTAKE.**

187.   ( a)CROSS LAW Firm in Waukesha, WI(www.crosslawfirm.com) I paid this law firm .Cross law firm represented me at mediation and prepared mediation statement and sent to GE.

188.   Cross law firm attorney should lose their attorney license and disbarred for what

they have done. Look at EXHIBIT 13 ;mediation statement ; they didn't bring up any laws ,whistleblower rights other than simple discrimination. They didn't even mention retaliation after reporting discrimination, unlawful employment practice (42 USC § 2000e-3(a) )or anything. Law they cited was 42 USC § 2000e-2(a)(1)..Hence their mediation statement was flawed and they intentionally DID THIS.

189.    Later Cross law started threatening me to settle with GE by taking one month salary (I have those emails) and waive all my rights and claims against GE. Cross law firm left.**David Rosenow told me that as GE is his neighbor in little town Waukesha, WI ; He won't mention that GE was doing fraud in my mediation statement.** (cross law firm was fired by me) **after they forced me to settle and even didn't bring any claims.** I did mediation alone.  Cross law firm didn't bring up Quitam claims in mediations statement , SEC  Dodd Frank act Section 718, 10 U.S.C. §2409  Subpart 203.9,SOX –OSHA,  obvious as black and white clarity **that they were SOLD**. (Other attorneys were not willing to work on alternate dispute resolution as they litigate in court and hated GE ADR plus said that they are not experts etc etc.; so I was stuck with Cross law firm as clock was ticking)

From: Attorney Daniel L. Rosenow [mailto:drosenow@crosslawfirm.com]

Sent: Friday, September 13, 2013 9:33 PMTo: 'Madhuri Trivedi'Subject: RE: info for breaches.

Ms. Trivedi,

Given that it was your job to find and fix such security breaches, there is a significant hurdle for you to overcome in stating a whistleblower retaliation claim.

190.    **(b) Despres, Schwartz and Geoghegan, Ltd. (dsgchicago.com)**

**I paid this law firm .This law** firm was hired to represent me at Arbitration hearing. They sent

Pre arbitration hearing brief to GE and arbitrator (EXHIBIT 14).... his theme was

*when it comes to competent women "soft skills" becomes a proxy for "too aggressive," i.e., not*

*acting like a woman –*

191.    But he didn't bring up any whistleblower, SOX, DOD Frank claims and other

claims as I mentioned here in brief nor mentioned to me nor to GE when he represented me…I

wantedto bring whistleblower retaliation, HIPPA laws retaliation, Cybersecurity related

retaliation and more…he left and I did arbitration on my own without an attorney.

192.    **(c) Foley and Mansfield (foleymansfield.com)**

I paid this law firm for all the work they did. Later I contacted Foley..I told them for Quitam

matter..Look at the letter they sent to GE on July 16,2014E(EXHIBIT 15) ..They also didn't

bring Dodd Frank act whistleblower, SOX, any  claims mentions here when they sent a letter to

GE, later negotiated with GE nor afterwards. Immigration right ( ) –was included in a leter to GE

because I emailed them about this as I read.

193.    Foley didn't  mention which to me appears as (intentional omission or /and

negligence) on any steps related to OSHA complaint, SOX whistleblower even though I gave

them what I submitted to OSHA, OSHA complaint and OSHA response. I wrote an email to

Seymour Mansfield in 2016 –that law firm failed to provide me legal service and bring up laws..

194.    Though David haron at Foley was looking into quitam; but his two partners were

pregnant and he didn't know; and he said that one of the Quitam case with Quest diagnostics is

going to Trial etc etc-

195.    **I also sent arbitrator final award to them in August 2014**

**(to entire Mansfield law firm team- David Haron, Andrew Shedlock and Seymour Mansfield along with other) and they didn't provide any guidance on going to court after arbitration award**. Also Foley didn't mention/bring up any rights related to appealing arbitration or going to court .And as my lack of legal knowledge I relied on them and assumed/believed that there was nothing I can do..But later I learnt than one can go to court shortly after arbitration to challenge arbitrator award.

<u>**Other Attorneys**</u>

196.    **(a)I didn't HIRE OR PAY Andrew Beato-** He looked at my claims free. Andrew Beato was looking himself into Quitam matter but somehow GE found out and GE contacted Andrew's partner to represent GE in another matter..So Andrew left saying that as his law firm partner is going to represent GE ,he can't work on my quitam /false claims act case.

From: Andrew M Beato <<u>ABeato@steinmitchell.com</u>>Date: Tue, Sep 9, 2014 at 3:27 PMSubject: Re: Call To: Madhuri Trivedi <<u>mcis99@gmail.com</u>>, "James R. Kelly" <<u>JKelly@steinmitchell.com</u>>

Thank you Madhuri.  I appreciate your clarification.    If there are any other reporting or disclosures you made to government agencies or to attorneys, please let us know so that we are aware of it.  In the meantime, we appreciate your patience.

 Andrew M. Beato ,Stein Mitchell Muse Cipollone & Beato LLP

1100 Connecticut Avenue, NW Suite 1100 Washington, DC 20036<u>(202) 737-7777</u> (Main Number) <u>(202) 296-8312</u> (Fax) <u>ABeato@SteinMitchell.com</u>

From: Madhuri Trivedi <mcis99@gmail.com>Date: Tue, 9 Sep 2014 17:03:39 -0500

To: James Kelly <JKelly@steinmitchell.com>Cc: Andrew Beato

<abeato@steinmitchell.com>

Subject: Re: Call

Attorney Andrew, thanks for your time. I had reported to OSHA-whistleblower.gov. They looked in to it. and said it does not fit into their 22 statues. They have device manufacturing related statue but it excludes medical device and drug manufacturers. THey said it is a valid concern, And employee does not have to prove , as long as have believed reasonably that there was a violation and reported. But in my case I had evidence which was good.

197.     Andrew Beato who is a quitam attorney in washington  DC; in 2014 after reading deposition of GE architect Bill Barbiux( Plaitiff Trivedi took Bill's deposition at conference room at her apartment building during arbitration)..Andrew mentioned after reading deposition I took that " Madhuri was an attorney preparing or doing work for you because deposition you took is professional work –similar to what and how a lawyer would do"

198.     Andrew makes millions as Quitam attorney..

199.     (b)I didn'T HIRE OR PAY David Nelson. He looked at my claims free. David Nelson –SEC attorney (David Boise law firm attorney and he was SEC regional director prior to that) reviewed my matter in 2013-2014 **but he didn't mention to me which whistleblower laws, which SEC laws, what needs to be done next** ,-only things he mentioned after reviewing along with his assitant was that I have valid, SEC claims against GE but his law firm represents defendants and also they change hundreds of thousands in retainer and lot more to represent me in SEC matter.

From: David Nelson <dnelson@bsfllp.com>

Date: Mon, Jun 23, 2014 at 9:21 AM

Subject: RE: should I send my deposition ?

To: Madhuri Trivedi <mcis99@gmail.com>

Cc: Aaron Marcus <amarcus@bsfllp.com>

Madhuri, today is hectic and I have some meetings tomorrow.  Is Wednesday possible for

you at some point?  Dave  David Nelson

BOIES, SCHILLER & FLEXNER LLP

401 East Las Olas Blvd.  Suite 1200 Fort Lauderdale, FL 33301

   (Ph) 954.356.0011 (Direct) 954.377.4233(Cell) 954.213.8810

200.   ( c) **Scott Oswald of employment law group**- employmentlawgroup.com, and is

   assistant reviewed everything but never brought up SOX, Dood Frank act and/or

   other claims ----...

201.   **(d)**To some I just paid consulting fees and to some they reviewed without any

   fees but none of them mentioned Dodd frank Act related claims or other claims.

202.   **Since my termination in May 31st 2013, GE knew all the violation**

**they did and knowing kept me in distress by withdrawing immigration just so to obstruct**

**me from fighting all these claims/cause of actions I was entitled too—and now at any point**

**arguing in this LAWSUIT that "it is time barred" In this time I had to Become Law**

**student and almost like a lawyer by reading Tons of legal material. For these and many of**

**such conduct; GE and GE attorneys MUST be in JAIL.**

203.

**G. Below events I did as a volunteer at vlab- several known companies pitched at vlab when they were new/smaller such as google( to give idea about vlab)**

204.     I volunteered at vlab. Since GE harassed me and messed up with me because GE was recklessly putting medical devices on internet. And recklessly putting technically incompetent people on -IOT platform

# IoT Security: High Stakes for Billions of Devices

# February 21, 2017 6:00 p.m. to 8:30 p.m.

The speed of Internet of Things (IoT) adoption is creating opportunities for startups developing IoT security solutions. Many industries such as healthcare, energy, automotive, and consumer products are being transformed using insights gained from the real-time data that IoT provides. As new online devices continue to be added at exponential rates, the frequency of sophisticated cyber attacks targeting consumers, businesses, and public services is also increasing.

Startups are competing against large corporations to establish themselves as leaders in IoT security. And the rewards leading the charge to protect against security breaches, hijacking, and individual privacy concerns is enormous. According to KBV Research, the IoT Security market expected to reach $29.2B by 2022.

- Is the Internet of Things making us more vulnerable to attacks?
- Given the anticipated growth in connected devices, will security solutions be able to keep pace?
- What are the biggest challenges for startups working on IoT Security?


https://vlab.org/events/iot-security-high-stake-billions-devices/

205.     **Speaker invite at TheWSIE -World summit on innovation and entreprenurship —https://thewsie.com/presenters-2019/**

mentioned below about me –

"Madhuri Trivedi: Scientist & entrepreneur. The mastermind of a health venture,

OrangeHealth which was established to provide peer-to-peer community support with deep

learning capabilities to better manage diabetes and hypertension. Leading an early stage AI-

driven e-commerce startup. She is deeply passionate about the role of exponential

technologies in shaping people's lives and using artificial intelligence and deep learning to advance business. Her professional achievements include but not limited to leading innovative projects for large companies."

206. Startups in the domain and what I was doing are filing IPOs and going PUBLIC while I am sucked into and stuck in these legal issues..What a great use of my time, energy and resources. Startup WISDO got hundreds of millions of VC funding last year and my startup was also doing crowdsourced peer to peer management but in UNIQUE and lot different way that solved patient/customer/users PAIN POINTS...That's what I wrote to California Judge Donato too, that my product related business plan and it is patentable and I will lose competitive advantage as there are always other who do things- TIME IS Critical but he didn't took it seriously. I can't look into FUTURE, nor I am being arrogant, nor exaggerating; but based on what I got feedback from industry experts, peers, market needs and my own belief that I would have succeeded including possible EXIT of being acquired/merger with larger company OR in LONG TERM IPO for my STARTUP( I even had "OHC" as NYSE stock exchange Ticker SYMBOL if I go PUBLIC) if I would not have been dealing with nonsense, legal fights, politics, bureaucracy and all this since I was illegally terminated. I have put huge amount of my resources, time, energy, SWEAT, BLOOD, PASSION into my startup, doing research about business..And in the END I GET this.

207. GE is ENRON like.

208. **White House Office of Science and Technology Policy (OSTP)director Dr. John Holdren referred my matter to General counsel at White house...**

---------- Forwarded message ----------

From: Leonard, Rachael L. EOP/OSTP <RLeonard@ostp.eop.gov>Date: Tue, Sep 13, 2016 at 1:40 PMTo: "Madhuri Trivedi>Dear Ms. Trivedi,

Thank you for your note, which Dr. Holdren referred to me. OSTP is a small agency that addresses science policy. OSTP does not address immigration or consumer fraud issues. For those topics, you may wish to contact:

The Department of Homeland Security, Office of the Inspector General:
https://www.oig.dhs.gov/index.php?option=com_content&view=articl
e&id=51&Itemid=133

The Department of Justice, The Executive Office for Immigration Review:
https://www.justice.gov/eoir , or

The Consumer Products Safety Commission: http://www.cpsc.gov/

Best regards,
Rachael Leonard
General Counsel
Office of Science and Technology Policy

# PRIVATE CAUSE OF ACTION

209.    Private right of action as it applies to cause of actions in this complaint. (Also not bound by pre dispute mandatory arbitration)... Plaintiff Trivedi incorporates by reference, as though fully set forth herein Private right of action as it applies to all cause of actions( where applicable) brought here in this complaint.

210.    **Implied cause of action** is a term used in statutory and constitutional law for

circumstances when a <u>court</u> will determine that a law that creates rights also allows private parties to bring a lawsuit, even though no such remedy is explicitly provided for in the law.

211.    Creating an implied cause of action for <u>constitutional</u> rights and Statutory causes of action.

An implied private right of action is where a court interprets the statute, constitutional law to

silently include such a cause of action

**Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971);**US Supreme Court ruled that an

implied cause of action existed for AN INDIVIDUAL whose violation of constitutional rights

212.    **Federal courts will provide the remedies required to carry out the**

**congressional purpose of protecting federal rights. Pp. <u>377 U. S. 433</u>-435.**

**(a) Remedies are not limited to prospective or declaratory relief, but the overriding federal**

**law controls the measure of redress. P. <u>377 U. S. 434</u>.** Page 377 U. S. 432

213.    United States Supreme Court. **J. I. CASE CO. v. BORAK**(1964) No. 402   Issue.

When no private right of action is explicitly sanctioned and no private remedies mentioned, is a

shareholder able to pursue rescission of a merger or damages for a violation of a federal

regulation in relation to proxy statements?

214.    In *J.I. Case Co. v. Borak* (1964), a case under the <u>Securities Exchange Act o1934</u>,

the Court, examining the statute's legislative history and looking at what it believed were the

purposes of the statute, held that a private right of action should be implied under § 14(a) of the

Act. Under the circumstances, the Court said, **it was "the duty of the courts to be alert to**

**provide such remedies as are necessary to make effective the congressional purpose."**

Section 14(a) of the Act is codified at 15 U.S.C. § 78(n)(a). As implemented by the SEC, it prohibits false or misleading proxy statements.

Held. (Clark, J.) Yes. When no private right of action is explicitly sanctioned and no private remedies mentioned, a shareholder is able to pursue rescission of a merger or damages for a violation of a federal regulation in relation to proxy statements. Preventing management or others from attaining authorization for corporate action via the utilization of fake or deceiving proxy solicitations is the reason §̂ 14(a) exists. The Act under which the rule publicized allowed the Securities and Exchange Commission (SEC) to pass rules and regulations decided are needed to secure the public interest and the shareholders interests. The congressional mandate to secure the interests of the investors needs an accessible judicial remedy to apply that defense. The SEC states that it lacks the ability to look into the veracity of all proxy statements submitted for registration. If investors' interests are to be safeguarded in the spirit of the congressional mandate, a private right of action for shareholders who feel mistreated must be created. Seeing as the statute fails to provide for all kinds of relief, the court must choose what remedies are suitable to address the alleged mistreated. In this way, any accessible remedy to a federal court can be used to offer relief for the plaintiff. ..

..............the section, which makes it

"unlawful for any person . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security . . . registered on any national securities exchange in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest *or for the protection of investors.*"

(Italics supplied.) While this language makes no specific reference to a private right of action, among its chief purposes is "the protection of investors," which certainly implies the availability of judicial relief where necessary to achieve that result.

The injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation ordinarily flows from the damage done the corporation, rather than from the damage inflicted directly upon the stockholder. The damage suffered results not from the deceit practiced on him alone, but rather from the deceit practiced on the stockholders as a group. To hold that derivative actions are not within the sweep of the section would therefore be tantamount to a denial of private relief. Private enforcement of the proxy rules provides a necessary supplement to Commission action. As in antitrust treble damage litigation, the possibility of civil damages or injunctive relief serves as a most effective weapon in the enforcement of the proxy requirements. The Commission advises that it examines over 2,000 proxy statements annually, and each of them must necessarily be expedited. Time does not permit an independent examination of the facts set out in the proxy material, and this results in the Commission's acceptance of the representations contained therein at their face value unless contrary to other material on file with it. Indeed, on the allegations of respondent's complaint, the proxy material failed to disclose alleged unlawful market manipulation of the stock of ATC, and this unlawful manipulation

215.    **We therefore believe that, under the circumstances here, it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose.**

216.   *Cannon v. University of Chicago*, **441 U.S. 677 (1979), was a** <u>United States</u> <u>Supreme Court</u> **case which interpreted** <u>Congressional</u> **silence in the face of earlier interpretations of similar laws to determine that** <u>Title IX</u> **of the Higher Education Act provides an** <u>implied cause of action</u> **Holding**

*Cannon v. University of Chicago* (1979)which prohibited sex discrimination in any federally funded program. The Court, stating that the female plaintiff was within the class protected by the statute, that Congress had intended to create a private right of action to enforce the law, that such a right of action was consistent with the remedial purpose Congress had in mind, and that discrimination was a matter of traditionally federal and not state concern.

**Primary Holding**

Evidence that Congress intended to create a remedy for a violation of federal law allows a court to find an implied remedy.

The Court, in an opinion by <u>Justice</u> <u>Stevens</u>, applied the four-part test set forth in *Cort v. Ash*, 422 U.S. 66 (1975), used in order to determine whether Congress had meant for a law to be able to be privately enforced:

1. Is the plaintiff a member of a special class for whose benefit the statute was enacted? (The court notes that this can not be used to imply a right of action that is merely a criminal statute that prohibits all persons from engaging in a general prohibited behavior).

2. Does <u>legislative history</u> express a legislative intent to create or deny a private right of action?

3. Would creation of a private right of action frustrate legislative scheme, or is it in fact helpful to it?

4. Does the right involve an area that historically has basically been of concern to the States?

The court determined that all of the *Cort* factors pointed to an implied right of action:

1. Women are clearly in the special class protected by the statute, for the statute identifies persons who shall not be excluded.

2. Title IX contained language which copied that of Title VI, for which a private cause of action had already been implied by the Fifth Circuit at the time Title IX was adopted; this was held to show legislative intent.

3. The remedy was necessary, or at least helpful to accomplishing one of Congress' two purposes: avoiding federal support for discriminators *and* protecting individual citizens from discrimination. Private suits make this second purpose easier to implement.

4. This question is not left to states because the federal government is primarily responsible for protecting against discrimination.

There are four main factors to consider in an inquiry as to whether Congress intended to create an implied remedy. These are whether the law was created to benefit a particular group of which the plaintiff is a member, whether the legislative history forecloses the possibility that Congress meant to create a private cause of action, whether an implied remedy would frustrate the underlying purpose of the law, and whether the federal remedy would infringe on the state police

power. All of these factors weigh in favor of finding an implied private remedy under this law, which was intended to protect women.

217.   *Bell v. Hood,* 327 U. S. 678, 327 U. S. 684 (1946). Section 27 grants the District Courts jurisdiction "of all suits in equity and actions at law brought to enforce any liability or duty created by this title. . . ." In passing on almost identical language found in the Securities Act of 1933, the Court found the words entirely sufficient to fashion a remedy to rescind a fraudulent sale, secure restitution and even to enforce the right to restitution against a third party holding assets of the vendor. *Deckert v. Independence Shares Corp.,* 311 U. S. 282 (1940). This significant language was used:

218.   "And it is also well settled that, where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done."

219.   *See also Tunstall v. Brotherhood of Locomotive Firemen & Enginemen,* 323 U. S. 210, 323 U. S. 213 (1944); *Deitrick v. Greaney,* 309 U. S. 190, 309 U. S. 201 (1940). It is for the federal courts "to adjust their remedies so as to grant the necessary relief" where federally secured rights are invaded.

220.   **Alexander v. Sandoval, 532 U.S. 275 (2001), justice Scalia mentioned that as laws prohibits intentional discrimination which was the case in Cannon v. University of Chicago, 441 U.S. 677 (1979) ; Hence private cause of action was allowed.**

221.   **Trivedi's case it is intentional discrimination based on national origin, marital status, gender, and retaliation associated with whistleblowing and complaining about discriminatory treatment to management that led to her JOB LOSS eventually.**

Madhuri Trivedi v. General Electric et al.

222.   **That this LACK of "express provision of any method" of enforcement**

**"suggests that Congress intended to NOT preclude others," such as a private right of**

**action. Hence as LACK of** provision of enforcement available to violator of federal laws such

as GE, GE managers, GE attorneys, Jenny schrager –Private Right of action is proper.


## FIRST CAUSE OF ACTION

## **SECURITIES EXCHANGE ACT OF 1934, 15U.S.C. 78j(b), AND 17 C.F.R. 240.10b-5**

223.   Plaintiff realleges, reasserts, and incorporates by reference the facts and

allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts

currently unknown.

224.   **Cases that held misleading product and service information to be the basis**

**for Rule 10b-5 liability** include *Warshaw v. Xoma*, 74 F.3d 955 (9th Cir. 1996); *In re Apple*

*Computer Sec. Litig.*, 886 F.2d 1109 (9th Cir. 1989); and *In re Carter-Wallace Sec. Litig.*, 150

F.3d 153 (2d Cir. 1988).

225.   **As SEC Chairman Clayton noted in his September 20, 2017 public statement,**


> **"Cybersecurity vulnerabilities can result in denials of service and the destruction**
>
> **of systems, "loss or exposure of consumer data, theft or exposure of intellectual**
>
> **property, and investor losses resulting from the theft of funds or market value**
>
> **declines in companies subject to cyberattacks." Protecting employees who**
>
> **report information security deficiencies is critical to enabling companies to**
>
> **detect cybersecurity threats that may otherwise go undetected.**

226.    17 C.F.R. § 229.303(a)(3)(ii); *see also* Donald C. Langevoort & G. Mitu Gulati,

*The Muddled Duty to Disclose Under Rule 10b-5*, 57 Vand. L.Rev. 1639, 1680

(2004). *It follows that Item 303 imposes the type of duty to speak that can, in*

*appropriate cases, give rise to liability under Section 10(b).*

227.    "an omission is actionable under the securities laws when the corporation is

subject to a duty to disclose the omitted facts." *In re Time Warner Inc. Sec. Litig.,* 9 F.3d 259,

267 (2d Cir.1993); *see Glazer v. Formica Corp.,* 964 F.2d 149, 157 (2d Cir.1992). Such a duty

may arise when "statute or regulation requiring disclosure," or a corporate statement that would

otherwise be "inaccurate, incomplete, or misleading." *Glazer,* 964 F.2d at 157 (quoting *Backman*

*v. Polaroid Corp.,* 910 F.2d 10, 12 (1st Cir.1990) (en banc)); *accord Oran v. Stafford,* 226 F.3d

275, 285-86 (3d Cir.2000).

228.    As required elements of those filings, Item 303 disclosures "give GE investors an

opportunity to look at the registrant through the eyes of management by providing a historical

and prospective analysis of the registrant's financial condition and results of operations. Due to

the obligatory nature of these regulations, a reasonable investor would interpret the absence of an

Item 303 disclosure to imply the nonexistence of "known trends or uncertainties

229.    **Trivedi allege that as per SEC rule 10b(5) ;GE's failure to make adequate**

**disclosures under**

✓ **Cybersecurity risks, Regulation SK Item 503** (17 CFR § 229.503-Prospectus summary

and risk factors),

✓ **Management discussion of cybersecurity issues under Regulation S-K Item 303**

✓ Material weaknesses in internal controls under SOX Sections 302 and 404 addressing cybersecurity

✓ *GE failing to disclose cyber security, information security issues,465 critical defects could be committing shareholder fraud or violating SEC rules relating above items*

✓ InsiteEXC issues that materially affect the operations.

**may serve as basis for a Section 10(b) claim against GE.**

230.    GE as a public company required to address cybersecurity issues in its public filings pursuant to its requirement to disclose significant risks to its business. If in doing so GE(" company") omits known, actual threats, it may violate the securities laws. See *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309 (2011) –

231.    Regulation S-K prescribes certain disclosures that a corporation must include in its public filings, such as its annual report (10-K) and its quarterly report (10-Q).4 Item 503(c) of SEC Regulation S-K requires a corporation to disclose risk factors and discuss the most significant factors that make an offering speculative or risky (17 C.F.R. Part 229.503(c) – company may violate SEC Rule 10b-5 when making public disclosures if it misstates or omits a material fact See 17 C.F.R. § 240.10b-5 – that's what GE did for it's 465 defects, shity InsiteEXC and cybersecurity issues.

232.    In relevant part, the rule states:"It shall be unlawful for any person … [t]o make any un true statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading…in connection with the purchase or sale of any security."

233.    GE publicly dismissed reports Scott Erven submitted in 2015 in –Forbes news article .

234.    Vulnerable Breasts And Brains? Cancer Scan Tech Has Terrible Password Security https://www.forbes.com/sites/thomasbrewster/2015/07/10/vulnerable-breasts/#62a219406b5a    July 10 2015

................

bones. But what if the humans who created those technologies didn't secure them properly from outside tampering, potentially leaving patients open to dangerous doses of radiation? A researcher has uncovered a wide range of X-Ray and CT (computerised tomography) technology that appears to be vulnerable. And it's that old problem, the use of poor passwords, that's to blame.

Looking through reams of publicly accessible documentation, researcher Scott Erven, from consulting firm Protiviti, discovered that one of the biggest medical device providers in the world, GE Healthcare , had pushed out a large number of nuclear imaging machines with weak default credentials. These included the Discovery NM750b, a dedicated breast

Erven told GE about the issues back in August last year, before informing the US government-funded Industrial Control System Computer Emergency Response Team TISI +0%  (ICS-CERT). He is unsure whether GE is going to address the problems, saying the company's response was to say they were just default passwords and could be changed. But Erven said in some cases the documentation specifically asked the user not to change default passwords, as it may prevent GE services providing support. Erven often found it hard to find any information from GE on how to change passwords.

"GE Healthcare's general recommendation is that customers should change default passwords on their healthcare devices wherever possible to increase the protection and security of their medical systems, and guidance is provided in device documentation," a GE Healthcare spokesperson said.

"It is important for our customers to decide on the levels of security they place on all their medical technology to ensure availability for their care needs as it will depend on how the devices are used in a hospital setting.  GE Healthcare significantly invests in privacy and security and will continue staff training to support our customers."

The dangers of an attack on nuclear imaging technology are patent. First, there's the risk that private data, literally data from under people's skin, could be stolen, as well as any other patient information stored on the affected machine. Second, if the configuration can be changed and the dosing increased, there's a physical threat, according to Erven.

Nuclear imaging sees patients exposed to ionizing radiation, where particles penetrate tissue to map out the innards of the body. Such radiation can damage DNA and high doses might increase the risk of cancer.

235.    Section 10(b)'s materiality requirement is satisfied when there is "a substantial

likelihood that the disclosure of the omitted fact would have been viewed by the reasonable

investor as having significantly altered the 'total mix' of information made available."

236.    Sales information online for medical devices and public press release----and

elsewhere where GE ommitted and misstated /failed to disclose any Insite issues/facts/truth --

instead bolstered it .youtube video (EXHIBIT 17).

237.    ***Web content inadvertently be considered an offer to sell or solicitation to buy***
***Securities.***

238.    **The SEC has acknowledged the role of company websites and social media**

**platforms in communicating with investors (e.g., for purposes of Regulation Fair**

**Disclosure, or "Regulation FD")**

*According to the SEC in the May 2000 Release (see Section II(B)(1)), a company may be*

*subject to the antifraud provisions of the federal securities laws for any page on its*

*website if the page "reasonably could be expected to reach investors or the securities*

*markets regardless of the medium through which the statements are made, including the*

*Internet."*

239.    A company should assume that all or substantially all of its web content may

expose it to liability under the securities laws. Material misstatements or omissions in web

content may be violations of Rule 10b-5 under the Securities Exchange Act of 1934. In addition,

as the definition of the term "offer" in Section 2(a) of the Securities Act of 1933 is interpreted

broadly, many web pages, including web pages intended to serve market or promotional

functions, might be considered to contain an offer under the Securities Act.

240.   As per  (https://www.investopedia.com/terms/s/sec-form-def-14a.asp)

*SEC Form DEF 14A is most commonly used in conjunction with an annual meeting*

*proxy. The form should provide security holders with sufficient information to allow them*

*to make an informed vote at an upcoming security holders' meeting or to authorize a*

*proxy to vote on their behalf. Proxy statement it discloses material matters of the*

*company relevant for soliciting shareholder votes and final approval of nominated*

*directors as in DEF 14A.*

*Form DEF 14A is often overlooked by the average investor. It contains key details on*

*corporate governance, listed in the next section, that are scrutinized assiduously by*

*activist and like-minded investors. The proxy statement helps shareholders understand*

*corporate governance practices when it comes time to cast their votes for the proposed*

*items.   Lifting the Veil on Corporate Governance Practices*

*SEC Form DEF 14A is a shareholder's main document to understand the composition of*

*the board of directors and how they oversee management of the company. The board is*

*responsible for the formation and running of committees-- Activist investors serve an*

*important function in speaking up when they find certain corporate governance practices*

*objectionable.*

241.   <u>If GE would have disclosed InsiteEXC material information ; it would have given</u>
   <u>GE shareholders including activist investor; TRUE STORY and STATE about their</u>
   <u>connectivity which ; Jeff Immelt and Still today GE is making multi billion bet.It</u>
   <u>would have made investors take into consideration HIGH STAKE and RISKS<</u>

<u>LIABILITIES that connecting GE assets to internet brings and it's history, corporate culture about these issues, mindset. It is clearly shows how serious GE and it's management is. Cyber Security researchers have also shown concerns.</u>

242.    To best of plaintiff's knowledge and search using -EDGAR Search Tools on SEC.gov website; searching GE's public filing with SEC including since 2007 to 2018;type of filings 10-Q, 10-K, 8-K, DEF 14-A...

✓  Also in SEC filings dated 2013 till date;it shows that GE painted ROSY picture , look trendy and cool--of it's digital solutions (Internet of Things platform where Jeff Immelt put billions). Mentioned that "it's market is up to $8 billion and wants everybody using it" as stated in 8-K form; but totally failed to consider RISKs, liability –even that putting many GE assets such as (Trivedi worked on jenbacher gas engines – internet of things platform in Boston)—Because many GE assets are age OLD, due to several limitations of computing processing power, procesing memory available, unable to get cyber security patches and upgrades due to these reasons.. This is misleading given that GE has lessons to be learned form INSITE EXC where GE recklessly connected medical devices on internet...Making cyber security vulnerabilities FOOTPRINT wider and Broader.

✓  GE DEF 14A –annual reports from 2012, 2014,2011,2013 has no mention of broken InsiteEXC( period realted to Trivedi's employment and arbitration)

✓  Also ---but intentionally not disclosing that still their CYBERSECURITY for these connected devices ( upto 2018 government DHS alert)is in STONEAGE (EXHIBIT 1) ; vulnerable to hack, exploit and manipulation by a LOW SKILLED person(anyone with a low skill could hack and attack, take full control of medical device, stop device from functioning, change setting and more of such attack vector) which GE knew since 2014..But never made it

public, nor filed any SEC filing in terms of 10-K, 10-Q, 8-K , DEF 14-A.  No mention in **Item 7.**

**Management's Discussion and Analysis of Financial Condition and Results of Operations,**

SIGNIFICANT TRENDS & DEVELOPMENTS MD &A,Forward-Looking Statements, "Risk

Factors" , Item 7 operations.. Forward-Looking Statements" in BHGE's most recent earnings

release or SEC filings; and● the other factors that are described in "Risk Factors"

243.  *****************************************************

244.  To best of plaintiff's knowledge and search using -EDGAR Search Tools on

SEC.gov website; searching GE's public filing with SEC

Filing 10-K - For year 2007 ,2008,2009,2010,2011,2012,2013,2014,2015,2016 mentions

INSITEEXC as follow

Item 7 operations..SIGNIFICANT TRENDS & DEVELOPMENTS MD&A

Healthcare SEGMENT - Our product services include remote diagnostic and repair

services for medical equipment manufactured by GE and by others, as well as

computerized data management and customer productivity services.

OR

Healthcare systems also offers product services that include remote diagnostic and repair

services for medical equipment manufactured by GE and by others.

245.  But GE's omission of facts pertaining to an actual, known risk since 2007 about

InsiteEXC cybersecurity vulnerabilities and Scott Erven's hacking exploit report from

2014, my internal reports from 2011 to 2013 to GE and later in 2014 during

arbitration, and even when I sent email to Mr. Flannery in 2017

violate the requirements of Regulation S-K Item 303 and Rule 10b-5.

246.    Thus, reporting an information security issue that contradicts or undermines the

company's management discussion and analysis of cybersecurity is protected under SOX, Dood

Frank act.

247.    All of these filings 10-Q, 10-K, 8-K,DEF 14-A has no mentioning abut cyber

security before and since Madhuri was doing mediation/ arbitration in 2013 /2014—2015 DEF

14A says they care paying attention to cybersecurity in GENERAL while no mention of

InsiteEXC ..I am glad that I became a catalyst/inspiration for GE to atleast at general level add

cybersecurity word in their filings.

248.    GE knowingly never released patch nor made press release/public disclosure nor

SEC filing about Icert /DHS alert about security vulberabilities related to Scott Erven nor me nor

all issues related to insiteexc....so these two are contradictory and shows that GE conspired

,played with regulators and investors, public by saying something and doing something

else...because after reading DEF 14 A it looks nice that how GE is doing in digital world –

internet of things –but at the same time have not addressed and kept public vulnerable to hacking

attacks; and in effect CIRCA STONEAGE.

249.    Later in 2016- 2017 filings GE included generic disclosures in their management

discussion and analysis about cybersecurity issues that could materially affect the corporation's

financial condition and operations.

✓  On top of all these Sachin Kendale who wrote code that took 40 minutes to load 1000

medical devices on a webpage; was never able to solve issues and support related to InsiteEXC customers and PRODUCTION; who lacked technical competency ;as per Linkedin –in 2018 Sachin has been promoted to Senior engineering manager (Sachin holds one bachelor in engineering from India) and architect driving GE's PREDIX –internet of things. Putting incompetent people who lack expertise and passion for cybersecurity is a "RECIPE FOR DISASTER"…Also GE sending a message that if you keep your mouth shut ( unlike Plaintiff Trivedi); we give "TROPHY to the LOOSERs"

250.    Misleading statements or omissions of fact are included in forward-looking statements, the corporation GE may not be insulated. Required forward-looking disclosure including totality of the company activity."

251.    As GE made NO mention of cybersecurity vulnerabilities till date in its public Filings.

252.    GE  violate Sections 302 and 404 of the Sarbanes-Oxley Act as it fails to disclose material weaknesses in its internal controls related to information security. From 2007 to 2014 till Trivedi's arbitration ; GE had not mentioned such cybersecurity related controls and it's weakness. Section 404 of SOX requires a corporation to assess the effectiveness of its internal controls in its annual reports, and an outside auditing firm must evaluate that assessment. Material weaknesses in those internal controls must be identified. 15 U.S.C. § 7213

253.    15 U.S.C. § 7213(a)(2)(A)(iii)(III)a description, at a minimum, of material weaknesses in such internal controls, and of any material noncompliance found on the basis of such testing.

254.   Section 302 of SOX requires a corporation's CEO and CFO to personally certify the accuracy and completeness of financial reports, and they must assess and report on the effectiveness of internal controls around financial reporting.( 16 15 U.S.C. § 7241)

255.   All these years from 2007 to 2014 (Jeff Immelt certify ) and later upto 2018 other CEO including Jeff Immelt.

**************************************

256.   ( *In re Harman Int'l Indus., Inc. Securities Litigation, 791 F.3d 90 (D.C. Cir. June 23, 2015) – https://www.cadc.uscourts.gov/internet/opinions. nsf/1B7208ADC298E6C985257E6D00539C76/$file/14-7017-1559106.pdf.* )

*In Harman, an electronics company made forward-looking statements that reflected positively on its sales outlook. However, the plaintiffs alleged the company was aware of historical facts strongly indicating that its sales prospects were less than stellar. In holding that the plaintiffs' case could proceed, the court found that the company's cautionary statements about the forward-looking information were not meaningful because they were misleading in light of the historical facts. Because the company warned of only general, unspecified risks that could affect its rosy outlook, but did not disclose actual risks that had already manifested, the safe harbor would not apply to the forward-looking statements. The court explained that a "warning that identifies a*

*potential risk, but 'implies] that no such problems were on the horizon even if a precipice*

*was in sight,' would not meet the statutory standard for safe harbor protection."*

257.    **Insite Exc application in production** was vulnerable for online attacks and there were security issues.  Madhuri reported ( as frustrated internal customers and online engineers came to Madhuri , asking her help and opening support tickets) June 2012 that Insite Exc code needs to build with newer version with security update to address memory/online attack issue.. **"Enable memory protection to help mitigate online attacks" which was required to be unchecked in settings in order to establish/install remote connectivity. (EXHIBIT 30 ).**

258.    Interesting is that given GE has enormous amount of money and resources; as shown in EXHIBIT 30 it used out of date ACTIVE X controls. ActiveX in itself poses several cyber securities threats and is not considered very good/ INSECURE PROTOCOL…Microsoft has stopped providing support to ActiveX  ; It is considered DEPRICATED for SECURITY reasons too given it's attack vector..

259.    At GE; ActiveX controls were built without SECURITY update . ActiveX control were required to be built using Visual Studio C++ 2005 or higher and it was June 2012(EXHIBIT 30)—It shows GE used old, out of date, STONEAGED cybersecurity components.  Since 100 or so online engineers were stuck and were not able to establish remote connectivity due to this ActiveX issue…GE needed some quick fix…as I mentioned in the email running ActiveX and establishing connectivity –encounter compromise.

260.    The ActiveX security is designed on how USER of ActiveX chooses various SECURITY options and be a Cyberpolice for own usage of ActiveX.The ActiveX security model relied almost entirely on developers promising not to develop malware, Microsoft gave

the creators the ability to sign their applications. These digital signature certificates are double-checked and certified by services like VeriSign. Identified code would then run inside the web browser with full permissions .(In Java, user can put only partial trust in a program, while ActiveX requires either full trust or no trust at all.), meaning that any bug in the code was a potential security issue; this contrasts with the sandboxing already used in Java. Java applets, which perform many of the same functions as ActiveX controls, are heavily restricted as to how they interact with a user's PC. Java applets can't erase files from a user's hard drive because it uses "sandboxing ". ActiveX is not sandboxed at all. Once downloaded on a user's computer, the ActiveX control becomes part of the operating system with the ability of tampering with every piece of hardware and software on the machine.

261.    Microsoft didn't restricting ActiveX's functions, Every time Internet Explorer needs to download a new ActiveX control, it launches a pop-up window. It then  asks the user if wants to proceed. Then user, has to decide whether the ActiveX control is legitimate or a Trojan Horse for nasty/malware code. Microsoft gave the creators the ability to sign their applications.

262.    **A "good" plug-in or Good ActiveX program can also hurt. By accepting an Active X program, user is trusting that the ActiveX program has no security-relevant bugs. As we have seen so many times, systems that are meant to be secure often have bugs that lead to security problems.** With ActiveX, this problem is made worse if you click the box which accepts all programs signed by the same person (for example, if  user accepts anything signed by GE/Vendor). While one GE/vendor program may be secure, another one may have a security-relevant bug.

263.    This problem even applies to code written by own company for internal use aka

GE written ActiveX. Once the plug-in or program is installed in user browser, an external attacker could write a Web page which used User's internal program ;bug passed it OWN data which corrupted the program and took over USER's machine.

264.    Trivedi suggested bandage-short term fix, security compromise and long term fix.

265.    At GE "InsiteEXC" RA Viewer was required to establish remote connectivity and many times online engineers/internal customers had to download/re-download it as per settings.

266.    GE architect Bill Barbiaux, architect Nate Davis, Lead systems designer Gregg Stratton all three of them with with GE from 20 years, 30 years ,10 years respectively. But None of three had any clue and were doing this from 2007, from 2009 and in 2012 received plaintiff Trivedi's analysis and fidings....

267.    GE argument that they can't rebuild ActiveX with security update because ; they bought huge chunk of InsiteEXC software/firmware code from company called "QUESTRA" and Questra got bankrupt ; hence they don't have access to source code..So GE has to make new connectivity platform from GROUND up...But Chris Hardimen-Program manager for GE connectivity mentioned that it is not Questra gone out of business but GE's unwillingness to spend some million dollars in fixing this..but GE bought Questra software in 2004 with major update to that in 2007 and it was 2012 ; still they were sitting on pile of defects and cyber security vulnerabilities; hoping and praying that nothing happens to their broken remote connectivity platform while continuously & knowingly and after all this Trivedi talked—more aggressively putting Insite on all kind of medical devices and selling it to customers worldwide...

268.    Even in new platform development which was no way near the end for years to

come even though Trivedi reported ActiveX securities; GE continued at that point to USE

ActiveX. After I left GE may have DROPPED or may not..I am not SURE as I did arbitration so

;GE might have taken it seriously or might not..

269.     GE's omission of facts pertaining to an actual, known risk could violate the

requirements of Regulation S-K Item 303 and Rule 10b-5. Thus, reporting an information

security issue that contradicts or undermines the company's management discussion and analysis

of cybersecurity could be protected under SOX.

270.     **Another example InsiteEXC sends health and diagnostics information from**

**medical devices back to GE server. And on number of occasions; GE customers and online**

**engineers contacted Trivedi directly as no one from front line support team was resolving**

**their issues. As Trivedi got such a PANIC call where customer mentioned to TRIVEDI that**

**MRI COIL temperature that medical device sends back to GE server–it was having issue (**

**this problem was consistent for more than six months to year) because that data is**

**somewhere getting corrupted; 4 degree Celsius is showing 40 degree Celsius and vice versa.**

**He was concerned as this could affect GE to address issues on MRI machine from**

**SERVICE point of view.**

271.     **Trivedi mentioned this MRI customer call to her reporting manager David**

Mehring and instead of addressing this David started continually harassing Trivedi and asking

her to improve relationship skills.

272.     Plaintiff states that, to the best of her knowledge, "this false data related Insite2

has been reported "as accurate" by GE in wire communications such as the Internet.

273.     Plaintiff also allege that GE "knowingly failed to comply with its Business Code

of Ethics, an internal control relied upon by both its auditors and shareholders," and that such failure "renders the signature of its Chairman of the Board and Chief Executive Officer on its annual report a violation of the Securities and Exchange Act and SOX.

274.     It also seems GE's failure to state on its Form DEF 14A filings anything related to InsiteEXC may be an omission of material fact the disclosure of which would have made the proxy statements "not false or misleading." *Id.* § 240.14a-9(a). Thus, in complaining that relevant information did not appear in these SEC filings as required, Plaintiff allegedly implicates SEC rules violations.

275.     DEF 14 A proxy shows  GE's failure to disclose material information in DEF 14A Proxy statement --though Plaintiff Trivedi doesn't have any proxy voting rights..

276.     Above Proxy DEF 14 A related information showed how important Proxy DEF 14 A form is and how it impacts activist investors, oversight on management practice and board of directors responsibility. Hence boards of directors are defendants in this lawsuit. Also hiding material information in DEF 14 A is what this claim is about.

277.     Trivedi has alleged "a strong inference of scienter" with respect to GE's failure to disclose..Trivedi has pleaded scienter adequately, satisfying statute requirement. Plaintiff Trivedi allege facts giving rise to a "strong inference that the GE acted with the required state of mind." *Id.* § 78u4(b)(2)(A). Trivedi has  "alleged facts (1) showing that the GE had both motive and opportunity to commit the fraud (2) GE 's action constituting strong circumstantial evidence of conscious misbehavior or recklessness."   Intent so GE can continue sale/ service contracts by not getting exposed to corporate credibility, loose their market share, sales, revenue and more".

278.     GE engaged into Several Deceptive Marketing practices

279.    **These INSITE EXC service contracts play a significant role in GE healthcare annual revenue —** GE was negligent, lacked sense of urgency to correct this conduct or to report it to appropriate parties such as the FDA and its customers, government, investors because doing so would have adversely affected the large profit from service contracts' revenue and fraudulent inducement from sales of GE healthcare medical devices . This would have adversely affected company image in eyes of investors, and many other repercussions; would have significantly reduced or eliminated bonus compensation and other stock based compensation for GE executives to ensure that its officers would earn compensation related to economic performance, that stock options and other stock-based compensation would be maximized …..and also GE would have impact on receiving government contracts such DOD and Veterans Affairs hospitals and other public private purchase of medical devices and service contracts.

280.    Further disclosure of this fraudulent defective medical devices/remote service would have significantly reduced GE's revenue and reputation . . ., and a wide range of related conduct all based on fraudulent data and the failure to report this material information of medical devices fraud and related cybersecurity RISK and VULNERABILITIES.

281.    GE had consistently reported/misled public and customers that InsiteEXC **quality, HIPPA, HITECH, robust cyber security (EXHIBT 17 and insite brochure, various medical device manuals) while intentionally concealing that InsiteEXC is NOT in compliance FDA's 21 CFR § 820.90 - Nonconforming product, product non conformances, defects and cybersecurity vulnerabilities, aging platform that was falling apart and Scott Erven's report.**

282.    Regarding supreme court ruling in Digital Realty Trust, Inc. v. Somers —I sent a

letter to chief justice Roberts on Feb 2016; his clerk read and returned; told me on phone that I should file a lawsuit in lower court then only eventually case come to supreme court .( This letter is part of my supreme court application , writ). In March 2016 I filed lawsuit against DHS – Trivedi v. USDHS et al. No. 16-CV-

1122, 2016 WL 10651086 (N.D. Cal. 2016) - ECF 1 page

28 paragraph 106 ""David Boise law firm attorney said that "it is SEC matter and I have valid SEC claims" "–

283.    Trivedi v. USDHS et al. ECF 1- complaint page 20-21; I mentioned  Chief justice John Roberts in the emails I sent to DHS( I mailed copy of that email to supreme court addressing justice Roberts **and it is part of my supreme court application; in that letter I also mentioned my DHS lawsuit, docket number**)

284.    My letter to chief justice Roberts at Washington DC and supreme court clerk Erik Fossum letter back to me..I have mentioned California lawsuit in this letter as well as that "GE matter is SEC matter as mentioned by SEC attorney David Nelson who reviewed"

SUPREME COURT OF THE UNITED STATES
OFFICE OF THE CLERK
WASHINGTON, DC  20543-0001

June 8, 2016

Madhuri Trivedi

Fremont, CA 94538

RE: Madhuri Trivedi

Dear Mr. Trivedi:

In reply to your letter or submission referred to this office by Chief Justice Roberts on June 2, 2016, I regret to inform you that the Court is unable to assist you in the matter you present.

Under Article III of the Constitution, the jurisdiction of this Court extends only to the consideration of cases or controversies properly brought before it from lower courts in accordance with federal law and filed pursuant to the Rules of this Court.

Your papers are herewith returned.

Sincerely,

Scott S. Harris, Clerk

By:

Erik Fossum
(202) 479-3392

Attn: Chief Justice Roberts
To,
Supreme Court of the United States
1 First Street, NE,  Washington, DC 2054

**Honorable Chief Justice Roberts,**

please find attached email I sent to DOJ, DHS and other people on February 10th 2016 (  I have mentioned your name as to copy you this email). My Massachusetts institute of Technology (MIT) professor – Patrick Hale( pat_hale@mit.edu ) was going to send this to you. But I recently learned that He emailed it to some address at supreme court. And when I spoke about my situation to Supreme court clerk Eric Fossum ; he mentioned ONLY way to send documents to supreme court is via mail. Hence I am mailing it NOW. My mail dated April 9th , has been lost in Washington DC area.

Page - **113** -of **188**  COMPLAINT        Madhuri Trivedi v. General Electric et al.

1   I request that you do everything in your authority to help me – an extra ordinary ability , talented
    engineer and a woman from India (who is in distress and extreme hardship for quite a while now
2   for no reasons.); after investing 13 years of my life in US and contributing to US economy and
3   healthcare; I have been put in a terrible immigration situation in retaliation to raising fraudulent
    activities/defects at my ex employer General Electric. .**Please consider me as like your**
4   **daughter and do everything you can in your capacity.** Currently I feel it is lawless and system
    is not working. Article III branch is only hope to get justice now.

5

6

7   NOTE: on March 7th 2016, I have filled a lawsuit in Northern District of California case number
    -16-CV-01122-JD.
8   Thanks and regards

9

10  म धुरी

11

12  Madhuri Trivedi
    Founder, Lead engineer-OrangeHealth
13  Phone: 8602996234
    Emai: Madhuri.orangehc@gmail.com
14  1401 Red Hawk Circle, Apt G205,
    FREMONT. CA-94538
15

16  LinkedIn : https://www.linkedin.com/in/trivedim

17

18

19

20

21

22      1. **Note: in below email I have removed receipt number, one personal detail and added**
            **name of a federal judge.**
23  ---------- Forwarded message ----------
24  From: **Madhuri Trivedi** <mcis99@gmail.com>
    Date: Wed, Feb 10, 2016 at 6:09 AM
25  Subject: Fwd: Fraud by General Electric and fraud, retaliation, gross mis management by
26  Immigration officals
    To: Josh.Eaton@usdoj.gov, David.Callaway@usdoj.gov, "San.Francisco"
27  <San.Francisco@ic.fbi.gov>, John.Roth@oig.dhs.gov, "Gaughran, James"
28  <James.Gaughran@oig.dhs.gov>, maria.odom@dhs.gov, cisombudsman

<cisombudsman@hq.dhs.gov>, laurel.rimon@oig.dhs.gov, "Johnson, David J. (SF) (FBI)"
<David.j.Johnson@ic.fbi.gov>, Pat Hale <pat_hale@mit.edu>
Cc: jeh.johnson@dhs.gov, Donald.W.Neufeld@uscis.dhs.gov, thomas.pearl@uscis.dhs.gov,
mark.hazuda@uscis.dhs.gov, gregory.richardson@uscis.dhs.gov, "NSCFollowup.NCSC"
<NSCFollowup.NCSC@uscis.dhs.gov>, tsc.ncscfollowup@dhs.gov,
leon.rodriguez@uscis.dhs.gov, Madhuri <mcis99@gmail.com>
To,

2. Office of Inspector General -DHS, Whistleblower Protection program DHS, FBI, US
attorney's office David R. Callaway *Chief of the Criminal Division,*
US attorney's office Joshua Eaton
, DHS Inspector general John Roth, Laurel Rimon, Counsel to IG, FBI special agent- San
Francisco , Supreme court of United states- Chief Justice John Roberts.

3. **Immigration officials involved:** Mark Hazuda, Director at Nebraska Service center,
Greggory Richardson- Director Texas service center , Jeh Johnson- Secretary DHS, Leon
Rodriguez –USCIS, Donald Neufeld -director USCIS, Texas and Nebraska service center

---

4. **Please consider this as criminal report filed against/ for these immigration officers
and directors/USCIS  who are knowingly violating laws and discriminating, retaliating,
terrorizing, torturing me. And GE people as well. I request that criminal charges are
pressed against them. It is sad that in this era of Corporatocracy ; individuals STILL can't
press criminal charges.**

5. **Please approve petitions, give work authorization which I am trying get since last
two  and half years – a person of extra ordinary ability –EB1**
**(1) Receipt  SRC 1480006489, (2) I 485 is SRC1590052433  and (3) I 765 Receipt  is
SRC1590052434 . I need to pay my bills.**

6. **These petitions were wrongfully and unlawfully denied.** Denial letter has random
things ..clear that they decided to deny and then added random things to letter.
My petition **LIN** -16-022-50295 is also treated same way like these three mentioned above.  I
received Request for evidence letter, it is exact copy of the one I received in November
2014..Several evidences critical to my petition have been not mentioned, overlooked and it is
clear that USCIS has made up his mind not to approve my petition. This is result of GE's
influence at the highest level …**This is egregious, gross and unlawful.**

7. I have economic necessity for extreme hardship because I am a single woman .
**Severe financial loss to company or individual which is Madhuri Trivedi-me; that I need
to take care of myself. Currently I am not earning any money.**
Sincerely,
Madhuri Trivedi
 https://www.linkedin.com/in/trivedim

8. **Sequence of event with USCIS:**
Ø  I went to Milwaukee DHS field office in October 2013 and April 2014. I spoke with

immigration officer and her supervisor, mentioned my hardship and upcoming arbitration. Week after my April 2014 visit to USCIS  that **USCIS service director Donald Neufeld** signed a letter and sent it to scare me so I don't do arbitration which was in May 2014. I had paid consultation with immigration attorney **Mencini, Ana** (amencini@kentlaw.iit.edu). She stated that they want to stop you from doing arbitration, but you are doing arbitration. They can't kick you out and threaten you like this. Do arbitration next week.

9. Ø  In November 2014, I spoke with FBI agent on phone about Andrew Beato , fraud/quitam attorney who was very interested in quitam case..I mailed In 2014 , when I sent a package to immigration in which I mentioned Fraud attorney Andrew Beato 's contact and that I am working with him on Quitam/FCA. ONLY FedEx, immigration and FBI agent knew this. FBI is the one who said it is Quitam matter in the first place. Anyway, the day immigration received package, Andrew called next day and said GE has contacted his partner to represent GE and because of conflict he is no longer represent me.

10. Ø  Even though I emailed Texas center and copied a letter via email to expedite to Leon Rodriguez, Donald Neufeld (I was also having health issues) in February that given my hardship, they expedite my case and I will be moving to California next week , first they denied my expedite request and day after I landed to California on March 2, 2015-- They denied my pending I 140/485 petitions  knowing that I will be in vulnerable position...

11. I went to San Jose DHS field office to inquire about this on March 4, 2015. Immigration officer  said they haven't denied your case but denied expedite request (based on what they saw in computer system)..I requested to talk to supervisor. When I mentioned that FBI stated GE was doing fraud against government. Supervisor said Texas center has trashed your petition.

12. Ø  Finally after Senator Boxer did inquiry and I received denial letter in July. I moved to CA from WI, and I had address change issue.

13. Ø  Between March and July, 2015, I received several email alerts from USCIS, mentioning that document related to my green card/EAD was mailed (It said this email is sent when petition is approved and greencad/EAD are mailed). I never received anything nor green card as it was denied. But they kept sending such emails to keep me confused.

14. Ø  I refilled I 140 /485/765 in July 2015…they returned these package three times till October 2015; asking money/fees in terms of thousands ..which I already paid in past. At last in October 2015, I paid again fees for I 140..I went to San Francisco field office in November 2015 to request expedite of my case. I showed all my documents to Immigration officer. Immigration officer stated that from what she saw "Madhuri you are a person of extra ordinary ability" but your case can't be expedited. After several request she filled expedite request based on humanitarian basis; which got denied in less than 24 hours.

Ø  **wkd3371504455LOD( for I 485 and I 765 case to get receipt). USCIS had my package in November..They were not sending me receipt and I didn't pay $1000 . The day congressman Mike Honda office made inquiry about this .USCIS returned package to me ; signed by Mark Hazuda asking $1000 fees.**

15. I came to US on H4 spouse visa in 2003. My ex-husband was physically and verbally

abusive. I have medical records and police certification for his criminal violent activities. I got divorced in March 2006. I went to student visa and got my masters in computer science at Cleveland state university. I worked on OPT and then got H1 B visa. I worked for Fortune 10, Fortune 50 company such as United Technologies, GE and startups founded by Harvard scientist and noble laureates and TOP GUN in US navy.

16. I was working at General Electric healthcare as a lead engineer and they were knowingly releasing defective product on 100,000 medical devices; which had 600 critical defects for several years. I didn't sign off on test plans for this product and I was able to hack the system that remotely control and communicate with 100,000 medical devices… lack of security features such as audit trails, activity logging, reporting and many more things,

17. GE was forcing me and they themselves wanted to release remote service product on surgery and many more device on a **Linux platform** in a same way they were **doing it for 10 years on Windows platform**. Windows and Linux are two different operating systems and are like apples and oranges. I was able to hack it on a Linux platform and GE was desperate to sell that product.

18. **I believe and  very senior executive , fraud attorneys mentioned that GE people should be in a jail. Linux and windows are different how can they do this.** GE retaliated and messed up my immigration..

19. **I was one month shy of getting my green card process processed as –a person of exceptional ability/advanced degree (EB2)** at GE and they got rid of me(remove witness)…**for almost three years I am trying to work with immigration on this. But GE has influenced immigration and GE is using immigration is a tool.**
**I have founded a start up since then "OrangeHealth" – a platform for chronic condition management and communication.  86% of US healthcare cost goes toward chronic diseases related care, and there is nothing done to prevent it. Obamacare hasn't solved this as well.**

20. **System is not working, fighting in Texas /and appealing to supreme court at cost of taxpayer's** money to give work authorization to millions of illegal immigrants; **while victim of crime who files for U visa are not getting work authorization for 16 months** after they file for visa petitions.  Most of them are working illegally including women to support themselves. USCIS **Instead of them getting work authorization immediately, doing other things which clearly shows that people don't want immigration.**

21. If USCIS is fighting lawsuit in Texas for millions of people on TAX PAYER's money ..giving 100,000 work authorization to spouses of H1 in first year itself (**all these takes away jobs from Americans** ), releasing several memos recently to give flexibility to H1 and ease path to permanent residency to millions – including 181 page memo by Jeh Johnson. This is a torture, unlawful, violation of human rights. Treating me like a shit because I am a not from poor country India.

22. **My whole life is on Hold right now. Harvard medical school - where they make artificial protein /DNA and which is cutting edge have offered me a job as a lead engineer**

since April __2014 ;in__ salary range of **$65,000 to $115,000 annually.**

23. **I have mentioned about Dr. Jonathan Rothberg in my EB1 petition.** He came to meet me in person when I joined first day at Raindance technologies(He is a founder ). ___I read recently that in 2016 White House is giving him a national award.___ ( https://www.whitehouse.gov/the-press-office/2015/12/22/president-obama-honor-nations-leading-scientists-and-innovators ) So you get the point. We were ONLY 20 people when I joined Raindance as a software engineer. Software team was two people and then 2 were added after six months. I developed an instrument (instrument price was $150,000 per unit)there which is a biological equivalent of personal computer. Raindance executives and other seniors have stated that my contribution was of a major significance, leading /critical role to existence of organization and entrepreneurial.

24. **I have made original/major significance contribution to US healthcare, US economy and US society.**

25. **Obstruction of justice and witness tampering, wrong doing and gross mismanagement , retaliation** by immigration officers/directors because I did arbitration with GE.

26. Documentary "We are not broke" clearly states that Obama administration has close ties with GE and because USCIS/DHS works under Executive branch and hence under President Obama ..there is a linking that GE is using this relationship to influence and hurt me/harass /terrorize me for my immigration ..so I give up, get/stay sick, go back to India.

27. Knowingly, USCIS/DHS is terrorizing and torturing me , holding me hostage so I can't earn money, stay in distress.. I can't even incorporate my start up, have board of directors, co-founders or someone to put some money. Partner at Chertoff group –( Chertoff group is founded by former department of homeland security chief Michael Cherroff. ) Jim Pflaging was interested in first being adviser to my start up. Mayo Clinic physician and John Hopkins physician looking to join as co founder..In this mess , I have lost all motivation and energy to work in healthcare start up.

28. Week before my arbitration, even though immigration knew about it; Service director Donald Neufeld signed a letter to terrorize me so I don't do Arbitration. At arbitration hearing, I had Chief Technology Officer of GEHC- Mike harsh , Chief Executive Officer –Global service-Mike Swinford come to testify. They both make millions in salary and have their own private jet.

29. Stanford law professor Martinez Janet said that "arbitration I did with GE and GE was doing fraud; that's why Immigration is harassing you.....**your start up can very successful that's also reason to keep me in distress".**

30. Start-up veterans and Venture capitalist have indicated that "president Obama is on your Six…I-Madhuri is doing start up in healthcare for a cause and HC is all about money"

31. Philips healthcare manager Hans Griesser and ex-general manager at GE Healthcare; both stated that GE needs to do a recall..These things are completely unacceptable. FDA investigation numbers:  Case number COR14000050 and CPT1400185.

FDA doesn't take things seriously unless someone has died.

32. **Federal judge Andrew Hanen** reviewed all my immigration documents ; had asked his attorney to do GRAND JURY criminal investigation about GE and immigration ....That US attorney was tied up in drug matters and didn't have resources from his small office...

33. FBI stated that GE was doing fraud against government. Top litigators in US has looked into the GE fraud matter and said that GE was doing a fraud  against government …and lots of money in this case; but advised that it is long, ugly fight against **invincible GE (David Vs Godzilla )** who has connections and influence everywhere(SORRY to write this but they said this and I am experiencing it first hand).. **David Boise Law firm lawyer** said it is **SEC matter**. "GE is using immigration as a tool to harass me " -- Andrew Beato  (http://www.steinmitchell.com/lawyers-Andrew-Beato.html)  and David Haron  (http://www.haronlawgroup.com/david-l-haron.html ) Quitam attorney said that.

34. David Haron –Quitam attorney was at Foley and Mansfield law firm in 2014. David said that if a small company would have done what GE did, they put them in JAIL….nothing happens to GE..They will pay fine like a traffic ticket for them and seamlessly get away. He advised that if GE reinstate and I get my green card/ ability to stay in US; that is more important than fighting Quitam case ...Foley and Mansfield law firm  wrote a letter to GE to reinstate me. But no outcome.

35. I had two surgeries recently, went ER twice and still distress related hormone cortisol is creating havoc in my body and immune system. In April 2015, I hit my nose with a wall. I am still recovering as have some swelling and need to take care of this.

36. **I deserve better life then doing all legal field things and held hostage and in extreme hardship, distress and financial constraint, mental and emotional trauma- caused by GE and USCIS.**

37. *About My start up: Orangehc is a peer to peer platform for health management –usable and secure. Artificial intelligence to measure health conditions, connect peers.*
*A mobile app (phase 1) For people interested in healthy living, manage chronic condition. The company aims to provide support, advise, expertise though peer to peer interactions; users can be anonymous. By driving accountability, purpose and context through communities and measurement/analytics though fitness/health data integrated (phase 2). Prevention is better than cure by managing chronic condition such as a hyper tension future stroke and disability can be prevented. US cost saving $200 billion global double US number. Chronic disease is the leading cause of death and disability worldwide.*

### GE fraud related

38. At GE Healthcare, remote service and connectivity medical device "Insite Exc " was remotely communicating and controlling 100,000 medical devices. There were defects in terms of 600-2000 defects and 600 critical design non conformances; unresolved for several

years and medical Device Insite Exc was launched in 2004. It lacked security features, audit trails, activity logging and security reporting.. Fraud attorney at Cohen Milstein law firm said that it is fraudulent inducement..

39. There were lack of security features/I was able to hack it while testing...GE performed sham quality tests and "willfully concealed the existence, frequency and severity of the products' defects," with "grossly inadequate testing procedures".......for knowingly selling defective, life threatening medical devices used by Department of Defense, Veterans Hospital ( In 2013 , at Veterans hospital in NY patient died due to faulty GE MRI system.....so GE has been reckless in their devices). Medical devices were **ultrasound, MRI, surgery , Lunar, radiology servers** and more.

40. For bringing this fraud and defects to management's attention and NOT willing to participate in their fraudulent scheme...Madhuri- I was harassed, received abusive treatment and wrongly accused of insubordination . She was also ostracized and marginalized by management. Since then I have been suffering terrorizing acts due to GE and their influence at all level

41. The company's "scheme to defraud its customers by knowingly selling defective and potentially dangerous remote control product on most of all their medical devices". GE fraudulently induced the federal government (including the Department of Defense and Veterans Administration) , state governments to buy its defective product through both misstatements and material omissions. Each of us has the right to expect any medical equipment used for our medical care to be safe and effective, but we are all placed at great risk when medical equipment companies violate our trust and knowingly sell equipment that is defective," the evidence shows GE's callous disregard for the fact that these defective product(s)—which they consciously, aggressively sold after knowing existence defects—could mean life or death for unsuspecting patients, loss/theft of their protected health information(PHI). This case is not just about recouping money for taxpayers—**it is an indictment of a company that placed a higher premium on profits than public health and safety."- public policy violation as well.**

42. **Department of defense signed $400 million worth of service contract in last ten years...** In the document, I have attached for many GE devices, they are making claims that it has HIPPA /HITECH violations, security, audit trails, reporting which is false. Even for non defense/govt customers such as public/private customers it is false claims and fraudulent inducement .

43. Because their competitors for medical devices such as Philips and Siemens don't have such remote service capabilities so that's how Insite Exc was a service differentiator and service alone was $5 billion business.

285.    It is also equitable estoppel as due to my immigration hardships attorneys where

not able to file Quitam …And immigration that GE screwed prevented me from fighting for

clause of action  mentioned here..

286.    Later in March 10, 2017 I filed Emergency application with justice Kennedy ;

Application (16A888) for injunction, submitted to Justice Kennedy.

(https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/16a888.ht

ml) and later on April 19th 2017 to all justices. .Again I filed Petition for a writ of certiorari on

January 2, 2018 – DOCKET No. 17-985

(https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/17-

985.html  )…All these supreme court communication had SEC violation info where I mentioned

that I have valid SEC claims as confirmed and mentioned by SEC lawyer and a former SEC

reginal director David Nelson.. Note that supreme court issued opinion on Digital Realty Trust,

Inc. v. Somers on Feb 21 2018; while my Petition for a writ of certiorari was already filed with

supreme court on January 2, 2018

and was pending. So my case is indirectly not just coming out of BLUE all of a sudden after

supreme court ruling on Digital Realty Trust, Inc. v. Somers but my supreme court filing started

and predated from February 2017 …So I totally believe that Digital Realty Trust, Inc. v. Somers

DOES NOT apply to my case. …Plus I also filed OSHA complaint. Justice Ginsberg mentioned

in her opinion of Digital Realty Trust, Inc. v. Somers that Somers didn't exercised OSHA, SOX

while I did EXERCISED while being TORTURED by GE as they cut off my immigration and

source of income just to OBSTRUCT –GE MUST BE HELD GUILTY for OBSTRUCTING

JUSTICE BY cancelling my H1B, withdrawing I 140 process while mediation, arbitration was

PENDING…

287.    **Plaintiff allege from this statements that GE committed securities fraud in violations of manipulative and deceptive devices 15 U.S. Code § 78j(b), SEC rule 10b(5) ,17 CFR § 240.10b-5 - Employment of manipulative and deceptive devices**

288.    **GE's above mentioned conduct with scienter , directly or indirectly made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made; harmed investors as they relied on false,misleading, untrue statemetns GE made in order for them to make investment decision regarding GE.**

## SECOND CAUSE OF ACTION

## FOR WHISTLEBLOWER RETALIATION UNDER DODD-FRANK ACT

## 18 U.S.C.§ 15 U.S.C. § 78u-6(h)

## SEC Rule17 CFR § 240.21F-2

289.    Plaintiff  realleges, reasserts, and incorporates by reference the facts and allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

290.    This claim is precluded from mandatory arbitration under a pre-dispute binding arbitration agreement

291.    As alleged in First cause of action violations related to SECURITIES

EXCHANGE ACT OF 1934, 15U.S.C. 78j(b), AND 17 C.F.R. 240.10b-5 ;

The second cause of action regarding Dodd Frank Whistleblower protections

establishes that GE was violating **EXCHANGE ACT OF 1934, 15U.S.C. 78j(b),**

**AND 17 C.F.R. 240.10b-5;** making  misleading statements and HENCE plaintiff

Trivedi is dodd frank whistleblower  under **18 U.S.C.§ 15 U.S.C. § 78u-6(h)**

**SEC Rule17 CFR § 240.21F-2..** (including but not limited to other statutes, rules,

laws mentioned in this second cause of action along with first cause of action)

292.    *Protected Activity Need Not Describe an Actual Violation of the Law* .

*The SOX's legislative history indicates that the Accountability Act was*

*implemented to address not only securities fraud (in the aftermath of financial scandals*

*involving Enron, Worldcom, and Arthur Anderson), **but also corporate fraud generally.***

***See S. Rep. No. 107-146, at 2 (May 2, 2002) ("This legislation aims to prevent and***

***punish corporate and criminal fraud, protect the victims of such fraud, preserve***

***evidence of such fraud, and hold wrongdoers accountable for their actions.").***

*Sections 803, 804, and 807 of the Accountability Act address securities fraud*

*specifically. But other sections address infractions that do not involve fraud against*

*shareholders. Section 802 assesses criminal penalties upon persons who alter, destroy,*

*conceal, or falsify records "with the intent to impede, obstruct, or influence the*

*investigation or proper administration of any matter within the jurisdiction of any*

*department or agency of the United States." 18 U.S.C.A. § 1519. And Section 805*

*instructs the United States Sentencing Commission to review sentencing guidelines to*

*ensure that they include enhancements "for cases . . . in which the solvency or financial*

*security of a substantial number of victims is endangered," and ensure that those*

*enhancements are "sufficient to punish and deter criminal misconduct by corporations."*

*S. Rep. No. 107-146, at 12-13.*

293.    Madhuri reported to her lead, manager David Mehring, senior manager Carl Conrath, CEO Mike swinford, general manager david elario, HR manager Mike Truman and later Mike Truman's place/role was taken by a new HR manager Ayesha Khan so to her, architect Bill Barbiaux, architect nate davis, manager dave sallis, Chief financial officer , Program manager Nicole Boyle, CTO Tim kottak and few others. She did written communication via emails, note memo, and personal meetings.

294.    Plaintiff  Trivedi did not need to specify which laws she thought were violated: she needed only identify specific conduct she believed to be illegal. *See Ashmore v. CGI Grp. Inc.,* No. 11 Civ. 8611(LBS), 2012 WL 2148899, at *6 (S.D.N.Y. June 12, 2012) (quoting *Welch v. Chao,* 536 F.3d 269, 276 (4th Cir.2008)).

295.    GE once said it  is none of Trivedi's concern and later during last months and
        Level I –alternate dispute process said that it was her job; but as below .

296.    *see Barker v. UBS AG, 888 F.Supp.2d 291, 297 (D.Conn.2012) (whether
        plaintiff's activity was required by job description is irrelevant), and that Plaintiff
        does not allege she specifically reported concerns of fraudulent and illegal activity, see
        Ashmore, 2012 WL 2148899, at *6 (plaintiff's need not identify which law they believe
        was broken, but need only identify conduct they believe to be illegal).*

*that it was part of Plaintiff's job to identify risk management issues, which is all she did*

*here, see Barker v. UBS AG, 888 F.Supp.2d 291, 297 (D.Conn.2012) (whether plaintiff's*

*activity was required by job description is irrelevant), and that Plaintiff does not allege*

*she specifically reported concerns of fraudulent and illegal activity, see Ashmore, 2012*

*WL 2148899, at \*6 (plaintiff's need not identify which law they believe was broken, but*

*need only identify conduct they believe to be illegal)*

297.   As per SEC brief filed in -DANIEL BERMAN v. NEO@OGILVY LLC and WPP

GROUP USA, INC., (Case no:- 14-4626  UNITED STATES COURT OF APPEALS FOR THE

SECOND CIRCUIT )By providing new incentives and protections for individuals to engage in

whistleblowing activity, the Dodd-Frank whistleblower program enhances the existing securities-

law enforcement scheme, including internal company reporting...........Using its broad

rulemaking authority, the Commission adopted a rule clarifying that employment retaliation is

prohibited against individuals who engage in any of the whistleblowing activity described in

Section 21F(h)(1)(A)(iii)—including making internal reports at public companies of securities

fraud violations ....

298.   By continuously releasing even after Plaintiff raised and reported retaliation that

"Insite is defective" – GE continued releasing "InsiteEXC". 18 U.S. Code § 1343. Fraud by wire,

radio, or television -includes any writings, signs, signals, pictures or sounds transmitted by wire,

radio or television in interstate or foreign commerce.(EXHIBIT 17 GE product).

GE on

✓  it's website,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

✓   on internet,

✓   youtube video ( https://www.youtube.com/watch?v=xUOw2A0t9vE  ) which was

uploaded to youtube on January 30,2013 touting instant connection, data protection,

proactive monitoring, remote maintenance, system security,maximized up-time while

omitted defects;

**GE Healthcare**
Published on Jan 30, 2013

A service platform engineered for a fast, efficient response.

GE has developed a unique technology which allows its service engineers to look into the heart of any equipment linked by a broadband connection. From a distance they can examine the error log, check functioning of individual parts, and diagnose what actions are needed to fix the problem.

✓   sales, marketing and while using product in hospitals product manuals concealed

InsiteEXC defect, cybersecurity vulnerabilities- **hence plaintiff allege that GE**

**committed fraud.**

299.   Trivedi made disclosures that were required or protected under the Sarbanes-

Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities and Exchange Act of 1934, including

15 U.S.C. section 78j-1 (m), section 1513 (e) of title 18, and other laws, rules, or regulations

subject to the jurisdiction of the SEC.

300.   Trivedi had both a subjectively and objectively reasonable belief that the conduct

being reported violated a listed law, rule, or regulation.

301.    GE including its CEO, CTO,CFO and others, knew or suspected that Trivedi

engaged in such protected activity.

302.   Trivedi was terminated after being framed to improved her relationship skills.

303.   Trivedi's protected activity discussed above was a contributing factor—and

1  indeed the reason for—her termination.

2  304.    As a proximate result of GE's actions against Trivedi, as alleged above, Trivedi

3  has been harmed in that she has suffered the loss of wages, benefits, and additional amounts of

4
5  money she would have received if she had not been subjected to said treatment along with

6  immigration harm;H1 B visa, ability to get employment based greencard under _a person of

7  exceptional ability/advanced degree" where at GE her PERM with department of labor was

8  already approved but due to GE's illegal termination I 140 was never filed.. Trivedi has also

9  been harmed in that she has suffered humiliation, mental anguish, and emotional and physical

10
11  distress.

12

13  **THIRD CAUSE OF ACTION**

14  **VIOLATIONS OF WHISTLEBLOWER PROTECTIONS UNDER SARBANES-OXLEY**

15  **ACT 8 U.S.C. § 1514A, et seq., 1514A(a)(1)**

16

17  305.    Plaintiff realleges, reasserts, and incorporates by reference the facts and

18  allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts

19
20  currently unknown.

21  306.    This claim is precluded from mandatory arbitration under a pre-dispute binding

22          arbitration agreement

23  307.    SOX protects corporate whistleblowers for engaging in protected activities

24  includes wire fraud, mail fraud, healthcare fraud and a violation of any SEC rule or regulation.

25  308.    To be protected under SOX, the employee's report need not "definitively and

26
27          specifically" relate to one of the listed categories of fraud or securities violations in

28

Section 806 of SOX.  The focus is "on the plaintiff's state of mind rather than on the defendant's conduct." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 384 (2d Cir. 2008).

309.    Trivedi while employed at GE reported to management that GE is not adhering following in regards to highly defective InsiteEXC medical device

✓ **21 CFR § 820.90 - Nonconforming product**

✓ **HIPAA 45 C.F.R. § 164.530 (g). HIPPA 164.306 Security standards:**

✓ HIPAA 45 C.F.R. §164.308(a)(1): Security Management Process

- Implement security measures sufficient to reduce risks and vulnerabilities to a reasonable and appropriate level to comply with § 164.306(a).

✓ **HIPPA 164.312(b) Technical safeguards – Standard: Audit controls**

Audit controls refer to the capability to record and examine system activity.

✓ Security management process **HIPPA 164.308(a)(1)(ii) Information System Activity Review –Required.** The company's security controls are seriously lacking which is part of SOX internal controls.

✓ Medical devices are vulnerable to cybersecurity related ; hackable

✓ Lacks proper quality control, testing, automated static analysis of software/code for InsiteEXC is not being used.

310.    Technical leads, architect and manager lack proper technical understanding, lack technical knowledge, lack big picture /systems level , lack  cyber security knowledge.

311.    In FIRST and SECOND CAUSE OF ACTION; plaintiff alleged violations of SEC rules and regulations.

312.     *18 U.S.C.§ 1514A(a)(1), including when the employee provides information or assistance to someone with "supervisory authority over the employee" or with authority to "investigate, discover, or terminate misconduct"*
*as Plaintiff Trivedi did.*

313.

*as per Donaldson v. Severn Sav. Bank, F.S.B. Vanessa L. Donaldson brought a SOX whistleblower action against her former employer, Severn Savings Bank ("Severn") . [T]he federal criminal fraud statutes . . . prohibit the scheme to defraud .Materiality of falsehood . . . was a common-law element of actionable fraud at the time these fraud statutes were enacted and is an incorporated element of the mail fraud, wire fraud, and bank fraud statutes. . . . But § 1514A carries no independent materiality element. Consequently, Donaldson's objective belief need not be about a material matter, as Severn has argued. Rather, her objective belief must be based on facts permitting an inference that [the manager's] allegedly false representation was material to Severn's course of conduct. The court found that Ms. Donaldson met this standard because the manager's alleged inflation of the retail production figures was intended to, and likely would, affect the size of a bonus awarded him by Severn.*

314.     Significantly, SOX protects internal disclosures.

315.     GE knew in July 2014 that I spoke with FBI and FBI said it is quitam.

316.     *As per  SEC. 1107. RETALIATION AGAINST INFORMANTS. (a) IN GENERAL—*

*Section 1513 of title 18, United States Code, is amended by adding at the end the*

*following:          ``(e) Whoever knowingly, with the intent to retaliate, takes any action*

*harmful to any person, including interference with the lawful employment or livelihood of*

*any person, for providing to a law enforcement officer any truthful information relating*

*to the commission or possible commission of any Federal offense*

317.   So when we were negotiating in 2014 and GE knew about Quitam ; even in violation of  SEC. 1107. RETALIATION AGAINST INFORMANTS. (a) IN GENERAL— Section 1513 of title 18, United States Code, is amended as mentioned in above paragraph didn't give a damn to settle the employment and immigration matter with Trivedi/plaintiff nor made any public release about InsiteEXC

318.   It also seems GE's failure to state on its Form DEF 14A filings anything related to InsiteEXC may be an omission of material fact the disclosure of which would have made the proxy statements "not false or misleading." *Id.* § 240.14a-9(a). Thus, in complaining that relevant information did not appear in these SEC filings as required, Plaintiff allegedly implicates SEC rules violations; which are sufficient to state a plausible claim under SOX. Along with filings in 10-K, 8-K ,10-Q and violations of 15 U.S.C. § 7213(a)(2)(A)(iii)(III)a description, at a minimum, of material weaknesses in such internal controls, and of any material noncompliance found on the basis of such testing and  Sec¬tion 302 of SOX requires a corporation's CEO and CFO to personally certify the accuracy and completeness of financial reports, and they must assess and report on the effectiveness of internal controls around financial reporting.( 16 15 U.S.C. § 7241)

319.   Trivedi met SOX standard because the managers' and GE's alleged concealment

of defects, deceptive sales and marketing of medical devices and services, fraudulent

inducement, was intended to, and likely would, affect the revenue, profit, sales amount for GE;

and bonus and executive pay/stock options to GE executives and pay to managers/employees.

Therefore Trivedi/plaintiff had an objectively reasonable belief that [the GE employees,

managers, GE executives and GE company were] engaged in a scheme to defraud government,

consumers, patients and investors and violating such laws."

320.    Plaintiff Trivedi made objective reasonableness," "subjective good faith," or a

disclosure that is "not knowingly false( WESTMAN & MODESITT, *supra* note 11, at 81; *see*

*also* Cherry, *supra* note 53, at 1047.  ) ; about GE allegedly fraud/such activities.

321.    Plaintiff (1)she engaged in protected activity;(2)the employer GE knew that she

engaged in the protected activity;(3)she suffered an unfavorable personnel action; and(4)the

protected activity was a contributing factor in the unfavorable action.

322.    **Plaintiff engaged in protected activity under SOX related to reporting**

**cybersecurity vulneralities .**GE took unfavorable personnel/professional action due to

plaintiff's protected behavior or conduct.


# FOURTH CAUSE OF ACTION

## 45 CFR § 160.316 REFRAINING FROM INTIMIDATION OR RETALIATION

## 45 CFR § 164.530(g) STANDARD: REFRAINING FROM INTIMIDATING OR

## RETALIATORY ACTS

323.    Plaintiff realleges, reasserts, and incorporates by reference the facts and

allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

324.   *The new HITECH Act promises more rigorous enforcement of <u>HIPPA (Health Insurance Portability and Accountability Act of 1996)</u>. The legislation includes mandatory penalties for "willful neglect."*

325.   *45 CFR 160.316 -A covered entity may not threaten, intimidate, coerce, harass, discriminate against, or take any other retaliatory action against any individual or other person for—(c) Opposing any act or practice made unlawful by this subchapter, provided the individual or person has a good faith belief that the practice opposed is unlawful, and the manner of opposition is reasonable and does not involve a disclosure of protected health information in violation of subpart E of part 164 of this subchapter.*

*[<u>71 FR 8424</u>, Feb. 16, 2006, as amended at <u>78 FR 5691</u>, Jan. 25, 2013 --- https://federalregister.gov/citation/78-FR-5691---*

*It is the responsibility of all [ORGANIZATION] employees to report perceived misconduct, including actual or potential violations of laws, regulations, policies, procedures, or [ORGANIZATION] [CODE OF CONDUCT].*

326.   Health and Human services department Secretary and TRUMP cabinet Tom Price communication below

---------- Forwarded message ----------

From: Corbin, Susan <Susan.Corbin@hq.dhs.gov>

1

2   Date: Thu, Mar 30, 2017 at 10:15 AM

3   Subject: RE: HHS secretary Tom price forwarded me to you Susan: Fwd:

    Immigration healthcare fraud ; DHS must leave me alone
4

5   To: Madhuri Trivedi <madhuri.orangehc@gmail.com>

6   Cc: "Corbin, Susan" <Susan.Corbin@hq.dhs.gov>

7   Your inquiry has been forwarded to US Citizenship and Immigration Services.  Also

8   please contact the USCIS Customer Service line at (800)375-5283 for assistance.

9

10  From: Madhuri Trivedi [mailto:madhuri.orangehc@gmail.com]

11  Sent: Thursday, March 30, 2017 1:12 PM

12
    To:   Corbin,   Susan   <Susan.Corbin@hq.dhs.gov>;   Madhuri   Trivedi
13
    <Madhuri.orangehc@gmail.com>
14
    Subject: Re: HHS secretary Tom price forwarded me to you Susan: Fwd: Immigration
15
    healthcare fraud ; DHS must leave me alone
16

17

18
    Susan are we going to talk today? thanks
19

20  ---------- Forwarded message ----------

21  From: Madhuri Trivedi <madhuri.orangehc@gmail.com>

22  Date: Wed, Mar 29, 2017 at 9:42 AM

23
    Subject: HHS secretary Tom price forwarded me to you Susan: Fwd: Immigration
24
    healthcare fraud ; DHS must leave me alone
25

26  To: susan.corbin@hq.dhs.gov, tpmd1@hhs.gov, rose.lusi@hhs.gov, Madhuri Trivedi

27  <Madhuri.orangehc@gmail.com>

28

Susan Corbin,

Tyler Mcgussee on behalf of secretary ..gave me your information and asked to connect. thanks

327.   David Mehring and Leads claimed that these issues were not her concern.  Ms. Trivedi pointed out, and their response was to penalize her for speaking up and not quietly falling in line and pretending that the problem did not exist; and join GE fraud scheme. Managers and leads did not care to provide enough time in project schedule.

328.   As alleged earlier 465 design nonconformance and defects in production software of Insite Exc ; not in compliance with **FDA guideline for Non-Conforming medical devices. **21 CFR § 820.90** Subpart I--Nonconforming Product, *HIPPA 164.306 Security standards: General rules, HIPAA 45 C.F.R. §164.308(a)(1): Security Management Process*

*- Implement security measures sufficient to reduce risks and vulnerabilities to a reasonable and appropriate level to comply with § 164.306(a), § 164.530 Administrative requirements.*

329.   <u>**There were total 2000 bugs in defect database including 465 critical/design nonconformance. Which GE closed after I reported without doing anything-GE closed these defects in an hour in early 2013.**</u>

Ms. Trivedi pointed out the missing audit trail /proper logging issue in connectivity product design via email. Ms. Trivedi was retaliated against for pointing out contravention of code/law. HIPPA/HITECH law puts emphasis on proper **audit trail/logging requirements;***HIPPA  164.312(b) Technical safeguards – Standard: Audit controls* Audit controls refer to the capability to record and examine system activity. *Security management process HIPPA 164.308(a)(1)(ii) Information System Activity Review –Required.*

330.   At GE Technical leads, architect and manager lack proper technical

understanding, lack technical knowledge, lack big picture /systems level, lack cyber security

knowledge. Trivedi reported to management about this.GE was required to follow 45 CFR §

164.530 (b)(1) (1)Standard: Training and 45 CFR § 164.530 (b)(2) Implementation specific

training.

331.    FDA halted sales of OEC in 2007 and GEHC signed a decree ;

(http://www.fdanews.com/articles/89160-ge-oec-medical-systems-signs-consent-decree-with-

fda-to-correct-cgmp-lapses ) The decree "prohibits the manufacturing and distribution of

specified GE OEC Medical Systems X-ray surgical imaging systems" at facilities in Salt Lake

City, Utah, and Lawrence, Mass., "until the devices and facilities have been shown to be in

compliance" with the FDA's current good manufacturing practice (cGMP) requirements as set

forth in the quality system regulation for devices, the agency said.


332.    **Madhuri was putting quality at first and foremost in her day to day duties**

**given the history of surgery product with FDA as she was integrating InsiteEXC on OEC**

**surgery (above Decree related medical device).**

333.    **Internal customers such as General manager Arthur Larson and director**

**Nick Allen** has expressed serious concerns about reliability and quality of GST delivered

products.


334.    **Under HIPPA requirement** which is "it is responsibility of all employees of

organization to report perceived misconduct, including actual or potential violations of laws,

regulations, policies, procedures" and employer not threaten, intimidate, coerce, harass,

discriminate against, or take any other retaliatory action against any individual or other person"

335.    18 U.S. Code § 1345. Injunctions against fraud

336.    Despite doing such good work; manager Dave Mehring and leads shifted blame on to Ms.Trivedi( **Ms. Trivedi's inclusiveness** ) and retaliated. Leads were not held accountable for their negligence. Madhuri was subjected to continuing abuse from her co-workers, manager including verbal abuse, sexual comments, immigration retaliation, withdrawal of H1 B, vengeance to destroy her stellar career.

337.    **Madhuri as under HIPPA, HITECH requirement did her job to address, bring to attention to people in authority and report such perceived misconduct, including actual or potential violations of laws, regulations, policies, procedures. As a result of that she was threatened to be taken off the job, intimidated, harassed, and discriminate against, retaliatory action to punish her by giving poor performance evaluation** (EXHIBIT 10)**and finally discharged.**

### FIFTH CAUSE OF ACTION

### FOR DISPARATE TREATMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT INCLUDING RETALIATION

VIOLATIONS OF CIVIL RIGHTS ACT OF 1991 42 U.S.C. § 2000e-3a

338.    Plaintiff realleges, reasserts, and incorporates by reference the facts and allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

339.    42 USC § 2000e-2(a)(1) to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

340.    42 USC § 2000e-3(a) where I did clearly opposed employment practices by GE
and suffered discrimination.

341.    Civil Rights Act of 1991 (1991 Act), which provides, among other things, that (1)
an unlawful employment practice is established "when the complaining party demonstrates that
... sex ... was a motivating factor for any employment practice, even though other factors also
motivated the practice," A sit shows in Trivedi's case being a WOMAN.

342.    As a direct, foreseeable, and proximate result of defendants' discriminatory acts,
Plaintiff has suffered and continues to suffer substantial losses in earnings and job benefits, and
has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress,
and discomfort, all to Plaintiff's damages.

343.    Because the acts taken toward Plaintiff were carried out by, condoned by and or
ratified by managerial employees or managing agents acting in a deliberate, cold, callous,
fraudulent, malicious, oppressive, and intentional manner in order to injure and damage Plaintiff,
while other engineers including Male technical staff Sachin Kendale (Sachin wrote code that it
took 40 minutes to lead 1000 devices on webpage and he and Naresh wrote such badly and
defectively by initializing each device object in memory after they get query result from
database. Database was also not tuned and written badly. They never used Database performance
management tool and David Mehring sucked so much of my blood and I had to convince him a
lot to get $30 Database management tool (EXHIBIT 27 perjury)because GE didn't have license
and these incompetent engineers never used—despite that Sachin got good performance review--
-

344.    Plaintiff has a copy of Sachin's performance review and can submit to court),

Naresh, Nate Davis, Greg Stratton and several others wrote bad product, bad buggy, defective software/code( I have proof of that) despite GE treated them favorably and discriminated plaintiff as GE can't tolerate , a female engineer coming out strong and also whistleblowing these male engineers technical incompetence.

345.    Mike harsh , CTO of GEHC sent email in late 2012 (EXHIBIT 18) that managers and employees should take training on how they perceive communication from female engineers; SO GE had problem about perceiving and measuring performance, communication of female engineers

> *"Men's and women's behavior is based on two different sets of cultural rules*
> *about what " right" is . Learning the cultural differences define what is "right" for*
> *men and women-together with a good sense of humor –is the first step leading*
> *meaningful inter-gender communication.*
> *Following the workshops, participants will be equipped to return to both their*
> *professional and personal lives seeing the world through the lenses of the other*
> *gender's culture and encouraged to shape their message in new ways. "*

346.    There was one female project lead Dipti Patel who was responsible for integrating InsiteEXC on various medical devices and she fraudulent and knowingly PASSED quality tests and signed them saying product is OKAY while it was defective and whole management was part of this FRAUD scheme in which one female project lead was there. Dipti Patel terrorized me but it was that she was getting exposed of fraud.

347.    Madhuri is victim being a female engineer from India and working for a large organization whose managers took advantage of these conditions/systems and systematically worked on discriminating, retaliating and treating Madhuri badly, giving false negative

evaluation and finally getting rid of her, beating her about soft skills and continuously making false case, comments , character attacks, using such inappropriate tactics, selectively filtering most of positive things about her,  stopping her from fixing defects, doing proper design for which Madhuri was hired and paid to do. Madhuri told Dave Mehring in 1on1 and also to Carl Conrath and Mike Truman, Ayesh Khanalong with CEO Mike Swinford, CFO,  that she is treated differently and unfavorably.

348.    Once Madhuri realized amount of defects and performance/maintenance issues Insite Exc was having which was violation of FDA rule, quality code, HIPPA and HITECH violations and risk to public health and safety –patient data; it was a fraud and conspiracy to continue release/ integrate those Insite Exc agents on products like Surgery OEC for example (where Madhuri was doing testing). Given it is regulated environment and Madhuri was concerned to continue work on Insite Exc surgery integration in a reckless way manager/lead wanted. Madhuri informed managers  Dave Mehring/ Dave Saliis that she would consider working on another project and this is not proper. This happened in March 2012.

349.    Despite those similarly situated employees who are not in Ms. Trivedi's protected group were doing such poor job were treated more favorably or did not receive the same adverse treatment. (Madhuri needs to work on her relationship despite doing good work for company and going above and beyond for project success).

350.    A plaintiff may state a claim for Title VII employment discrimination using either the "direct method" or "indirect method." *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727-728 (7th Cir. 1998).

351.    My email to CTO Tim Kottak. I met Tim in person and went over everything .I requested Tim to change my reporting manager.

Page - 139 -of 188 COMPLAINT            Madhuri Trivedi v. General Electric et al.

| From: | Trivedi, Madhuri (GE Healthcare) </o=GEMAIL/ou=First Administrative Group/cn=Recipients/cn=212070205> |
|-------|---------|
| Sent: | Wednesday, December 19, 2012 2:03 PM |
| To: | *Kottak*, Tim (GE Healthcare) <Tim.*Kottak*@med.ge.com> |
| Subject: | RE: Thanks |

Respected Tim *Kottak*,

Carl said he won't make any changes for having a dotted line manager. This is an update. Happy Holidays!

Thanks and regards,

Madhuri

352.   My email to Gregg stratton(who was a lead systems designer )for Insite EXC where I reiterated cybersecurity issues, slacker way for quality(EXHIBIT 25), as was being exposed of technically incompetent and fraud related to InsiteEXC became aggressive, abusive language, behavior, shifting blame and daily fights via emails phones to other GE managers and I was sitting next to him..I moved my desk and GE manager david mehring made a big issue of it..gave me negative rating in performance review regarding my desk move and forced me to have regular meeting with Greg to improve relationship…

353.   Used my divorce as a tool to falsely accuse me on relationship, blackmailing as GE thought it as my weakness. Pre arbitration brief (exhibit 14), immigration attorney Jeff letter to GE CEO (exhibit 12 ), Foley and Mansfield letter to GE(exhibit 15), my arbitration agreement (exhibit 4)has outlined the disparate treatment I received and retaliation. These exhibits are realleged and incorporated here in as part of this CAUSE of ACTION.

354.   I was discriminated , retaliated based on her nationality- as it relates to

immigration status H1B. Because once GE takes adverse, discriminatory action and terminates

me –they can cancel my H1 B-after H1 B cancellation. That's what GE exactly did. Compared to

others who were not on H1B and not similarly situated ( plus I didn't keep my mouth shut and

joined GE's fraud scheme).

355.    Three women ( apart from Trivedi)who reported to David Mehring as a reporting

manager and Carl Conrath as senior manager, One woman was a wife of GEHC executive- He

was general manager of X ray business..she had a bachelor degree from India and Ofir Dahan

fought that she lacked technical deep knowledge as she was not considering when product code

would fail in her software code( such as array out of bound exception)…

356.    Another woman was Dipti patel –a woman who was signing off on Insite EXC

knowingly that it was defective; she was doing fraud thus.  She also wrote below things on

TRIVEDI' SECOND WEEK AT GEHC that

Trivedi  is "COMPLAINING" and "should DIPTI BE FIRED "when I was being detailed

oriented and that's when all INSITE EXC fraud defects was uncovered by me that Dipti was

signing off on. TRIVEDI was COMPLAINING as TESTING MACHINE and PROCEDURE

were not adequate..This was complaints related to TECHNICAL ISSUE and NOT SOFT

SKILLS>

**From:** Patel, Dipti (GE Healthcare) [mailto:DiptiPatel@ge.com]
**Sent:** Friday, December 09, 2011 9:20 PM
**To:** Trivedi, Madhuri (GE Healthcare)
**Cc:** Abraham, Suby A (GE Healthcare); Gouda, Prashanth (GE Healthcare)
**Subject:** RE: InSite ExC Agent testing
I have sat with her spent some hours and explained (executed 1 test with her and explained each every pre-req) and seems she has so many problems..
 Suby resource in India she finished almost 25% or assigned test cases.. what do I do with her..(I guess I need to be fired now for not  able to make her understand simple things..) something is either wrong with me or her..
 All I hear is complaining/complaining that's it..
_____

**From:** Patel, Dipti (GE Healthcare)
**Sent:** Friday, December 09, 2011 9:49 AM

**To:** Trivedi, Madhuri (GE Healthcare)
**Cc:** Abraham, Suby A (GE Healthcare); Gouda, Prashanth (GE Healthcare)
**Subject:** RE: InSite ExC Agent testing
Every test resets the info.. u don't need to do anything special… _____

**From:** Trivedi, Madhuri (GE Healthcare)
**Sent:** Friday, December 09, 2011 9:49 AM
**To:** Patel, Dipti (GE Healthcare)
**Cc:** Abraham, Suby A (GE Healthcare); Gouda, Prashanth (GE Healthcare)
**Subject:** RE: InSite ExC Agent testing
Also in general, any changes are made on that machine it's better to have team know..I will reset the info…I was not aware that config files etc would be modified by someone other than me so was making sure..

_____

**From:** Patel, Dipti (GE Healthcare)
**Sent:** Friday, December 09, 2011 9:43 AM
**To:** Trivedi, Madhuri (GE Healthcare)
**Cc:** Abraham, Suby A (GE Healthcare); Gouda, Prashanth (GE Healthcare)
**Subject:** RE: InSite ExC Agent testing
Madhuri, You just need to follow the test steps mentioned in test plan.
If u follow the instructions given to u/or in the DVP (every test case resets the device name information) then u will not run into any problems..
I am not sure why u have any concerns if file has some name. Run the script and it will update the name for u (if u follow steps/instructions u will not see my name there).
Thanks! Dipti_____
**From:** Trivedi, Madhuri (GE Healthcare)
**Sent:** Friday, December 09, 2011 9:40 AM
**To:** Patel, Dipti (GE Healthcare)
**Cc:** Abraham, Suby A (GE Healthcare); Gouda, Prashanth (GE Healthcare)
**Subject:** RE: InSite ExC Agent testing
I would suggest to keep the team informed of such things so we are aware of these changes and not troubleshooting that.. _____
**From:** Patel, Dipti (GE Healthcare)
**Sent:** Friday, December 09, 2011 9:38 AM
**To:** Trivedi, Madhuri (GE Healthcare)
**Cc:** Abraham, Suby A (GE Healthcare); Gouda, Prashanth (GE Healthcare)
**Subject:** RE: InSite ExC Agent testing
No/yes… (we did do some testing but that should not impact your testing) Not sure if this is stopping you from proceeding with the tests?
You need to execute the test steps as mentioned in DVP and you should be good to go.

_____

**From:** Trivedi, Madhuri (GE Healthcare)
**Sent:** Friday, December 09, 2011 9:36 AM
**To:** Patel, Dipti (GE Healthcare); Gouda, Prashanth (GE Healthcare); Abraham, Suby A (GE Healthcare)
**Subject:** RE: InSite ExC Agent testing
Hi
Helios machine has a device membername Dipti_helios_test and not the one I registered. Dipti did you do anything on that machine. As part of the testing preconfiguring it.

_____

**From:** Trivedi, Madhuri (GE Healthcare)
**Sent:** Thursday, December 08, 2011 11:04 AM
**To:** Patel, Dipti (GE Healthcare); Gouda, Prashanth (GE Healthcare); Abraham, Suby A (GE Healthcare)

**Cc: Bansal, Piyush (GE Healthcare)**
**Subject: RE: InSite ExC Agent testing - rescheduled to 10:00 AM US CST**
Hi Dipti,
Which test plans you want me to execute as you wanted to divide them between Suby and me.
Madhuri

357.     Third woman also had a bachelor degree from non USA college. And was just working for some time at GEHC. They all lacked depth and breadth,  multiple graduate/masters/post-graduation ( technical and management education and experience)level education and unique experience that Trivedi bought and had..They were kind of Mediocre, not exposing David Mehring and Carl Conrath, others of their Insite EXC fraud, technical in competencies…David Mehring , Carl Conrath and others were NOT Threatened by these three woman as they were not challenge to them; while Trivedi was a THREAT and challenge to them as she was smart and no nonsense person. While Trivedi was making waves right from second week of joining.. None of the internal customers DIRECTLY went ahead and begged for HELP for TONS of INSITE EXC support issues they were having for a LONG TIME but these internal customers contacted Trivedi.

358.     **Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000),**
The court stopped short of saying that a court must assume discrimination where a nondiscriminatory reason is shown to be false. The trier of fact may reasonably find for the employer where the plaintiff makes only a weak showing of evidence as to the untruth of the employer's defense, or where there is ample evidence of another nondiscriminatory reason that the employer did not offer.

"a plaintiff's prima facie case of age discrimination, combined with sufficient evidence to find that the employer's asserted justification for its action was false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and that the plaintiff need not always

1  introduce additional and independent evidence of

2  discrimination...................................................... negated by the plaintiff at trial,

3  and also that the Fifth Circuit agreed, but did not find this to be sufficient for a ruling in favor of

4
5  Reeves.[8] O'Connor explained that the Fifth Circuit was correct to think that the trial court

6  could find in favor of the defendant if the nondiscriminatory reason was not disproven beyond a

7  reasonable doubt, but they were mistaken in claiming that they were compelled to.[9] The

8  reasoning is that, if an employer is shown to be untruthful about the reason for a decision, they

9  may be inferred to have been covering up actual discrimination.

10
          In holding .....the lower court disregarded evidence favorable to Reeves–the evidence
11
12           supporting his prima facie case and undermining respondent's nondiscriminatory
13           explanation–and failed to draw all reasonable inferences in his favor.

14     359.   Trivedi may prevail as she has shown that the employer GE's response is merely a
15
           pretext for behavior actually motivated by discrimination and retaliation.
16
17     360.   Title VII also has protection for anti-retaliation –when a person complains about
18  desperate treatment despite GE retaliated...Plaintiff was concerns about her H1B and hence
19  trying to be polite and as adjustable to GE as she can as long as her H1 B is not screwed.

20
21                              **SIXTH CAUSE OF ACTION**
22
23           **10 U.S.C. 2409 "WHISTLEBLOWER PROTECTIONS FOR CONTRACTOR**
24                                   **EMPLOYEES.", NDDA**
25
       361.   Plaintiff realleges, reasserts, and incorporates by reference the facts and
26
27  allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts
28  currently unknown.

Page - 144 -of 188 COMPLAINT          Madhuri Trivedi v. General Electric et al.

362.    Plaintiff has exhausted administrative remedies for the DODIG complaint, and the employee **may** bring an action against the defense contractor GE in the appropriate U.S. District Court.

363.    I am *Alleging reprisal under (10 U.S.C. 2409)*, and also alleging GE violations under NDDA criminal fraud investigation.

364.    *(10 U.S.C. 2409) (a)Prohibition of Reprisals.— (1) An employee of a <u>contractor</u>, subcontractor, <u>grantee</u>, or subgrantee or personal services <u>contractor</u> may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of the following:*

*10 U.S.C. 2409( a) (1) (A) Gross mismanagement of a Department of Defense <u>contract</u> or grant, a gross waste of <u>Department</u> funds, an <u>abuse of authority</u> relating to a Department <u>contract</u> or grant, or a violation of law, rule, or regulation related to a Department <u>contract</u> (including the competition for or negotiation of a <u>contract</u>) or grant.*

*10 U.S.C. 2409( a) (1)  (C) A substantial and specific danger to public health or safety.*

365.    Madhuri Trivedi plaintiff alleged that management officials terminated her employment in reprisal for making protected disclosures; also as per *10 U.S.C. 2409( a) (1) (A) and 10 U.S.C. 2409( a) (1) (C) A substantial and specific danger to public health or safety.*

366.    During her employment and thereafter during arbitration on several occasions , Ms.Trivedi made management know by in person meetings, emails and later legal documents that she was retaliated for making protected disclosure to management of GE

1  healthcare ( 10 U.S.C. 2409(a)(2) (G) A management official or other employee of the <u>contractor</u>

2  or subcontractor who has the responsibility to investigate, discover, or address misconduct. )

3  367.   Madhuri already reported to GE supervisory management as per 10 U.S.C. 2409(

4
5  a) (2)(G). And given arbitration substitutes court or grand jury ; I raised these in my arbitration

6  as well as per 10 U.S.C. 2409( a) (2) (F) A <u>court</u> or grand jury.

7  368.   DOD signed service contract for GE medical devices that used/included "Insite

8  EXC" medical device/remote service product. *<u>10 USC § 2409(g)(3)</u> The term "<u>contract</u>" means

9  *a <u>contract</u> awarded by the <u>head of an agency</u>.*

10

11

12  369.   **GE did violate *10 U.S.C.2409( a) (1) (A) and 10 U.S.C. 2409( a) (1)(C )as stated***

13  ***below-***

14  ✓  **Gross mismanagement of a federal contract or grant**, which is "a management action

15     or inaction which creates a substantial risk of significant adverse impact upon the

16
    agency's ability to accomplish its mission." Kavanagh v. Merit

17
18     Systems Protection Board, 176 F. App'x 133, 135 (Fed. Cir. April 10, 2006) (citing

19     White v. Department of the Air Force, 63 M.S.P.R. 90, 95 (1994));

20  ✓  **An abuse of authority relating to a federal contract or grant**, which is "an arbitrary or

21     capricious exercise of power … that adversely affects the rights of any person or that

22
23     results in personal gain or advantage to … preferred other persons." Doyle v. Department

24     of Veterans Affairs, 273 F. App'x 961, 964 (Fed. Cir. April 11, 2008) (quoting Embree v.

25     Department of the Treasury, 70 M.S.P.R. 79, 85 (1996)); or

26

27

28

✓ **A "substantial and specific danger to public health or safety"** (alleging the nature and likelihood of the harm, as well as when the harm may occur), or a "violation of law, rule or regulation" related to a federal contract. See Chambers, 515 F.3d at 1367, 1369.

370.    **GE made no real effort to notify employees including Madhuri Trivedi as per** *10 U.S.C. 2409 (d)*

371.    Plaintiff Trivedi didn't know of her right under this act (I did know that it is illegal under DOD contract terms but didn't know specific laws, statutes and administrative process with DOD IG)

Means she was not aware of her rights to file administrative complaint until it was little over/after three years and going to federal court )until after she was terminated (even after she was terminated, it took her sometime to know this act).

372.    But GE knew this act (and GE knowingly let plaintiff suffer damages in violations of this act) and so did several law firm attorneys Trivedi retained to represent her but as alleged earlier none of the attorney mentioned to Trivedi about filing DOD IG reprisal complaint. ...So they schemed that if plaintiff doesn't know her right. GE thought that they won't get caught hence it justified their illegal activities as being BIG corporation with DEEP POCKETS, connections, lobbying power and huge money for legal defense and dragging the matter so to exhaust other party who is whistleblowing.

373.    The complainant Trivedi prevails merely by demonstrating that the protected disclosure was a contributing factor in the personnel action, which can be met by showing knowledge and temporal proximity.

374.    I filed complaint to DOD IG on August 19, 2016 but first DOD investigator said

that a person should be a US citizen. Later when I spoke with Nilgun Tolek –Director of

investigations–she said no need to be US citizen but it was closed as three year statute of

limitation to report to DOD IG ran out as I contacted on August 19,2016 and I was terminated on

May 31, 2016…Though It was just few months more than three years but anyway she didn't

consider.

375.   **DOD IG also had whistleblower criminal investigation and it was properly**

**filed** ( I also had emails from head of DOD IG handling criminal investigation but I have no

update on that and more than 210 days have passed after filing the complaint….so federal court

has jurisdiction to hear the case under NDDA.

376.   Below is Patrick DOD IG email.

1)From: **Gookin, Patrick, OIG DoD** <Patrick.Gookin@dodig.mil>

Date: Thu, Sep 8, 2016 at 2:12 PM

Subject: RE: [Non-DoD Source] Fwd: Department Of Defense, Office of the Inspector

General - Initial contact

To: Madhuri Trivedi <madhuri.orangehc@gmail.com>

We will ask the investigator assigned to fraud to contact you.  They may want

you to submit it in some other manner.

Patrick W. Gookin

Director, DoD Hotline and Whistleblower Protection Ombuds  (703) 602-0036

2)From: **Gookin, Patrick, OIG DoD** <Patrick.Gookin@dodig.mil>

Date: Thu, Sep 8, 2016 at 11:51 AM

Subject: RE: [Non-DoD Source] Fwd: Department Of Defense, Office of the Inspector

General Reprisal complaint

To: Madhuri Trivedi , "Tolek, Nilgun, OIG DoD" <nilgun.tolek@dodig.mil>

Nilgun Tolek and Ian Odette only spoke to your complaint of reprisal, not

whether the government was defrauded.  The fraud matter is overseen by the DoD

Hotline.  Please don't assume nothing is being done about your fraud

complaint.  We have it for action.

Patrick W. Gookin

Director, DoD Hotline and Whistleblower Protection Ombuds

(703) 602-0036

Office of the Inspector General

U.S. Department of Defense  4800 Mark Center Drive, Suite 14L24 Alexandria, VA

22350-1500

3)From: **O'Reilly, Dermot F., SES, OIG DoD** <Dermot.O'Reilly@dodig.mil>

Date: Tue, Nov 1, 2016 at 9:35 AMSubject: Re: [Non-DoD Source]

*******************

To: Madhuri Trivedi <madhuri.orangehc@gmail.com>, "Stebbins, Steven A., SES, OIG

DoD" <Steven.Stebbins@dodig.mil>

377.    **41 U.S. code § 4712. Enhancement of contractor protection from reprisal for**

**disclosure of certain information .GE is a contractor for department of Veteran affairs and**

**recipient of other federal contracts.** 41 U.S. Code § 4712 (c ) (7)Rights and remedies not

waivable.— The rights and remedies provided for in this section may not be waived by any

agreement, policy, form, or condition of employment. Trivedi is a covered person as an

employee of GEHC who is a Federal/public contractor and under this act GE can't force pre-

dispute mandatory arbitration.

378.    Since GE and arbitrator knew of this federal law from beginning which prohibited reprisal; none of them considered it at any time. Nor any of the attorney I Hired or consulted with mentioned earlier. GE's stand is "CATCH ME IF YOU CAN- GE knew violating this law but since I didn't know GE did it until GE gets caught aka until Trivedi mentions that GE violated laws"

## SEVENTH CAUSE OF ACTION

### RELIEF AVAILABLE UNDER DODD FRANK ACT -SECTION 1055 -12 U.S. CODE § 5565(a) (1) (ALLOWS PRIVATE RIGHT OF ACTION) and RELIEF UNDER 12 U.S. CODE § 5565(a) (2)

### 12 U.S. CODE § 5536. PROHIBITED ACTS (a)( 1) AND 12 U.S. CODE § 5536. PROHIBITED ACTS (a)( 3)

### VIOLATION OF DODD FRANK ACT - SECTION 1057, CONSUMER FINANCIAL PROTECTION ACT (CFPA) , 12 U.S.C. 5567 EMPLOYEE PROTECTION

379.    Plaintiff realleges, reasserts, and incorporates by reference the facts and allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

380.    Trivedi was directly involved in medical devices and **INSITE EXC SERIVCE** ; GE provided under lease and loans under CFPA to customer/consumers these INSITE EXC SERVICE as a FINANCIAL PRODUCT/SERVICE offerings>> Hence Trivedi is involved in design, service of such financial product also a SERIVCE>

381.    **12 U.S.C. 5567(d) Unenforceability of certain agreements**

(1) No waiver of rights and remedies

Except as provided under paragraph (3), and notwithstanding any other provision of law, the

rights and remedies provided for in this section may not be waived by any agreement, policy,

form, or condition of employment, including by any predispute arbitration agreement.

(2) No predispute arbitration agreements

Except as provided under paragraph (3), and notwithstanding any other provision of law, no

predispute arbitration agreement shall be valid or enforceable to the extent that it requires

arbitration of a dispute arising under this section.

[hence GE can't force pre dispute arbitration for this cause of action]

382.   As stated in GE 10-K filings:-

" *Under the Dodd-Frank Wall Street Reform and Consumer Protection Act, we are*

*subject to prudential oversight by the Federal Reserve, as a result of GE*

*Capital's designation as a nonbank systemically important financial institution (nonbank*

*SIFI), which subjects us to increased and evolving regulatory requirements.*

*General Electric **Capital** Corporation (**GECC**) is a regulated savings and loan holding*

*company under U.S. law and became  subject to Federal Reserve Board (FRB)*

*supervision on July 21, 2011, the one-year anniversary of the Dodd-Frank Wall Street*

*Reform and Consumer Protection Act(DFA). In addition, on July 8, 2013, the U.S.*

*Financial Stability Oversight Council (FSOC) designated GECC as a nonbank*

*systemically important financial institution (nonbank SIFI) under the DFA.*"


383.   10-K for GENERAL ELECTRIC CO

Capital

Capital is the financial services division of GE focused on customers and markets aligned with GE's industrial businesses, whether in developed economies or emerging markets. We provide financial products and services around the globe, that are geared to utilize GE's industry specific expertise in aviation, energy, infrastructure, and healthcare to capitalize on market-specific opportunities. In addition, we continue to operate our run-off insurance activities as part of our continuing operations.

(a) Revenues of GE businesses include income from sales of goods and services to customers and other income.

(b) Sales from one component to another generally are priced at equivalent commercial selling prices.

384.    GE's deceptive sales and marketing –would consumers have leased or loaned GE medical equipment and services at the PRICE and CONDITIONS GE offered; if consumers would have known defects, non conformances and cyber security vulnerabilities?

385.    GE capital –healthcare finance offerings as shown below:

| Products and Services: | Markets served: | Equipment commonly financed: |
|---|---|---|
| • Custom Fair Market Value Leases | • Hospitals & Health Systems | • Advanced Visualization |
| • Equipment Loans | • Outpatient Imaging Centers | • Anesthesia Delivery |
| • Tax Exempt Revenue Bonds | • Outpatient Surgery Centers | • Bone Health |
| • Taxable Revenue Bonds | • Physician Practices & Outpatient Clinics | • Computed Tomography (CT) |
| • Technology Management | • Diagnostic Laboratories | • Diagnostic ECG |
|  | • Urgent Care Clinics | • Diagnostic Laboratory Equipment |
|  | • Skilled Nursing Facilities | • EP Recording |
|  | • Other Healthcare Providers | • Furniture & Fixtures |
|  |  | • Healthcare IT |
|  |  | • Hospital beds |
|  |  | • Interventional |
|  |  | • Magnetic Resonance (MR) |
|  |  | • Mammography |
|  |  | • Maternal-Infant Care |
|  |  | • Molecular Imaging |
|  |  | • Nuclear Medicine |
|  |  | • Patient Monitoring |
|  |  | • PET/CT |
|  |  | • Radiography and Fluoroscopy |
|  |  | • Surgical Imaging & Technology |
|  |  | • Surgical Robots |
|  |  | • Ultrasound |
|  |  | • Ventilators |

386.    **Solutions offered by GE capital-**

Providers are trying to adapt to a rapidly changing healthcare environment. Each has their own set of unique challenges and opportunities, including where they are and where they want to be. GE Healthcare Equipment Finance offers a breadth of solutions to help customers address their varied needs and goals—solutions that are also tied to clinical and operational roots of the organization so they are robust enough for long-term support.

## Traditional acquisition models

In an era of uncertainty, it can be difficult for organizations to develop financial and operational strategies with the flexibility to adjust to internal and external market forces. Leasing can deliver that flexibility to manage assets, right-size capacity and drive standardization or utilization so providers can adapt to changes in reimbursement, industry consolidations, and innovations in technology.

## Metric-based

Risk-sharing models offer providers the flexibility to expand and grow while addressing uncertainty regarding demand, reimbursement, and technology. Usage Based Billing (UBB) is an ideal solution for providers seeking to add new imaging technology yet uncertain that demand will support expansion. Reimbursement Based Billing (RBB) can enable increased capacity for procedures that have an uncertain reimbursement rate.

## Portfolio optimization and management

When demand and reimbursement are less predictable, it becomes more important for providers to have a strategic assessment of existing assets. We help organizations create a technology management plan that is aligned with clinical, operational, and financial goals. With a full assessment of asset optimization and capital planning efficiency, we can help healthcare systems reduce operational costs.

## Technology management

Some customers seek a holistic approach to technology management and financing. As experts in healthcare and finance, we can incorporate technology service, healthcare expertise, and finance in a way that helps manage technology obsolescence and lock in predictable cost structures. We can work closely with customers to understand their clinical, operational, and financial goals to help improve clinical efficacy and drive consistency through standardization and asset optimization.

## Common financing products

- Custom Fair Market Value Leases
- Tax Exempt Equipment Loans
- Taxable Revenue Bonds
- Technology Management Solutions
- Equipment Loans
- Tax Exempt Revenue Bonds

387.    GE Capital's verticals are aligned with GE's core industrial businesses – GE

Capital  Aviation Services (GECAS), Energy Financial Services (EFS) and GE

Industrial Finance, which include the Healthcare Equipment Finance business, Working Capital Solutions (WCS), and other financing activities to develop lending and leasing products for the GE Store.

388. GE Capital's Industrial Finance organization serves customers in Healthcare in USA and around the world.

389. . *See 12 U.S.C. 5567(a) (listing activities protected under CFPA).Claims arising under section 1057 of the Dodd-Frank Wall Street Reform and Consumer Protection 12 U.S.C. 5567(a) 12 U.S.C. 5567(a)*

*(a) In general No covered person or service provider shall terminate or in any other way discriminate against, or cause to be terminated or discriminated against, any covered employee or any authorized representative of covered employees by reason of the fact that such employee or representative, whether at the initiative of the employee or in the ordinary course of the duties of the employee (or any person acting pursuant to a request of the employee), has—*

*(1) provided, caused to be provided, or is about to provide or cause to be provided, information to the employer, the Bureau, or any other State, local, or Federal, government authority or law enforcement agency relating to any violation of, or any act or omission that the employee reasonably believes to be a violation of, any provision of this title [1] or any other provision of law that is subject to the jurisdiction of the Bureau, or any rule, order, standard, or prohibition prescribed by the Bureau;*

*… …*

*(4) objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of*

1    *any law, rule, order, standard, or prohibition, subject to the jurisdiction of, or*

2    *enforceable by, the Bureau.*

3    **COVERED PERSON** *12 USC § 5481(6)*

4    390.    *(6) Covered person The term "covered person" means— (A) any person that*

5    *engages in offering or providing a consumer financial product or service; and **(B)***

6    ***any affiliate of a person described in subparagraph (A) if such affiliate acts as a***

7    ***service provider to such person.   [Trivedi is such affiliate as an employee of GEHC***

8    ***of person described in subparagraph (A) GE, Service provider…] Affiliate* 12 USC**

9    **§ 221a(b)** *The term "affiliate" means any person that controls, is controlled by, or is*

10   *under common control with another person.   …………………………*

11

12

13

14   *12 USC § 1817(j)(8) For the purposes of this subsection, the term— (A) "person"*

15   *means an individual or a corporation, partnership, trust, association, joint venture,*

16   *pool, syndicate, sole proprietorship, unincorporated organization, or any other form*

17   *of entity not specifically listed herein; and (B) "control" means the power, directly or*

18   *indirectly, to direct the management or policies of an insured depository institution or*

19   *to vote 25 per centum or more of any class of voting securities of an insured*

20   *depository institution.* **[ under this Trivedi is GEHC CONTROLLED by GE,**

21   **Trivedi controlled by GEHC, GE as a PERSON and "GE Capital (part of parent**

22   **company GE) "offering loans and leases of medical devices and INSITE EXC**

23   **SERIVCE  ]**

24   **SERVICE PROVIDER   12 USC § 5481(26)(A)**

25   *(A) In general The term "service provider"* ***means any person that provides a material***

26   ***service* to a covered person in connection with the offering or provision by such covered**

27   *person of a **consumer financial product or service, including a person that— (i)***

1
2

*participates in designing, operating, or maintaining the consumer financial product or service; or*

3

*12 USC § 1831f(g)(4) employee(4) Employee For purposes of this subsection, the term "employee" means any employee— (A) who is employed exclusively by the insured depository institution; (B) whose compensation is primarily in the form of a salary; (C) who does not share such employee's compensation with a deposit broker; and (D) whose office space or place of business used exclusively for the benefit of the insured depository institution which employs such individual.*

4
5
6
7

Trivedi was indirectly involved in such offering as she was "*any authorized representative" and*

8
9

*"Employee"* . On several occasions, field personnel where GEHC medical devices leased or

10

loaned called Trivedi to assistance on operation and service issues related to these medical

11

devices. Hence Trivedi is considered protected as it related to offering of such "product and

12

service".  Trivedi was involved in designing, supporting , servicing such product which was

13
14

being leased and loaned.

15
16

391.    As per 12 U.S.C. 5567 (b), which imposes no requirement that information be

17

conveyed to a government agency, no requirement to report to government agency in order to get

18

whistleblower protection.

19
20

*12 U.S. Code § 5536. Prohibited acts (a) In generalIt shall be unlawful for—*

21

*(1) any covered person or service provider—(A) to offer or provide to a consumer any*

22

*financial product or service not in conformity with Federal consumer financial law, or*

23
24

*otherwise commit any act or omission in violation of a Federal consumer financial law;*

25

*or(B) to engage in any unfair, deceptive, or abusive act or practice;*

26

*(3) any person to knowingly or recklessly provide substantial assistance to a covered*

27

*person or service provider in violation of the provisions of section 5531 of this title, or*

28

*any rule or order issued thereunder, and notwithstanding any provision of this title,[1]*

*the provider of such substantial assistance shall be deemed to be in violation of that*

*section to the same extent as the person to whom such assistance is provided.*

392.    By deceptive, fraudulent marketing, sales, leasing, lending and financing GE

medical devices through GE capital; GE was violating  laws. The Consumer Financial

Protection Bureau oversees GE capital. GE Capital has GE Healthcare Equipment

Finance . Hence by engaging in all the activities Plaintiff Trivedi did to report to GE

management internally about alleged violations that CFPB oversees.; Trivedi is a

"covered employee" as per *12 U.S.C. 5567(b)*

393.    Trivedi as per 12 U.S.C. 5567(a)(4) and 12 U.S.C. 5567(a)(1) objected and

refused to participate in GE fraud scheme to release defective, non conforming, Cyber

security vulnerabilities, hackable medical devices and service products, related

activities to 100,000 medical devices in PRODUCTION inside HOSPITALS and

reported her objections and such illegal activities to employer GE as per 12 U.S.C.

5567(a)(1);

394.    Trivedi reasonably believed to be in <u>violation</u> of law, rule, order, standard, or

prohibition, subject to the jurisdiction of, or enforceable by, the <u>Bureau -       12</u>

<u>U.S. Code § 5536(a)</u>

395.    Even when Trivedi was assigned task to integrate InsiteEXC on Surgery platform;

Trivedi's assigned task that Trivedi reasonably believed to be in <u>violation</u> of law,

rule, order, standard, or prohibition, subject to the jurisdiction of, or enforceable by,

the <u>Bureau.</u>  12 U.S. Code § 5536(a)(1) and 12 U.S. Code § 5536(a)(3) ..It was illegal

for GEHC managers, management and defendants in this complaint to assist under 12

U.S. Code § 5536(a)(3) to "GE Capital" or any such "Covered Person", "Service Provider" at GE company who offered such loans, leasing of medical devices.

396.    12 U.S. Code § 5565. Relief available (a) Administrative proceedings or court actions

(1) Jurisdiction -The court (or the Bureau, as the case may be) in an action or adjudication proceeding brought under Federal consumer financial law, shall have jurisdiction to grant any appropriate legal or equitable relief with respect to a violation of Federal consumer financial law, including a violation of a rule or order prescribed under a Federal consumer financial law.

397.    Private cause of action is available under 12 U.S. Code § 5565 as well as relief for damages, restitution, injunctive relief.

398.    *The Act also prohibits actions by any "related person" violating consumer products, including:*

1.  *any director, officer, or employee charged with managerial responsibility for, or controlling shareholder of, or agent for, such covered person;*
2.  *any shareholder, consultant, joint venture partner, or other person, as determined by the Bureau (by rule or on a case-by-case basis) who materially participates in the conduct of the affairs of such covered person; and*
3.  *any independent contractor (including any attorney, appraiser, or accountant) who knowingly or recklessly participates in any -*
    1.  *violation of any provision of law or regulation; or*
    2.  *breach of a fiduciary duty.*

399.    Other finance related rules and regulations, statutes, state laws may apply to GE's loan, lease, tax bond and related activity for it's healthcare equipment finance; the matter should looked into holistically.

400.    Plaintiff did file OSHA complain (EXHIBIT 6 & 7)

## EIGHTH CAUSE OF ACTION

## 8 U.S.C.§1324b(a)(1),  8U.S.C. § 1324b (a)(5)

## PROHIBITION OF INTIMIDATION OR RETALIATION

401.    Plaintiff realleges, reasserts, and incorporates by reference the facts and allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

402.    Above cause of action prohibits employer to retaliate, discrimination based on nationality, immigration status as person(employee) who objects any unlawful practices, acts done by employer. Even while mediation, arbitration was pending, GE cancelled her H1 which is also to prohibit her from pursing her claims under this and also to scare her off in terms of her immigration.

403.    *8 U.S.C.§1324b(a) Prohibition of discrimination based on national origin or citizenship status (1) General rule It is an unfair immigration-related employment practice for a person or other entity to discriminate against any individual (other than an unauthorized alien, as defined in section 1324a(h)(3) of this title) with respect to the hiring, or recruitment or referral for a fee, of the individual for employment or the discharging of the individual from employment—*

*(A) because of such individual's national origin, or*

*(B) in the case of a protected individual (as defined in paragraph (3)), because of such individual's citizenship status.*

404.    *As per 8U.S.C. § 1324b (a)(5)- It is also an unfair immigration-related employment practice for a person or other entity to intimidate, threaten, coerce, or retaliate against any individual for the purpose of interfering with any right or*

*privilege secured under this section or because the individual intends to file or has*

*filed a charge or a complaint, testified, assisted, or participated in any manner in an*

*investigation, proceeding, or hearing under this section.*

405.    I filed form to the Immigrant and Employee Rights Section (IER), formerly

Office of Special Counsel for Immigration-Related Unfair Employment Practices in

the Civil Rights Division of the U.S. Department of Justice. Confirmation number:

OSC Charge with confirmation.

406.    **While employed at GE, even as I emailed GE HR and GE immigration**

**attorney(EXHIBIT 11) that GE is violating immigration laws and atthat time I did**

**INTEND to take action/file complain.**

407.    Trivedi was abused and insulted at work due to her national origin; is subjected to

negative treatment by an employer  GE due to her national origin. These unlawful employer

behaviors also included workplace bullying and harassment due to Trivedi's country of birth.

Because Trivedi's national origin is INDIA… and especially when such a lady Trivedi form

India is EXPOSING them for fraud, technical incompetencies.

408.    As her nationality being INDIAN which is considered "THIRD WORLD

COUNTRY" Would GE have DARED TO DO WHAT GE DID TO TRIVEDI if TRIVEDI

WOULD HAVE BEEN from USA national origin or U.K./FRENCH national origin ? In

Trivedi's belief her national origin played role. Also being a WOMAN from a THIRD

COUNTRY INDIA; hence national origin.

409.    It prohibits citizenship discrimination when it has the purpose of discriminating

on the basis of nation origin; which is case for Trivedi.

410.   **As alleged earlier –plaintiff has stated claims under this cause of action. As plaintiff was discriminated and further retaliated, discharged in violations of *8 U.S.C.§1324b(a)*based on her by her former employer GE**

✓ **nationality -8 U.S.C.§1324b(a)(1)(A),**

✓ **immigration, citizenship status ]**

## NINTH CAUSE OF ACTION

### BREACH OF CONTRACT

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### BREACH OF FIDUCIARY DUTY

411.   Plaintiff realleges, reasserts, and incorporates by reference the facts and allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

412.   Breach of fiduciary duty applies to plaintiff as well as GE stockholders, shareholders.

413.   Covenant-of-good-faith that terminations made in bad faith or motivated by malice are prohibited. That's what exactly GE did- terminated plaintiff Trivedi in bad faith and was motivated by malice, conspiracy as she didn't participate in GE fraud scheme, opposed and spoke up.

414.   Other common-law limitations including actions based on the (1)intentional infliction of emotional distress, (2)intentional interference with a contract applies to Plaintiff Trivedi's case.

415.    GE is required by SEC rule to include code of business conduct and ethics including in its Annual report form. And comply with it. **17 CFR § 229.406 -Code of ethics.**

416.    **A.  Rules enacted by the major stock exchange NYSE**

 The NYSE requires each publicly traded company to publish a Code of Business Conduct and Ethics promising not to retaliate against employees.

417.    GE is a publicly traded company –on NYSE stock exchange.

418.    First, the stock ex-changes, NYSE require their listing issuers to adopt a Code that applies to all employees.  Second, the Code must provide for an enforcement mechanism to encourage prompt, internal reporting of violations of the Code.( *See* NYSE LISTING MANUAL § 303A.10) .The NYSE listing requirements specifically mandate that the Code include corporate assurances that it will not retaliate against an employee for reporting violations of the Code(*See* NYSE LISTING MANUAL § 303A.10);NYSE requires that companies protect employees who make reports in "good faith,"

> ( *See NYSE LISTING MANUAL § 303A.10 )Encouraging the reporting of any illegal or unethical behavior. The listed company should proactively promote ethical behavior. The listed company should encourage employees to talk to supervisors, managers or other appropriate personnel when in doubt about the best course of action in a particular situation. Additionally, employees should report violations of laws, rules, regulations or the code of business conduct to appropriate personnel. To encourage employees to report such violations, the listed company must ensure that employees know that the listed company will not allow retaliation for reports made in good faith.*

NOTE:General policies about whistleblowing are not enough; these corporate governance standards require *promises* not to retaliate (In the context of attempting to provide contractual

protection against sexual orientation discrimination, Ian Ayres and Jennifer Gerarda Brown note the importance of obtaining contractual promises of nondiscrimination rather than merely unenforceable nondiscrimination policies.  ).

419.   **The NYSE listing rules require GE to promise broad whistleblower protection;** protect employees/plaintiff Trivedi who made whistleblower disclosures in "good faith,", fair dealing as well.

420.   **B. Plaintiff Trivedi signed as a condition of employment at the time of joining GE(EXHIBIT 28 & EXHIBIT 29 ) GE policies-The Spirit and the letter**

The Spirit and the letter  ( letter is also part of SEC filing DEF 14A)( also available on GE website)— it states that *"You do not need to be certain that a violation has occurred. At the same time, you have an obligation to promptly raise a concern when you see a situation in which our integrity principles or policies are not being followed.  "*

*"RESPONSIBILITIES OF EMPLOYEES*

✓ *Know and comply with the laws and regulatory requirements that affect your job responsibilities.*

✓ *Be the Voice of Integrity and promptly escalate any potential issues that may lead to a regulatory compliance breach."*

**NOTE- GE has itself done so much fraud, scandals, cooked account books and more that these policies spirit. Policy Letter is merely a letter new employee required to read and sign and follow but company itself is not following.**

421.   Because a corporate Code always applies to the company GE and its employees

(plaintiff Trivedi), enforcing a Code promise often avoids a debate about whether a worker-plaintiff Trivedi is a "covered employee." The anti-retaliation promise contained in GE corporate Code protects employees (plaintiff Trivedi) as a covered employee. GE Corporate Code, on the other hand, also promised to protect an employee who discloses *any* illegal or unethical activity occurring within the corporation; hence such claims to go forward under a breach of contract theory based on the employer GE 's anti-retaliation policy as it stated on **GE policies-The Spirit and the letter** page 13 <u>"GE absolutely prohibits retaliation"</u>.

422.   **C. Plaintiff Trivedi fulfilled her "Duty to Report Violations,"** which stated in GE policies: The spirit and the letter(SEC filing DEF 14A): " *Penalties for violations >>Employees and leaders who violate the spirit or letter of GE's policies are subject to disciplinary action up to and including termination of employment. Misconduct that may result in discipline includes: • Violating GE policy, Failure to promptly raise a known or suspected violation of GE policy , Retaliation against another, employee for reporting an integrity concern,• Failure to demonstrate leadership and diligence to ensure compliance with GE policies and law.*

423.   <u>*GE SEC filing DEF 14A-Code of Conduct*</u>. *All directors, officers and employees of GE must act ethically at all times and in accordance with the policies comprising GE's code of conduct set forth in the company's integrity policy, The Spirit & The Letter, which is published on GE's website at www.ge.com/files/usa/citizenship/pdf/english.pdf.*

424.   <u>GE's Anti-retaliation Promise as an Express Contract as well==also answer to GE's defense that it was at-will employment.</u>

425.    **These anti-retaliation protections supersede any private ordering between parties GE and plaintiff Trivedi, including an at-will arrangement, that would permit an employer GE to fire or otherwise retaliate against a plaintiff Trivedi for reporting misconduct.**

426.    **D. Implied contract**

427.    Plaintiff had an implied contract of employment for so long as Plaintiff performed Plaintiff's job in a satisfactory manner.

428.    Trivedi performed her job in a satisfactory manner. Even in her performance appraisal(EXHIBIT 10) –GE manager rated her performance as "meeting expectations" but made up that it is her communication skills, relationship skills which needs to be improved and as a result of PRETENSE/made up false/retaliatory.

429.    **E. GE made Good faith implied job contract that GE will do H1, yearly**
        **extension of H1 and  her greencard**

As plaintiff was on her sixth year of H1B..After SIXTH year on H1B unless employer timely files greencard paperwork ,H1 B can't be extended nor can one work for another employer/change job..That's what exactly GE did.

430.    Also despite several requests during mediation, a arbitration and a letter to CEO of GEHC by immigration attorney Jeff Goldman(EXHIBIT 12) –GE didn't file I 140 which would have allowed her to extend her H1B and leave GE and work for another employer.

431.    We requested at that time that GE keep me on leave without pay and just do paperwork. But GE didn't care. It is also illegal to cancel H1 B while mediation and arbitration is pending because without H1 B I had no way to be in country legally which was a weakness –GE and arbitrator used that (H1 B cancellation ) **(EXHIBIT 12)**as tools.

Page - **165** -of **188** COMPLAINT            Madhuri Trivedi v. General Electric et al.

432.    Defendant breached its contract with Plaintiff by: Terminating Plaintiff in breach of the promises made to Plaintiff; terminating plaintiff in violations of public policy ,state and federal statutes, regulatory agencies including but not limited to DOD, FDA, SEC, DOL rules and regulations. Also in violation of all other anti-retaliation, whistleblower protection laws .Cause of action claim -----stated here. Terminating Plaintiff without good cause as she did meet her performance (technical performance as well) (EXHIBIT 10)

433.    The company induced Ms. Trivedi; and that GEHC would make good faith efforts to pursue permanent residency **(EXHIBIT 23)**for her, only to fall far short on this promise. What is particularly frustrating is the fact that GEHC did get past the most difficult part of the green card process—the US Department of Labor did certify a Labor Certification Application for her ( Immigration has approved Ms. Trivedi's petition as a person with exceptional ability/advanced degree individual).

" **Federal Court cases have clearly faulted employers for this kind of inducement and failure to use good faith in following up with this process. (EXHIBIT 23)**Also, the company **neglected to file the PERM labor certification on timely manner (despite Ms. Trivedi requesting) (EXHIBIT 12 ), which has resulted in that she could not work for other employer**(preemptive) **in US.**

434.    Ms. Trivedi had emailed both ;Manager Dave Mehring and lead Nate Davis mentioning this even before joining GEHC(EXHIBIT 21) .So, they are not letting Ms. Trivedi go on with her own life. Knowing these matters from beginning.  Also by cancelling H1  B so I can't proceed in arbitration or any other court.( preemptive)"

435.    **Breach of contract**

*See Leyden v. Am. Accreditation Healthcare Comm'n, 83 F. Supp. 3d 241, 247–48 (D.D.C. 2015). In Leyden, the trial court held that the plaintiff had a valid claim based on the employer's alleged violation of its internal anti-retaliation policy.*

*In Leyden, The defendant then terminated the plaintiff's employment. The defendant moved to dismiss the complaint, arguing in relevant part that the anti-retaliation policy did not create contractual rights. Even if it did, the defendant contended, it had disclaimed any such rights in its employee handbook.* **__Court held that The anti-retaliation policy created an implied contract.__** *Strass v. Kaiser Foundation Health Plan, a case holding that an employee handbook created an implied contract. Id. at 247 (citing Strass v. Kaiser Found. Health Plan, 744 A.2d 1000 (D.C. 2000)). The court discussed how a manual could create rights, and how an employer could effectively disclaim those rights. The court also rejected the defendant's argument about the disclaimer, noting that a disclaimer that was "rationally at odds" with the other language in the document may not cut off an implied contract.*

*In finding an implied contract, the court focused on the employer's invitation to report "Improper Activities" internally and on the language of the anti-retaliation policy. The court also concluded that the employer's disclaimer, which was found in a different document, was rationally at odds with the anti-retaliation policy. .*

436.   Implied covenant of good faith and fair dealing to GE and plaintiff's implied contract.

*Rely upon "breach of implied contract" or "promissory estoppel" theories to examine*

*handbook promises to enforce anti-retaliation promises found in GE corporate Codes, utilizing the "handbook doctrine," an exception to the at-will rule for employer GE promises in employee handbooks or manuals. Similarly, under a promissory estoppel theory, specific promises within a handbook increase the likelihood that a court will find that the employee Trivedi reasonably relied upon the statement.*

437.    As stated above;Trivedi and GE created contractual rights, Trivedi relied on anti-retaliation promise in the GE policies letter (which had **GE anti-retaliation policy which created an implied contract.)** she SIGNED as an condition of employment and followed duty to report violations as expressed in GE policy, federal , state laws and rules, along with other courses at GE that she was required to take as GE was in regulated environment.

438.    Madhuri Trivedi protected under the whistleblower protection policies in corporate codes of ethics as she was following that.

439.    **An employer GE has a fiduciary duty to the employee Trivedi**

440.    A fiduciary relationship may be created by agreement of the parties. Trivedi and GE created such relationship at the time Trivedi joined GE and when Trivedi signed letter stating that as long as Trivedi does her JOB, performs duty as shown in her JOB OFFER , follows "GE Policies" as mandates by NYSE –New York stock exchange ---when any of violations that Trivedi beilevs and had proof that violated laws, statutes, regulations as stated in cuase of actions in this complaint along with violation of "GE Polices"; Trivedi objected, wrote to management , told them in=person...While GE defendants ,Fragomen defendants BREACHED such fiduciary duty.

441.    See EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 20 (2005). Rather, the

1    actual relationship between the parties determines the existence of a fiduciary duty (e.g., the

2    second type of fiduciary relationship). Id.In Meinhard v. Salmon, 164 N.E. 545, 546 (N.Y.

3    1928), Justice Cardozo provided the "classic formulation" of a fiduciary duty:

4

5         New York Court of Appeals has described the duty as arising from a relationship

6         "'between two persons when one of them is under a duty to act for or to give advice

7         for the benefit of another upon matters within the scope of the relation.'" See EBC I,

8         5 N.Y.3d at 19, quoting Restatement (Second) of Torts § 874, Comment a

9

10

11        442.    courts have long recognized that when an employee is in a position of

12   management and conducts the business of an employer, he owes that employer a fiduciary

13   duty.(holding that employees "vested with policy-making authority [with]the ability to make

14   decisions which bind the company" owe a fiduciary duty). This fiduciary duty encompasses a

15   duty of care, loyalty, and good faith. [Trivedi and defendants here apply in this analogy]

16

17

18        443.    GE argument that Trivedi had POOR soft skills is not anything but PRETEXT

19   and bullying that management did ; GE falsely generated some emails and selectively solicited

20   inputs from few GEHC employees(these employees themselves where involved in Insite EXC

21   fraud and were failing TECHNICALLY either to FIX INSITE EXC OR to DEVELOP new

22   platform that would replace INSITE EXC) who would say Trivedi had soft skill issues ..GEHC

23   management never solicited/took into consideration/account feedback from DAVE SALLIS,

24   JOE PURCELL, BARRY, MOHEDDINE and several other managers, technical leads who were

25   happy with Trivedi's technical as well as SOFT SKILLS.

26

27

28

444.    The breach is actionable as there is proof that the plaintiff Trivedi suffered

damages as a result of the breach any failure on part of the fiduciary to act ..a breach

of fiduciary duty can be any behavior that is not in the best interest of the client;

445.    **GE violated/breached this code of ethics NYSE requirement by doing what**

**they did to plaintiff Trivedi.**

446.    **GE's breach of an anti-retaliation policy in a Code of Ethics give rise to a**

**breach of contract claim.** *Federal district court held that an employer's anti-retaliation policy*

*created [1] legally enforceable rights.*

447.    As alleged above on several elements; GE breached contract.

## TENTH CAUSE OF ACTION

### 31 U.S.C. §3729 et.seq. AND 31 U.S.C. § 3802 AND RELATED WHISTLEBLOWER

### REPRISAL

448.    Plaintiff realleges, reasserts, and incorporates by reference the facts and

allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts

currently unknown.

449.    I am requesting whistleblower protection and reprisal relief under these laws as

well.

450.    GE violated FEDERAL FALSE CLAIMS ACT ,31 U.S. Code § 3802 ; False

---

[1] https://www.zuckermanlaw.com/code-of-ethics-whistleblower-protection-lawyer/

Page - **170** -of **188** COMPLAINT          Madhuri Trivedi v. General Electric et al.

1    claims and statements; Liability- to the actions of government contractor by failing to disclose

2    product defects. General Electric is a government contractor.

3        451.    GE violated Civil False Claims Act (31 U.S.C. §3729 et seq.) by knowingly

4
5    presenting false or fraudulent medical device SALES and service contract submitted to

6    government, conspired to defraud the government. GE conspired and "knowingly" defrauded

7    government because GE had actual knowledge of the information about InsiteEXC defects,

8    design non conformances, performance issues, cyber security vulnerabilities and potential  risks

9    these vulnerabilities posed to insider attacks as well as attacks from outside network that could

10   affect/affect patients possible diagnosis of Imaging scan, and much more unspecified attack

11
12   vector, acted in deliberate ignorance of the truth, falsified of the  InsiteEXC information ;

13   continuously selling and integrating InsiteEXC of all kinds of GE medical devices for years to

14   generate revenue and earn millions worth of medical device purchases and service contracts by

15   government. As per 31 U.S.C. §3729 et seq. Plaintiff Trivedi claims here in -Not proof of

16
17   specific intent of GE to defraud is required .It is also fraudulent inducement.

18       452.    Plaintiff  Trivedi engaged in protected activity; GE had knowledge that Plaintiff

19
20   Trivedi was engaged in protected activity; GE took an action that had a negative effect on the

21   terms, conditions, or privileges of employment, such as termination,  harassment and any other

22   act that would dissuade a reasonable person from reporting violations of the <u>False Claims Act</u>;

23   and GE retaliated against Plaintiff  Trivedi because of this conduct.

24
25       453.    **Plaintiff has alleged properly all the elements as stated above in this**

26              **complaint.**

27       454.    Further stopping me from pursing Quitam and/or any other claims by cancelling

28

1    my immigration H1B. Because quitam attorneys said that given Trivedi's immigration situation

2    they were hesitant to invest million in the quitam lawsuit if they take on contingency basis.

3

4

5  **ELEVENTH CAUSE OF ACTION**

6  **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

7        455.    Plaintiff realleges, reasserts, and incorporates by reference the facts and

8

9  allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts

10  currently unknown.

11        456.    Plaintiff alleges that Plaintiff's termination was wrongful because it was in

12  Violations of the public policy of the United States in that Plaintiff's termination was in

13  retaliation for Plaintiff's opposing and reporting illegal activity, as described in preceding

14  allegations for -----Under the public-policy an employee is wrongfully discharged when the

15  termination is against an explicit, well-established public policy.

16

17        457.    Thompson v. St. Regis Paper Co., 102 Wn.2d 219, 232, 685 P.2d 1081 (1984).

18  Those decisions announce a return to Thompson, in which we adopted the public policy tort in

19  recognition that the at-will doctrine gives employers potentially "unfettered control of the

20  workplace and, thus, allows the employer to take unfair advantage of its employees." Thompson,

21  102 Wn.2d at 226. Thompson observed that allowing an exception to the at-will doctrine serves

22  to equalize the imbalance of power that exists in an employment relationship. Id. Our adoption of

23

24  the common law tort thus signified that the at-will doctrine can no longer "be used to shield an

25  employer's action which otherwise frustrates a clear manifestation of public policy." Id. at 231.

26

27

28

Page - **172** -of **188** COMPLAINT         Madhuri Trivedi v. General Electric et al.

[Thus GE's argument about "at will" employment doesn't work here as it is used to shield GE wrongdoing and puts TRIVEDI being taken unfair advantage off and exhibits imbalance of power]

458.    A substantial motivating reason for Trivedi's termination was her reporting to GE's management, managers, seniors, its General manager Dave Elario(who threatened to take Trivedi off job and already did later)  its CTO, its CEO, its CFO

459.    Trivedi refused to participate in GE's attempts to turn a blind eye to, and indeed affirmatively  and knowingly cover up , CFPA-consumer finance protection act, HIPPA, HITECH, Sarbanes-Oxley, and other violations of federal securities laws, False claims act, and Trivedi took a position adverse to GE regarding such illegal activity.

460.    Wrongful discharge tort also protects employees who disclose a violation of
    "public policy"


**TWELFTH CAUSE OF ACTION**

**18 U.S.C § 1512 et. Seq. - TAMPERING WITH A WITNESS, VICTIM, OR AN INFORMANT, 18 U.S.C § 1513 et.seq. - RETALIATING AGAINST A WITNESS, VICTIM, OR AN INFORMANT  (E)**

461.    Plaintiff realleges, reasserts, and incorporates by reference the facts and allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

462.    GE knew that FBI said that GE matter was quitam matter, and that FDA gave a letter in Feb 2014, another FDA letter from Director of radiological devices; Mary Patel (EXHIBIT 19),OSHA but despite continue jeopardize my livelihood by jeopardizing my

immigration and further stopping me from pursing claims, work with /go to government

agencies, work on government investigations.

## THIRTEENTH CAUSE OF ACTION

## 9 U.S. CODE § 12, 9 U.S. CODE § 10(A)(3),9 U.S. CODE § 10(A)(2) 9 U.S. CODE § 10(A)(1) AND CHALLENGING ARBITRATION AWARD UNDER COMMON LAW

463.    Plaintiff realleges, reasserts, and incorporates by reference the facts and

allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts

currently unknown.

464.    Arbitration carries no right to trial by jury that is guaranteed by the Seventh

Amendment

465.    This court has supplemental jurisdiction as it related to claims bought in here.

466.    ***New Prime Inc. v. Oliveira, 139 S. Ct. 532 (2019).***The Court issued its decision

on January 15, 2019. In a unanimous decision, the Court upheld the findings of the First Circuit,

affirming that judgment of whether Section 1 **exceptions applied or not was a role for the courts and not arbitration,"**

[the "who decides" question. ]

**Delegation clause in arbitration is also presenting conflicts at various circuit level.**

Source :---https://www.arbitrationnation.com/     >>>>New Prime suggests that there's a

difference between contractual arbitrability – issues about flaws in the arbitration agreement,

scope of the arbitration agreement, or procedural preconditions that need to be satisfied before

the recourse to arbitration is appropriate – and subject matter limits on what can be arbitrated.

1   Hence it is upto the COURT in this DISTICT where Trivedi has filed complaint decides about

2   this issues related to arbitration ; and not arbitrator or GE's solutions policy.

3       467.    The Act's Statutory Bases for Vacating Arbitration Awards.TheFAA's vacatur

4
5   provision"show[s]a desire of Congress to provide not merely for any arbitration but for an

6   impartial one." Commonwealth Coatings Corp. v. Cont'l Cas. Co., 393 U.S. 145, 147 (1968).

7   Arbitratorsand litigatorsshould remain mindful of instances in which the courts have found

8   causeto vacate an arbitration award and/or refused to grant vacatur, and parties on the losing end

9   of an arbitration maypursue these (limited) avenues of attack on awards
10
        468.    Vacating award =====Fifth Circuit recently noted, the FAA …….only 'where
11
12   the award was procuredby corruption, fraud, or undue means.'"Taylor v. Univ. of

13   Phoenix/Apollo Group, 487 F. App'x 942 (5th Cir. 2012)(quoting Forsythe Int'l., S.A. v. Gibbs

14   Oil Co. of Tex.,915 F.2d 1017, 1022 (5th Cir.1990))

15       469.    JURISDICTION section has details about this cause of action; along with
16
             allegation made through out this complaint this support this cause of action
17
        470.    There is constant dispute all across country at various circuit court levels "subject
18
19   matter arbitrability," mean the power of an arbitrator to hear certain categories of disputes;  as a

20   matter of public policy, various claims brought in this Trivedi's complaint. Does arbitrator has

21   authority to hear in a PRIVATE HOTEL ROOM in A PRIVATE RECORD FOR ABITRATION

22   PROCEDINGS AND HEARING SUCH COMPLEX causes of action involving cyber security,
23
     public health, safety, consumer finance, Department of defense contracts, security and exchange
24
25   commission law …Though Dodd Frank act, SOX claims, False claims act claims and CFPA-

26   finance related claims are PRECLUDED form GE's mandatory arbitration…

27       471.    As set forth in Wilko, the manifest disregard of law doctrine on her disregard of
28

the law.  Thus, it is the arbitrator's failure to apply the lawof which she is fully cognizant that becomes the subject of review and a potential basis for vacating an arbitration award.

472.    See, e.g.,In re Wal-Mart Wage and Hour Emp't Practices Litig., 737 F.3d 1262,1267 n.7 (9th Cir. 2013) ("Courts may also vacate arbitration awards on the basis of an arbitrator's manifest disregard for law. . . . 'Although the words "manifest disregard for law"do not appear in the FAA, they have come to serve as a judicial gloss on the standard for vacatur set forth in FAA § 10(a)(4).'" (quoting Johnson v. Wells Fargo Home Mortg., Inc., 635 F.3d 401, 414 (9th Cir. 2011))); Wachovia Secs., LLC v. Brand, 671 F.3d 472,483 (4th Cir. 2012) ("We read this footnote [in Stolt-Nielsen] to mean that manifest disregard continues to exist either as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10." (quotation marks omitted));

There is CIRCUIT CONFLICT about manifest disregard of law.

473.    See E. Tex. Salt Water Disposal Co. v. Werline, 307 S.W.3d 267, 270 n.7 (Tex. 2010)("Although the Company did not assert any statutory basis for vacating the award, the court held that the common law, in addition to the TAA, allows an arbitration to be set aside for ... such gross mistake as would imply bad faith and failure to exercise honest judgment. . . . see also Callahan & Assocs., 92 S.W.3d at 844.

474.    9 U.S.C. § 10(a)(3) was the First Circuit's decision in Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901, 763 F.2d 34, 38 (1st Cir. 1985).The First Circuit found that the arbitrator's failure to give any weight to this testimony violated 9 U.S.C. § 10(a)(3), since the transcript of the testimonywas relevant and the sole evidence available to establish the employee's culpability.  In reaching this decision, thecourt noted that a federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear

pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings,"

475.    Gulf Coast Indus. Workers Union v. Exxon Co., USA, 70 F.3d 847, 850 (5th Cir. 1995), the Fifth Circuit upheld a district court's order to vacate an arbitration award pursuant to 9 U.S.C. § 10(a)(3)based on the arbitrator's improper conducting misleading a party as to the admission of certain pieces of key evidence. However, the arbitrator had prevented Exxon from presenting evidence regarding the chemical analysis of the ciga The D.C. Circuit has similarly noted that petitionersseeking to invoke 9 U.S.C. § 10(a)(3) must demonstrate that the excluded evidence was pertinent and material to the controversy, and that the exclusion of the evidence deprived the petitioners of a fundamentally fair hearing. SeeLessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,481 F.3d 813, 817-18 (D.C.Cir.2007)rette,

476.    **Trivedi's deposition, depsotion of Bill barbiux, deposition of Meheddine was not entred into evidence; not arbitrator allowed Trivedi to question various witnesses where it would help Trivedi to prove her case and instead continuously insulted and interrupted Trivedi ; stopped her from asking questions..**

[Similarly for Trivedi case]

# FOURTEENTH CAUSE OF ACTION

## PROMISSORY ESTOPPEL AND EQUITABLE ESTOPPEL

477.    **Promissory estoppel and equitable estoppel** as it applies to cause of actions in this complaint. … Plaintiff Trivedi incorporates by reference Estoppel, as though fully set forth herein as it applies to all cause of actions( where applicable) brought here in this complaint.

478.    **Promissory estoppel and equitable estoppel cause of action also applies to Foley & Mansfield defendant.**

479.   **Promissory  estoppel is permitted in  all jurisdictions.**

480.   Promissory estoppel is a cause of action  that might be asserted against a party for the first party's detrimental reliance upon  a promise from the second party.

481.   Estoppel itself is used to keep a party from  promising one thing and then changing the  circumstances after a second party has  relied upon the promise.

482.   Promissory estoppel  allows the party who was wronged by his or  her reliance upon the specific promise or  assertion to collect damages.

483.   a representation under  equitable estoppel can also be inferred from  silence when there is a duty to speak or  when negligence as **shown by GE, defendant has arisen from a duty of care ; by all DEFENDANTS Foley & Manfield, Jennt at Fragoment Representation of Fact, as it is alleged here by TRIVEDI " be a support in a cause of action" equitable estoppel is    Facts misrepresented,    Facts that are concealed,    Hiding knowledge of** true facts,    Acting with fraudulent intent,    Acting from unjust inducement, Benefiting from detrimental reliance,

484.   Equitable estoppel is alternatively known as  estoppel in pais and is meant to protect a  party to a contract from being harmed by the  voluntary conduct of another party. It is immaterial to a finding of equitable  estoppel whether the voluntary conduct is  action, silence, acquiescence, or the  concealment of material facts.

485.   **The court may decide GE must uphold promises even though you don't believe you  have entered into a contract or legal  agreement.**

486.   Broken egg shells - broken promises. Estoppel itself is used to keep a party from promising one thing and then changing the  circumstances after a second party has  relied upon the promise.

487.   Some form of legal relationship  either exists or is anticipated between the

parties.

488.   **Trivedi sent an email in 2011 (EXHIBIT 21) to David Mehring, GE manager**

**that she needs 365 but GE , Jenny Schrager failed to file PERM** with department of labor

365 days before so in the event Trivedi got fired from GE; if GE would have followed it's

PROMISE made at the time of hiring---Trivedi would have joined another employer in 2013 by

getting H1 B visa extension. **estoppel could be used  (Exhibit 11, 20, 23 of plaintiff complaint**

**in this court)**

489.   The High Court decision in  Waltons Stores (Interstate) Ltd v Maher  (1988)

164 CLR 387, extended the  doctrine to representations about future

conduct.  This type of "promissory estoppel"  arises where the promise is given in  circumstances

that lead the other party to  assume the promise will be performed.

**[TRIVEDI relied on this promise at the time of Joining GE in 2011 that "GE in future will**

**file timely (before 365 days of H1 B expiry) PERM with DOL" Trivedi's Reliance by the on**

**the  promise or representation.**

**Trivedi relying on the promise have  suffered detriment; Trivedi in a worse position  for**

**having relied on the promise. Trivedi has shown that, in the circumstances, it is  unfair or**

**inequitable to allow GE and all defendants to do  so.**

**Remedies**

490.   Olex Focas Pty Ltd v Skodaexpert Co Ltd 1997 --The remedies available

**To Trivedi who has relied on a promise to their  detriment are equitable.** This  court has a

discretion in deciding what  to do and it will do what it can to relieve

the detriment suffered.  The court can force the party/GE to honor its  promise, as this is the only way to do  justice.

Trivedi shows that it would be  unconscionable for the promisor/GE  to go back  on their promise.

491.    Also GE's encouragemen to pursue permanent residency such as encouragement by the party that the  promise will actually be performed. Trivedi relied on it and didn't leave GE before she was fired ' relying that GE will fulfil it's permanent residency promise and even Trivedi leaves GE; she could transfer her H1 to another employer..But GE broke that promise.

492.    A representation can be made either by words  or conduct in equitable estoppel. A party  who has a duty to make a statement but fails  to make one is in effect making a statement by its silence. The party making the  representation intends for the other party  to rely upon such a representation. After the first party makes a representation  by word or deed, it may not contradict its  representation. The second party states that  the first party is estopped from changing  its position based upon the first party's  initial representation to the second party. The second party's claim of estoppel is a  defense against whatever claim the first  party is putting against the second party.

493.    The party who detrimentally relied upon the  promise made by another party may use  promissory estoppel to attempt to get relief  for whatever problem the reliance has  caused. The party requesting relief will  have to prove to the court that the first  party made a specific promise and that the  second party took an action or actions based  upon such a promise. In order to receive  relief, the result of the actions taken by  the second party must have resulted in some form of loss. Again, the actions taken and  the loss incurred must be factual in nature,

1   or there will be no relief granted to the requesting party.

2   494.   The representation that invokes equitable estoppel applies to representations

3   made by both words and/ or conduct. Although the representation must be clear and

4   unambiguous, a representation under equitable estoppel can also be inferred from silence when

5   there is a duty to speak or when negligence has arisen from a duty of care

6

7   Representation of Fact, is in a support in a cause of action by Trivedi as:

8   Facts misrepresented,

9   Facts that are concealed,

10  Hiding knowledge of true facts,

11
12  Acting with fraudulent intent,

13  Acting from unjust inducement,

14  Benefiting from detrimental reliance,

15  Injury to the complainant

16

17

18  # FIFTEENTH CAUSE OF ACTION

19
20  **BREACH OF FIDUCIARY, DUTY BREACH OF THE IMPLIED COVENANT OF**

21  **GOOD FAITH AND FAIR DEALING ,BREACH OF CONTRACT GOOD FAITH,**

22  **NEGLIGENCE (FOLEY & MANSFILED DEFENDANT)**

23
24  495.   Plaintiff realleges, reasserts, and incorporates by reference the facts and

25  allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts

26  currently unknown.

27  496.   A fiduciary duty is a duty or responsibility to act in the best interest of someone

28

else. The person who is duty bound to another person, in a fiduciary relationship, is called a fiduciary. Such relationship existed between Foley and Trivedi.

497.    The fiduciary (defendant Foley) had duties such as acting good faith, being transparent with pertinent information, and being loyal to the plaintiff.

498.    Facts here as Trivedi stated prove that the defendant Foley failed their duty by withholding pertinent information, failing in their responsibilities or misrepresenting the statement of fact/ laws related to advising Trivedi on challenging arbitration in court, SOX, Dodd Frank SEC whistleblower claims and other claims (nor added in GE letter any of such information)

499.    I have mentioned history related to Foley's failure in previous section named "facts related to allegation" ; so Trivedi realleges, reasserts, and incorporates by reference the facts and allegations stated in the previous paragraphs

500.    **Foley didn't mention in letter sent to GE (EXHIBIT 15)that Trivedi can legally challenge arbitration award; nor made strong argument about claims brought here in this complaint.**

501.    Though partner Seymour was employment, labor and arbitration specialist.

502.    Seven or so attorneys at Foley reviewed my file. None of them mentioned ever in LETTER SENT TO GE or LATER TO ME **"about going to district court for vacating arbitration award nor claims as mentioned in this complaint."**

503.    **Foley & Manfield partner IMMIGRATION ATTORNEY Michael Davis who provided no advise, input nor solution and ONLY thing did was to HIGHLIGHT PROBLEMS as GE WITHDREW H1B visa. (EXHIBIT 31)..I was so disturbed after I spoke with Michael Davis.**

504. David Haron referred me to another quitam law firm in Texas as shown here.

505. David Haron also asked me to call Patrick Burns in Washington DC; Patrick is director of Taxpayers Against **Fraud** https://taf.org **(EXHIBIT 30)**

506. At that time as David said that Maro E. Bush, Mercedes Varasteh Dordeski were partners with David Haron on Quitam side and David said they both were PREGNANT. )

507. In the end, partner Seymour happily forwarded/referred me to another employment attorney who was also quitam attorney as shown here in EXHIBIT 31.

508. Even though next day of receiving arbitration award I forwarded award (EXHIBIT 30) to David Haron,  Seymour Mansfield and Andrew Shedlock along with other. And they all read it.

509. In 2016 Trivedi sent Email to Foley & Mansfield that **law firm failed to mention motion to vacate arbitration award at any time which cause Trivedi** significant damages, financial loss. **EXHIBIT 33.**

510. the existence of a fiduciary relationship is not dependent solely upon a statute or contractual relation. See EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 20 (2005). Rather, the actual relationship between the parties determines the existence of a fiduciary duty (e.g., the second type of fiduciary relationship). Id.In Meinhard v. Salmon, 164 N.E. 545, 546 (N.Y. 1928), Justice Cardozo provided the "classic formulation" of a fiduciary duty:

511. New York Court of Appeals has described the duty as arising from a relationship "'between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" See EBC I, 5 N.Y.3d at 19, quoting Restatement (Second) of Torts § 874, Comment a

512. As shown here Foley & Mansfield acted in negligence, had a fiduciary duty,

breach this duty and duty breach of the implied covenant of good faith and fair dealing ,breach of contract good faith,. Trivedi suffered damages and financial loss due to that.

### IRREPARABLE INJURY, INJUCTION

Monetary damages at a later date ,time would not adequately compensate Trivedi for the injuries Trivedi sustained , are sustaining and will sustain as a result of the events described above and as stated above reasons; such compensation could not be measured.

?

### RELIEF

513.    I pray to court and Judge to take this complaint's allegations as a whole, Look at all these matter and allegations holistically, humanly and give JUSTICE– and give all the relief , to make plaintiff  whole.

514.    WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

515.    For monetary damages against Defendants, and each of them, in an amount sufficient to compensate Plaintiff for loss of income, loss of benefits, loss of use, for emotional distress, and for the injury and damage that Defendants have caused to Plaintiff's name and reputation;

516.    Front pay-all the salary she lost since she was illegally terminated.

517.    double back pay damages for all violations;

518.    Restore and Resolve immigration petition, benefits and her prior employment based visa that she lost and do that backdated including to the date 2010 at GE Boston.

519.    For punitive damages against Defendants in an amount sufficient to deter them

from engaging in similar misconduct toward other employees, and to make an example of them

to others who may otherwise be inclined to engage in such wrongful conduct;

520.    Monetary damages as per Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]

and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

521.    Monetary damages as per SOX, and other cause of actions mentioned above.

522.    Damages for emotional distress, economic loss, defamation, intentional infliction

of emotional distress.

523.    That Plaintiff be awarded an amount of money that will fairly compensate her for

the emotional and physical pain and suffering caused by Defendants' unlawful acts;

524.    Plaintiff's reasonable legal cost and fees,

525.    For injunctive relief, as the Court may deem proper.

526.    For such other, further relief, as the Court may deem proper.

527.    If court find proper; issue order for relief in PUBLIC INTEREST as well

Dated: August 30, 2019

*mjt*

_____,

Madhuri Trivedi-  Pro Se

ATTN: Women Who Code
44 Tehama St, 5th Floor, San Francisco, CA 94105
Fax: 708-778-4859 Phone: (650) 242-5135
Email: orangeinc@protonmail.com
Linkedin:- linkedin.com/in/trivedim

NOTE:-I request that court issue an ORDER asking GE(if GE doesn't file these on its own) to

submit to this court :ENITRE ARBITRATION RECORD including internal GE document

related to GE board of director INQUIRY. As GE choose private arbitrator mentioning that

public arbitrator Peter David from Wisconsin Workforce development who works for

government hence arbitration record will become public so GE doesn't want Peter Davis to be an

arbitrator and choose a PRIVATE ARBITRATOR... all records/communications. Arbitration

hearing transcript and Bill Barbiuax GE architect deposition, Madhuri Trivedi's deposition,

arbitration discovery documents—interrogation, request for evidence and entire arbitration

record including but not limited to Level I, II, and III proceedings prior to Level IV.

## **EXHIBITS**

1. A.  GE Medical Devices Vulnerability _ The Department of Homeland Security

    (DHS)_ICS-CERT ALERT DATED March 2018.

1. B.  Detail of alert with INSITE EXC (one of many alert)

    GE Medical Devices Vulnerability _ The Department of Homeland Security (DHS)_ICS-

    CERT ALERT –

2. My email to GE CEO, GE board of directors and others.

3. GE board of director inquiry

4. Arbitration complaint against GE

5. Letter from FDA,

6. OSHA complaint ( included Exhibit 3- Arbitration complaint against GE , Exhibit 5a-

    FDA letter, Exhibit 7 below; and other documents along with phone chat, emails.

7. OSHA complaint attachment 1 summary ,OSHA complaint attachment 2 InsiteEXC

    defects and other violations)

8. OSHA Response

9. Insite Production issue and Insite 400 critical defects powerpoint

10. Madhuri Trivedi Performance appraisal

11. GE immigration attorney and HR email that GE canceled my H1 B visa while mediation and arbitration is PENDING. And won't pursue any immigration I 140 paperwork.

12. Immigration attorney Jeff letter to GE healthcare global service CEO

13. Mediation statement by CROSS law firm

14. Despres, Schwartz and Geoghegan, Ltd. Attorney Mike Persson pre arbitration brief

15. Foley and Mansfield national law firm letter to GE

16. Bill Barbiux deposition highlights

17. Deceptive, with omission, concealing defects;

    "InsiteEXC "product manual, sales and marketing brochures for all kinds of devices

    ultrasound, surgery, Lunar and more;

    press releases, news coverage

18. GEHC CTO Mike Harsh email to all employees about GENDER speak in technology.

19. FDA director Pastel Marry letter-FCA

20. Approved LCA from DOL for GE/GE transportation H1B related

21. Trivedi's email communication with manager Dave and Nate  before joining GEHC about filing PERM 365 before H1 B expires

22. GE manager Dave Sallis in my performance review writing that it is GE's problem

23. Permanent residency introduction letter –immigration attorney

24. Arbitration subpoena to GEHC CEO, CTO, general manager, architect, manager, engineer and other

25. Email to lead designer at GE Gregg Stratton about being retaliated for cybersecurity, quality issues

26. 1000 page test document

27. David –GE manager perjury , engineers never used database performance tuning tool of $30 and Trivedi had to fight to get it.

28. GE job offer to Trivedi-conditioned to signing and following GE policies-"The Spirit and the Letter"

29. SIGNED GE job offer –acknowledgement-conditions of employment - GE policies-"The Spirit and the Letter",

30. InsiteEXC security- **"Enable memory protection to help mitigate online attacks" which was required to be unchecked in settings in order to establish/install remote connectivity.**

31. Foley &Mansfield law firm communication email.

32. Foley & Mansfield law firm's Immigration partner communication email

33. Email in 2016 from Trivedi to Foley & Mansfield that law firm failed to mention motion to vacate arbitration award at any time which cause Trivedi significant damages, financial loss

34. Linkedin profile of Sachin kendale

35. Linkedin profile of Prasad bayi