UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MADHURI TRIVEDI,
    Plaintiff,

v.                                      CIVIL ACTION NO. 19-11862-PBS

GENERAL ELECTRIC COMPANY, et al,
    Defendants.

REPORT AND RECOMMENDATION ON DEFENDANT,
FOLEY & MANSFIELD LAW FIRM'S MOTION TO DISMISS (#52).

KELLEY, U.S.M.J.

I. Introduction.

Plaintiff, Madhuri Trivedi, has filed a 240-page, fifteen-count amended complaint (#51) naming twenty-eight defendants. Multiple motions to dismiss have been filed, including one by defendant, Foley & Mansfield (F&M) law firm. (#52.) The F&M dispositive motion has been fully briefed (##53, 85, 100) and stands ready for resolution.

II. The Facts.

The facts are taken from the amended complaint,[1] the attached exhibits, and undisputed facts presented by F&M.[2] This recitation shall be limited to those facts relevant to the claims

---

[1] A pro se complaint is subject to "less stringent standards than formal pleadings drafted by lawyers[,]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and therefore is liberally construed. *Dew v. City of Bos.*, 405 F. Supp.3d 297, 300 (D. Mass. 2019) (citation omitted).

[2] *See Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 6 (1st Cir. 2018) (citation omitted); *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016); *C.W. Downer & Co. v. Bioriginal Food. & Sci. Cor.*, 771 F.3d 59, 65 (1st Cir. 2014) (citation omitted) (A court may also "consider uncontradicted facts proffered by the defendant.").

1

against F&M.

Trivedi was hired as a lead engineer at GE Healthcare in Waukesha, Wisconsin, in November 2011, and terminated from that position on May 31, 2013. (#51 ¶¶ 74, 107.) She resided at 1405 Rockridge Road, Apartment 351, in Waukesha. (#53-1¶ 12.)[3]

F&M, a law firm, is a limited liability partnership with a principal place of business in Minnesota and offices in California, Colorado, Florida, Illinois, Indiana, Louisiana, Michigan, Minnesota, Missouri, New York, Oregon, and Washington. *Id*. ¶ 5. F&M has never had an office, a mailing address, or a registered agent for service in Massachusetts. *Id*. ¶¶ 7, 8. Of the 173 attorneys employed by F&M, none of them, partners or associates, reside in Massachusetts, and none of them practice law on behalf of F&M in the Commonwealth. *Id*. ¶¶ 6, 9.[4] Over at least the past five years, F&M has had no clients based in Massachusetts. *Id*. ¶ 11.

After Trivedi's employment was terminated, she engaged the services of F&M to draft a letter to GE Healthcare to have her employment reinstated, to investigate a False Claims Act/qui tam case, and to provide legal advice regarding her immigration status. (#51 ¶ 36.) The False Claims Act/qui tam claim was referred to a law firm in Texas, and the immigration matter was handled by the law firm of Davis and Goldfarb, PLLC, in Minneapolis, Minnesota. *Id*. ¶¶ 596-99; #51-3 at 191-93. On July 16, 2014, attorneys Andrew R. Shedlock and Seymour J. Mansfield of

---

[3] Docket #53-1 is the Affidavit of Howard I. Wallach, Esq., managing partner of the Detroit office of F&M and risk management partner for the firm. (#53-1 ¶ 2.) Facts taken from this affidavit are uncontested.

[4] According to Attorney Wallach, "In the past ten years, only two current attorneys from F&M, while working at other firms, have been granted permission to practice *pro hac vice* in Massachusetts for unrelated matters, which did not require either of them to personal[ly] appear in Massachusetts. Only one associate attorney is licensed to practice in Massachusetts, but practices in Oregon." (#53-1 ¶ 10.)

the Minneapolis, Minnesota, F&M office send a letter to GE Healthcare in Wauwatosa, Wisconsin, claiming that Trivedi had been "wrongfully terminated" and requesting her reinstatement to the position of lead software engineer. (#51 ¶ 88; #51-3 at 93-99.) The letter stated Trivedi's offer to "waive any and all remaining legal claims against GE Healthcare, in return for clearing up her immigration status and securing gainful employment elsewhere[,]" but did not discuss potential claims under either the Dodd-Frank Act or the Sarbanes Oxley Act. (#51 ¶ 216; #51-3 at 99.) The letter also did not reference any right Trivedi might have to challenge the then yet-to-be-issued arbitration decision. (#51¶ 219; #51-3 at 93-99.) When the letter to GE Healthcare seeking Trivedi's reinstatement proved unsuccessful, F&M closed Trivedi's employment case file. (#51 ¶ 88; #51-3 at 188.)

Trivedi alleges that, when the arbitration decision issued in August 2014, she sent it to F&M, but F&M provided her no advice or guidance on the fact that she could file suit in court to challenge that decision. (#51 ¶¶ 219, 600-01.)[5] In response to an August 14, 2014 email from Trivedi in which she stated she wanted to speak with Attorney Mansfield "about arbitration-employment," on August 18, 2014, and again on August 19, 2014, Attorney Shedlock of F&M responded that "[t]he employment matter with our firm is closed." (#51-3 at 188, 190.)

Almost two years later, on August 1, 2016, Trivedi sent an email to F&M, which read:

> Hello attorneys, can I get my $1000 back because the day I got [the] arbitration award, I email[ed] it to you and no one from your firm including employment attorneys mentioned/advised that there was a provision for [a] motion to vacate arbitration award . . . [.]

---

[5] Trivedi contends that she retained the Cross Law Firm to represent her at the arbitration, and that firm submitted a mediation statement on her behalf. (#51 ¶ 211; #51-12.) Plaintiff alleges that she "did [the] mediation alone," (#51 ¶ 213); the decision and award by the arbitrator reflect that Trivedi was "self-represented" at the arbitration hearing. (#74-2 at 2.) In any event, there is no claim asserted that F&M was negligent regarding the arbitration itself, only in failing to advise Trivedi that she could appeal and challenge the arbitrator's decision in court.

3

*Id.* at 195. The next day in the same email chain, Trivedi wrote:

> The letter they [F&M attorneys] wrote is mostly what I drafted and communicated with them . . [.] Including immigration statutes they put [were] provided by me. I [was] told facts [were] needed and was super prompt in providing documents . . . [.] The day I received [the] arbitrator['s] award, I emailed it to Foley and Mansfield. It is [the] moral, ethical and professional responsibility of attorneys to a[t] least mention an option for [a] motion to vacate [the] arbitrator['s] award (they forwarded to [the qui tam] attorney but [a] motion to vacate was a legal option). They were retained for settlement and when not settled [it w]as a professional duty to mention this motion to vacate option . . . we had no communication issues then, now you are mentioning this because I asked [for a] refund . . [. .] And Andrew was talking [about a] long time to research . . . [.] It is kind of malpractice . . . [.]
>
> . . . .
>
> Motion to vacate [the] arbitrator['s] award would have changed my employment claim situation . . [. .] I should have done research on my own but after doing [the] arbitration myself, I thought I had attorneys from [F]oley and Mansfield and I had a respect for those attorneys . . [. .] So I trusted . . [. .] My MIT professor said that on your side instead of trusting those attorney[s], Madhuri should have done research . . . [] in the end it is my employment claim and I have consequences . . [.] but when you have professional[s] you don't think . . . [.]

*Id.* at 193-94.

F&M is named in Count XIV, a claim for promissory estoppel and equitable estoppel. (#51 ¶ 570.) Promissory estoppel is defined in the allegations, i.e., "a cause of action that might be asserted against a party for the first party's detrimental reliance upon a promise from the second party," as is equitable estoppel, i.e., an action "meant to protect a party to a contract from being harmed by the voluntary conduct of another party." *Id.* ¶¶ 572, 576. F&M is also named in Count XV, a claim for breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, breach of contract good faith (sic), and negligence. *Id.* ¶ 588. The gist of this claim is that F&M breached its fiduciary duty and was negligent in failing to advise Trivedi that she could challenge the arbitration decision in court, or that she could bring the claims that she alleges in the amended complaint. *Id.* ¶¶ 590, 592, 594, 601. In short, Trivedi alleges malpractice against F&M.

III. <u>Legal Standard</u>.

When faced with a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a plaintiff bears the burden of proving that the defendant is subject to the jurisdiction of the court. *See Knox v. MetalForming, Inc*., 914 F.3d 685, 690 (1st Cir. 2019); *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 6 (1st Cir. 2018); *A Corp. v. All Am. Plumbing, Inc*., 812 F.3d 54, 58 (1st Cir. 2016). When no evidentiary hearing is held, a prima facie standard applies. *See A Corp.*, 812 F.3d at 58 (citations omitted). To satisfy that standard, "the plaintiff['s] burden is to proffer evidence sufficient to support findings of all facts essential to personal jurisdiction without relying on unsupported allegations." *Knox*, 914 F.3d at 690 (internal citation and quotation marks omitted). The plaintiff "must put forward evidence of specific facts to demonstrate that jurisdiction exists." *A Corp.*, 812 F.3d at 58 (internal citations and quotation marks omitted); *see also Phillips v. Prairie Eye Ctr*., 530 F.3d 22, 26 (1st Cir. 2008) (internal citation and quotation marks omitted) ("In order to make a prima facie showing of jurisdiction, the plaintiff ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts." ).

IV. <u>Discussion</u>.

The Supreme Court has "recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty*., 137 S. Ct. 1773, 1779-80 (2017) (citation omitted). The First Circuit has distilled the jurisdictional inquiry:

> In order to subject a defendant who is not present in the forum state to a personal judgment, the Due Process Clause requires that the defendant have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Personal jurisdiction over a defendant can come in the form of general or specific jurisdiction. For general jurisdiction the defendant must have continuous and systematic contacts

> with the forum state, but the particular cause of action may be unrelated to those contacts. General jurisdiction broadly subjects the defendant to suit in the forum state's courts in respect to all matters, regardless of whether the matter before the court has anything to do with the defendant's contacts with the state. In this way general jurisdiction is different than specific jurisdiction because specific jurisdiction depends on an affiliation between the forum and the underlying controversy. . . . Courts may assert specific jurisdiction over a defendant when it is permissible under both the forum state's long-arm statute and the Due Process Clause of the United States Constitution.

*Bluetarp Fin., Inc. v. Matrix Const. Co.*, 709 F.3d 72, 79 (1st Cir. 2013) (internal citations, quotation marks, and alterations omitted); *see also Daimler AG v. Bauman*, 571 U.S. 117, 125-26 (2014). Explaining general jurisdiction, the Supreme Court has held that "a court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG,* 571 U.S. at 122 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)).

Trivedi has proffered no facts to establish any contact or connection between F&M and the Commonwealth. That F&M has an office in New York, and, according to Trivedi, New York and Massachusetts "are considered sister states" and "are very close in terms of distance and access," (#85 at 10), simply is not enough to demonstrate the extensive relationship required to support general jurisdiction. Neither is it sufficient that F&M claims to be a "national law firm" with a "national reach" in the absence of facts showing that the firm has conducted any business in Massachusetts. *Id.* at 11.; *see Plixer Int'l,* 905 F.3d at 8 ("a website operator does not necessarily purposefully avail itself of the benefits and protections of every state in which its website is accessible"); *A Corp.*, 812 F.3d at 61.

As set forth in the Wallach affidavit, F&M has its principal place of business in Minnesota together with a number of offices in states throughout the country, but has never had an office in

Massachusetts. F&M has no mailing address or a registered agent for service in the Commonwealth. None of the attorneys employed by F&M reside, or practice law on behalf of F&M, in Massachusetts. F&M has had no clients based in Massachusetts for at least the past five years. In short, the facts establish there is no general jurisdiction in this case.[6]

For a court to exercise specific jurisdiction, "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers*, 137 S. Ct. at 1780 (internal quotation marks and citation omitted); *Hannon v. Beard*, 524 F.3d 275, 279 (1st Cir. 2008) ("Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities[.]"). "[A] plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." *Knox*, 914 F.3d at 690 (internal citations and quotation marks omitted). The Massachusetts long arm statute provides, in relevant part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in the commonwealth . . . . ; (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this commonwealth . . . .

---

[6] Trivedi's reliance on the supplemental jurisdiction statute is misplaced because the statute applies to jurisdiction over claims, not personal jurisdiction. *See* 28 U.S.C. § 1367(a) (emphasis added) ("[I]n any civil action of which the district courts have original jurisdiction, *the district courts shall have supplemental jurisdiction over all other claims* that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). So, too, an argument premised on nationwide personal jurisdiction is unavailing given that Trivedi has alleged no federal claim against F&M, and no federal statute provides for nationwide service for a state tort claim. *See Ng v. Prudential Ins. Co. of Am.*, 159 F. Supp.3d 273, 275-76 (D. Mass. 2016).

Mass. Gen. L. c. 223A, § 3(a), (c) & (d). The long-arm statute, which is used in federal court to obtain personal jurisdiction, "extends to the fullest extent permitted by the Due Process Clause of the Constitution." *K.O. v. Sessions*, No. CV 18-40149-TSH, 2020 WL 533461, at *3 (D. Mass. Feb. 3, 2020).

The court will first address the constitutional analysis. *See C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014). As explained by the First Circuit,

> courts consider (1) whether the claim "directly arise[s] out of, or relate[s] to, the defendant's forum state activities;" (2) whether the defendant's in-state contacts "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable;" and (3) whether the exercise of jurisdiction is reasonable.

*Id.* (quoting *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 60-61 (2002)); *A Corp.*, 812 F.3d at 59; *Bluetarp Fin.*, 709 F.3d at 80 (citation omitted) ("[s]pecific jurisdiction analysis under the Due Process Clause has three distinct components: relatedness, purposeful availment, and reasonableness . . . [and] [a]n affirmative finding on each of these elements is needed to support a specific jurisdiction finding").

The specific jurisdiction inquiry begins and ends with the first element, relatedness, which "serves the important function of focusing the court's attention on the nexus between a plaintiff's claim and the defendant's contacts with the forum." *Cossart v. United Excel Corp.*, 804 F.3d 13, 20 (1st Cir. 2015) (citation omitted); *Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd.*, 298 F.3d 1, 7 (1st Cir. 2002) (internal citations and quotation marks omitted) (relatedness is shown where there is "a sufficient causal nexus between [the defendant's] contacts with [the forum] and [plaintiff's] causes of action"). Plaintiff's claim against F&M is for legal malpractice. Trivedi engaged the services of the Minneapolis office of F&M, a Minnesota firm, to address a claim arising out her employment in Wisconsin. Because the facts establish that F&M has had only de minimis,

8

unrelated contact with the Commonwealth, it follows that there can be no demonstrable connection between the legal services performed by F&M for Trivedi, and F&M's contacts with Massachusetts. "When there is no such connection, specific jurisdiction is lacking . . . ." *Bristol-Myers*, 137 S. Ct. at 1781. Plaintiff has failed to establish that the court has personal jurisdiction over F&M.

## V. Recommendation.

For the reasons stated, I RECOMMEND that Defendant Foley & Mansfield Law Firm's Motion to Dismiss (#52) be GRANTED.

## VI. Review by the District Judge.

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within fourteen days of service of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Federal Rules Civil Procedure, shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

April 28, 2020                                             /s/ M. Page Kelley
                                                                                    M. Page Kelley
                                                                                    United States Magistrate Judge