UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MADHURI TRIVEDI,
      Plaintiff,

      v.                                   CIVIL ACTION NO. 19-11862-PBS

GENERAL ELECTRIC COMPANY, et al.,
      Defendants.

REPORT AND RECOMMENDATION ON
DEFENDANTS FRAGOMEN, DEL REY, BERNSEN & LOEWY, LLP AND
JENNY SCHRAGER'S MOTION TO DISMISS THE AMENDED COMPLAINT (#68).

KELLEY, U.S.M.J.

## I. Introduction.

Plaintiff, Madhuri Trivedi, has filed a 240-page, fifteen-count amended complaint (#51) naming twenty-eight defendants. Multiple motions to dismiss have been filed, including one by defendants Fragomen, Del Rey, Bernsen & Loewy, LLP (Fragomen), a law firm, and Jenny Schrager, a partner in that firm (collectively, the Fragomen defendants). (#68.) The Fragomen defendants' dispositive motion has been fully briefed (##69, 70, 105, 106, 110) and stands ready for resolution.

## II. Facts.

The relevant facts are taken from the amended complaint and the attached exhibits unless otherwise indicated. Trivedi was hired as a lead engineer at GE Healthcare in Waukesha, Wisconsin, in November 2011, at which time GE Healthcare agreed to sponsor her for a green card and permanent residency status in the United States. (#51 ¶¶ 107, 112.) Fragomen is a law firm located in New York City, New York; Schrager is a partner at Fragomen. (#51 ¶¶ 33, 34.)

1

The Fragomen defendants were hired by GE to support Trivedi in applying for permanent resident status. (#51-3 at 150-58.)

Trivedi's job responsibilities as a lead software engineer included developing and testing software. (#51 ¶ 122; #70-1 at 9.)[1]  Plaintiff's initial project was working with a team on the Insite ExC program. (#51 ¶¶ 122, 153, 159; #70-1 at 9.) As her work got underway, Trivedi began to voice security and quality concerns about the product. (#51 ¶¶ 5, 153, 159.) She also started to have interpersonal difficulties with her colleagues, conflicts which persisted and escalated to the point that in April 2012 plaintiff was moved to a new team. (#51 ¶ 122; #70-1 at 12, 15, 43.)

Plaintiff fared no better on the second team, as co-workers raised complaints concerning strain in the team dynamics and her inability to follow directions. (#70-1 at 15-16, 43.) In her mid-year review in September 2012, Trivedi was told that her soft skills were deficient and her

---

[1] The Decision and Award by the arbitrator has been submitted by defendants as an exhibit to the Declaration of Edward V. Colbert, III. (##70, 70-1.) The First Circuit has repeatedly cautioned that "[o]rdinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Graf v. Hospitality Mut. Ins. Co.*, 754 F.3d 74, 76 (1st Cir. 2014) (internal citation and quotation marks omitted). That said, "there is a narrow swatch of materials outside the complaint itself that may be considered on a motion to dismiss for failure to state a claim." *Ríos-Campbell v. U.S. Dept. of Commerce*, 927 F.3d 21, 25 n. 2 (1st Cir. 2019). "When . . . a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (internal citations, quotation marks and alterations omitted), *cert. denied*, 555 U.S. 995 (2008); *Yacubian v. U.S.*, 750 F.3d 100, 102 (1st Cir. 2014); *United Auto., Aerospace, Agr. Implement Workers of America Intern. Union v. Fortuno*, 633 F.3d 37, 39 (1st Cir. 2011). The exhibit, #70-1, falls within the parameters of this exception and may properly be considered. *See*, e.g., *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (citations omitted) ("[C]ourts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint.").

difficulties in getting along with her team members were causing performance problems. (#51-3 at 66-71; #70-1 at 43.)

Trivedi's interpersonal difficulties continued to mount; as part of her 2013 annual evaluation she was placed on a Performance Improvement Plan (PIP). (#51-3 at 95; #70-1 at 18-20, 44.) Trivedi disputed her performance evaluation, asserting, among other things, that actions were taken against her for raising a "serious security risk." (#51-3 at 70.) In response to plaintiff's comments regarding her annual evaluation, Diane Smith, an HR manager, was tasked with conducting an internal investigation of the retaliation claim. (#70-1 at 23-24.) After completing her investigation at the end of May 2013, Smith found no evidence to support Trivedi's retaliation claim and concluded that the PIP was valid. *Id.* at 25. Following interviews with plaintiff, Smith found that plaintiff lacked clear thinking and the ability to focus on an issue. *Id.* at 26. Smith also determined that Trivedi was not improving in teamwork or communication skills. *Id.* at 27.

Plaintiff never acknowledged that she had deficiencies in soft skills, and she never completed the PIP. *Id.* at 20. Due to her lack of improvement under the PIP, as well as her pre-PIP issues, Trivedi's employment was terminated effective May 31, 2013. (#51 ¶ 125; #70-1 at 20-21.) When plaintiff was terminated from GE Healthcare, the Fragomen defendants stopped working with Trivedi on the immigration process because GE was no longer sponsoring her. (#51 ¶¶ 74, 175; #51-3 at 72.)

On or about November 9, 2013, Trivedi submitted a complaint against GE Healthcare to the American Arbitration Association, AAA Case No. 51-20-1300-1260. (#51 ¶ 197; #51-3 at 26-31.)  Her claims included discrimination based on national origin and sex, hostile and offensive work environment, disparate treatment, and retaliation for "whistleblowing" about product security and design issues. (#51-3 at 26.) A two-day arbitration hearing was held on May 8-9,

2014, during which Trivedi testified and called eight witnesses. (#70-1 at 2.) The arbitrator issued

his 54-page decision on August 11, 2014, finding in favor of GE Healthcare. (#70-1.)

In denying plaintiff's claim in its entirety, the arbitrator found that

the record suggests that whatever treatment [Trivedi] received from management and from her colleagues, and whatever action the Company took with respect to the [Trivedi's] employment, was prompted by her own conduct and poor soft skills, and not by [Trivedi's] gender or national origin. There is not a shred of evidence that [Trivedi's] gender or origin played any role whatsoever.

*Id.* at 51. Ruling on the assertion that GE Healthcare retaliated against her "for opposing an act or

practice that is unlawful under HIPAA, that the Company violated the FDA's whistleblower

provision, and that the Company unlawfully retaliated against [Trivedi] for making internal

complaints of discrimination and/or harassment[,]" the arbitrator determined:

First, [Trivedi's] HIPAA-related allegations arise from an inaccurate understanding of that statute. The Company correctly has argued that there is no provision within HIPAA for a private cause of action. Second, the evidence in the record relating to [Trivedi's] internal complaints about the Company's programs or software establishes that the Company actually wants and expects its technical employees to make such complaints. Essentially, technical employees are responsible for making just this type of complaint, and this is a necessary part of the process of developing the Company's products. Third, the evidence demonstrates that none of the actions that the Company took with respect to [Trivedi's] employment were prompted by the fact that she raised technical and/or safety concerns about the Company's products and programs.

*Id.* at 52.

There are allegations against the Fragomen defendants randomly dispersed throughout the

amended complaint, all seeming to relate to immigration matters. The allegations include the

following:

- Schrager processed plaintiff's H-1B visa when she joined GE Healthcare as a full-time employee in Waukesha, WI, and began helping Trivedi apply for permanent resident status. (#51 ¶¶ 55, 175; #51-3 at 150-58.)

- GE defendants including Fragomen and Schrager prevented Trivedi from asserting her claims of wrongful conduct by withdrawing plaintiff's H-1B visa and conspiring to make her unable to extend her H-1B visa because GE and Schrager knowingly did not file a PERM [Program Electronic Review Management] labor certificate 365 days before the expiration of her H-1B visa. (#51 ¶ 103.)

- Schrager "should be in jail along with GE people." (#51 ¶ 112.)

- Schrager "has shown [] cold, pre[-]planned, heartless, illegal[,] unethical actions [and] similar intent to be part of GE's scheme of retaliation."  (#51 ¶ 175.)

- In an email dated July 3, 2013, from Schrager to Trivedi, Schrager explained that Fragomen was GE's immigration counsel and absent authorization from GE's internal counsel they could not postpone withdrawal of the H-1B petition; unless GE Healthcare could guarantee a permanent offer of employment available for Trivedi, the green card application would not move forward (i.e., "GE Healthcare [would] NOT file the I-140 petition") and Schrager/Fragomen were not authorized to provide plaintiff with further immigration guidance because she was no longer a GE employee. (#51 ¶¶ 175, 194.)

- In Exhibit 11, an email chain dated July 2, 2013, Schrager wrote to plaintiff as follows:

  > Madhuri –
  >
  > We need to make this clear. Unless we receive authorization from GE's internal legal counsel, we cannot postpone withdrawal of the H-1B petition. Second, unless GE Healthcare can guarantee that they have a permanent offer of employment available to you (in the same position/location as listed on the PERM application), the green card application will not move forward (i.e. GE Healthcare will NOT file the I-140 petition).

***** 

      Please note that we are GE's immigration counsel at this time.

(#51-3 at 72.)

- Schrager intentionally and knowingly did not file plaintiff's PERM certificate 365 days before her H-1B visa expired, and, if she had, Trivedi could have had her H-1B visa extended at some other employer when she got fired by GE in 2013. (#51 ¶ 176.)

- Plaintiff had a full time job offer in June 2013 with Life Technology/Thermo Fischer Scientific, but the H-1B visa was a sticking point as there was no time left to extend her H-1B visa and for another employer to file a brand new PERM labor certificate with the Department of Labor as a result of a conspiracy including Fragomen and Schrager. (#51 ¶¶ 177, 193.)

- Plaintiff was placed in a terrible immigration position in retaliation for raising claims of fraud against GE Healthcare. (#51 ¶ 376.)

- As an employer, GE owed a fiduciary duty to Trivedi, and "GE defendants, Fragomen defendants BREACHED such fiduciary duty." (#51 ¶ 532.)

- Plaintiff "was one month shy of getting her green card [] processed as a person of exceptional ability/advanced degree (EB2) at GE and they got rid of " her in retaliation and to remove her as a witness against the company. (#51 at 167[2] ¶¶ 16-19.)

---

[2] Following ¶ 376 on page 159 of the amended complaint, plaintiff begins to number paragraphs beginning with ¶ 1 through ¶ 43  again on pages 161-167, then reverts back to ¶ 377 at the bottom of page 167.

- Because of her immigration status and the inability to extend her H-1B visa, Trivedi alleges she was denied due process in the arbitration that was held in May 2014. (#51 ¶ 298.)

On July 2, 2013, plaintiff wrote in an email, "I just need to get back to job mainly for immigrations/logistics issues. Once my H1 extension happens and green card is portable. . . . So please consider me getting back to job as a short term thing[] till immigration is worked out." (#51-3 at 74.) By letter dated August 9, 2013, an attorney representing Trivedi, in summarizing her post-termination issues, wrote:

> Inducing Ms. Trivedi to work for GE by promising that GE would make good faith efforts to pursue permanent residency for her, only to fall far short on this promise. What is particularly frustrating is the fact that GE did get past the most difficult part of the green card process – the US Department of Labor did certify a Labor Certificate  Application for her – but this certification will become "stale" and useless if GE does not file a Form I-140 Immigrant Visa Petition with USCIS by November 2013. Moreover, if GE does not immediately file [an] Immigrant Visa Petition, Ms. Trivedi will be unable to extend her H-1B status in the US with any employer.

#51-3 at 79. On July 14, 2016, another attorney wrote to GE Healthcare on Trivedi's behalf:

> In light of the foregoing injustices, we request Ms. Trivedi be reinstated to her previous position, at [the] very least, on a temporary basis. We request the GE Healthcare reinstate Ms. Trivedi for a period of at least 12 months with the understanding that during this time, Ms. Trivedi and GE Healthcare will work diligently to process (or allow for the completion of) her Green Card. Once her Green Card process is such or her immigration status is such that Ms. Trivedi can change employer, Ms. Trivedi will immediately seek adequate employment with another company. If reinstatement to her previous position is untenable for whatever reason, we are confident that Ms. Trivedi can be placed in another position at GE Healthcare which will also allow her to process the Green Card or work on another immigration solution. Ms. Trivedi will waive any and all remaining legal claims against GE Healthcare, in return for clearing up her immigration status and securing gainful employment elsewhere.

#51-3 at 99.  Additional allegations will be addressed in the discussion of the claims.

Plaintiff filed the complaint in this case on August 30, 2019. (#1.)[3]

### III. Legal Standard.

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim.  In deciding such a motion, a court must "treat all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Fin. Oversight and Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)).  When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *A.G. ex rel. Maddox v. Elsevier, Inc*., 732 F.3d 77, 80 (1st Cir. 2013) (citing *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)). A pro se complaint is subject to "less stringent standards than formal pleadings drafted by lawyers[,]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and therefore is liberally construed.

---

[3] In addition to filing complaints with federal agencies (#51 ¶¶ 83, 100, 466), plaintiff has filed two previous lawsuits. In the first, *Trivedi v. Department of Homeland Security*, No. 16-CV-1122, 2016 WL 10651086, at *1 (N.D. Cal. 2016), Trivedi alleged she had been wrongfully denied an I-140 immigration petition, among other claims. The case was dismissed; on appeal, the Ninth Circuit wrote:

> Dismissal of Trivedi's claims under (1) 8 U.S.C. § 1324b (unfair immigration-related employment practices), (2) the Health Insurance Portability & Accountability Act, (3) the Patient Safety and Quality Improvement Act, 42 U.S.C. § 299b–22, (4) the Civil Rights Act of 1991, 42 U.S.C. § 2000e–3a, (5) 18 U.S.C. §§ 1512, 1513 & 1621, and (6) for intentional infliction of emotional distress, was proper because Trivedi failed to allege facts sufficient to state plausible claims for relief.

*Trivedi v. U.S. Dep't of Homeland Sec*., 711 F. App'x 827 (9th Cir. 2017). The Supreme Court denied the petition for certiorari. *Trivedi v. Dep't of Homeland Sec.*, 138 S. Ct. 1293 (2018).

In May 2019 Trivedi filed suit against numerous GE defendants in the District of Columbia. *See Trivedi v. General Electric Co*., No. 19-CV-01479 (D.D.C.). When her amended complaint was challenged by a motion to dismiss, Trivedi voluntarily dismissed that case and filed the instant lawsuit.

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Dew v. City of Bos.*, 405 F. Supp.3d 297, 300 (D. Mass. 2019) (citation omitted).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

"Where, as here, the plaintiff is proceeding pro se, the court must construe his allegations liberally." *Rick v. Profit Mgmt. Assocs.*, 241 F. Supp.3d 215, 218 (D. Mass. 2017) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). "However . . . , even a pro se plaintiff is required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Strahan v. AT&T Mobility LLC*, 270 F. Supp.3d 535, 540 (D. Mass. 2017) (internal citations and quotation marks omitted).

IV. <u>Discussion</u>.

Apart from Count XV of the amended complaint, plaintiff does not clearly identify what claims are alleged against which defendants.[4] To the extent the amended complaint could be construed to allege a legal malpractice against the Fragomen defendants for their handling of her immigration matters, that claim must fail since it was filed outside the three-year statute of limitations. *See* Mass. Gen. L. c. 260, § 4 ("Actions of contract or tort for malpractice, error or mistake against attorneys . . . shall be commenced only within three years next after the cause of action accrues."). The claim would also be time-barred under Wisconsin law. *See* Wis. Stat. § 893.53 ("An action to recover damages for an injury to the character or rights of another, not arising on contract, shall be commenced within 3 years after the cause of action accrues, except where a different period is expressly prescribed, or be barred."). Any potential legal malpractice claim would have accrued no later than the date of plaintiff's termination, May 31, 2013. The complaint in this case was not filed until August 30, 2019, more than six years later.

Because any legal malpractice claim fails outside the applicable limitations period, it should be dismissed. *Abdallah v. Bain Capital LLC*, 752 F.3d 114, 119 (1st Cir. 2014) (internal quotation marks and citations omitted) ("When the allegations in a complaint show that the passage of time between the events giving rise to the claim and the commencement of the action exceeds

---

[4] For example, in her claim for violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5, plaintiff "realleges, reasserts, and incorporates by reference the facts and allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown." (#51 ¶ 315.) (quoted as written). The following seventy-five paragraphs comprising Count I are a free-flowing mashup of case citations, facts relating to a litany of complaints ranging from GE promoting an individual who was not competent, to GE using "STONEAGED cybersecurity components", alleged misleading statements by GE, the text of her letter to Chief Justice Roberts, facts about her start-up company and her health concerns, and an assertion about "equitable estoppel as due to my immigrations hardships attorneys where not able to file Quitam . . . And immigration that GE screwed prevented me from fighting for clause of action mentioned here." (#51 ¶ 377.) (quoted as written).

the applicable limitations period, a district court should grant a 12(b)(6) motion by the defense if the complaint (and any other properly considered documents) fails to sketch a factual predicate that would provide a basis for tolling the statute of limitations."). Moreover, the claim cannot be saved under a theory of equitable tolling. "[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in h[er] way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citation omitted). Neither pro se status nor lack of legal knowledge constitutes an "extraordinary circumstance." *Correia v. Mass. Bay Commuter R.R.*, No. CIV.A. 12-12048-DJC, 2013 WL 6383107, at *3 (D. Mass. Dec. 4, 2013), *aff'd*, No. 14-1020, 2014 WL 7506802 (1st Cir. Sept. 15, 2014) (quoting *Stonier v. U.S.*, No. 03–10146–JLT, 2011 WL 1877670, at *4 (D. Mass. Apr.7, 2011) ("[P]ro se status does not provide an independent basis for the Court to toll the statute of limitations. "'[I]t is well established that ignorance of the law, even for a[ ] ... pro se [plaintiff], generally does not excuse prompt filing.'")); *LaBadie v. Cruz*, 230 F. Supp.3d 38, 45 (D. Mass. 2017).

Trivedi has alleged nothing to suggest any "extraordinary circumstance" impeded her ability to file a malpractice claim. Plaintiff was fully aware of her immigration status as reflected in her July 2, 2013 email, and, if fact, she engaged an attorney who drafted a letter to GE on her behalf in August 2013 addressing her immigration issues. (#51-3 at 74, 79.)

Because it is unclear which of the fifteen causes of action[5] in the amended complaint purport to allege claims against the Fragomen defendants, they are all addressed below.[6]

---

[5] The claims in each count are as set out in the Table of Contents for the First Amended Complaint. (#51-1.)

[6] Count XV, a claim alleging breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, breach of contract good faith, and negligence, named only the Foley & Mansfield law firm as a defendant. That claim has been dismissed. (#126.)

A. <u>Count I – violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b),</u>
<u>and 17 C.F.R. § 240.10b-5.</u>

Trivedi does not allege in her amended complaint that she was either a purchaser or a seller of GE securities. This is fatal to her claim. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730-31, 754-55 (1975); *Sinovac Biotech Ltd. v. 1Globe Capital LLC*, No. CV 18-10421-NMG, 2018 WL 5017918, at *4 (D. Mass. Oct. 15, 2018) ("The Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), made it clear that to have standing to bring an action under Section 10(b) and Rule 10b-5, the private party must have been an actual purchaser or seller of securities."). This federal securities fraud claim should be dismissed because Trivedi does not have standing to bring it.

Even assuming plaintiff had standing, she has not met the pleading requirements to state a Section 10(b) or Rule 10b-5 claim.  "Plaintiffs alleging violations of Section 10(b) must plead (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *In re Biogen Inc. Sec. Litig.*, 857 F.3d 34, 41 (1st Cir. 2017); *see also Mahoney v. Found. Med., Inc.*, 342 F. Supp.3d 206, 212-13 (D. Mass. 2018). Throughout the amended complaint, Trivedi professes to have personal knowledge of material misrepresentations and omissions of facts allegedly made by GE regarding cybersecurity issues. Being privy to this purported misinformation, plaintiff cannot claim to have relied on it to her detriment. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (internal quotation marks and citation omitted) ("The reliance element ensures that there is a proper connection between a defendant's misrepresentation and a plaintiff's injury."); *Basic Inc. v. Levinson*, 485 U.S. 224, 249 (1988) ("[A]  plaintiff who believed that [a defendant's] statements

were false . . . could not be said to have relied on the integrity of a price he knew had been manipulated.").[7]

      B.  <u>Count II – whistleblower retaliation under the Dodd-Frank Act, 15 U.S.C. § 78u-6(h), SEC Rule 17, and 17 C.F.R. § 240.21F-2.</u>

The Supreme Court has determined that:

> Dodd–Frank's text and purpose leave no doubt that the term "whistleblower" in § 78u–6(h) carries the meaning set forth in the section's definitional provision. The disposition of this case is therefore evident: [Plaintiff] did not provide information 'to the Commission' before his termination, § 78u–6(a)(6), so he did not qualify as a 'whistleblower' at the time of the alleged retaliation. He is therefore ineligible to seek relief under § 78u–6(h).

*Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 778 (2018).[8] Although Trivedi asserts that she voiced concerns internally about cybersecurity and Insite ExC while working at GE Healthcare, *see* #51 ¶ 385, there is no allegation in the amended complaint that plaintiff reported any information to the SEC while she was employed. Rather, the only communication between Trivedi

---

[7] Trivedi does not allege facts sufficient to support standing to bring a claim, or even state a claim, under SEC Rule 14a-9(a), as this case has nothing to do with proxies. *See Royal Bus. Grp., Inc. v. Realist, Inc.*, 933 F.2d 1056, 1060-61 (1st Cir. 1991); *Vardakas v. Am. DG Energy Inc.*, No. 17-CV-10247-LTS, 2018 WL 1141360, at *2 (D. Mass. Mar. 2, 2018) (internal quotation marks and citation omitted) ("To prevail on a claim under SEC Rule 14a-9, a plaintiff must show (1) the proxy statement contained a material misstatement or omission, which (2) caused plaintiff's injury, and (3) that the proxy solicitation . . . was an essential link in the accomplishment of the transaction."); *Giarraputo v. UNUMProvident Corp.*, No. CIV. 99-301-PC, 2000 WL 1701294, at *11 (D. Me. Nov. 8, 2000) ("Rule 14a–9 make[s] it unlawful to solicit proxies by means of a materially false or misleading proxy statement.").

[8] Plaintiff has no claim under 17 C.F.R. § 240.21F-2 because the rule incorporates no broader definition of "whistleblower" than that set out in the statute. *See Digital Realty Tr.*, 138 S. Ct. at 781-82 (internal quotation marks and citations omitted) ("[W]e find the statute's definition of "whistleblower" clear and conclusive. Because Congress has directly spoken to the precise question at issue, we do not accord deference to the contrary view advanced by the SEC in Rule 21F–2. The statute's unambiguous whistleblower definition, in short, precludes the Commission from more expansively interpreting that term.").

and the SEC referenced in the amended complaint is a letter dated February 13, 2019, nearly six

years after she was terminated. *Id.* ¶ 100.

Because there are no facts alleged to show that Trivedi was a whistleblower within the

meaning of the statute, she has no standing to bring a Dodd-Frank Act whistleblower retaliation

claim. Count II should be dismissed.

### C. Count III – violation of whistleblower protections under Sarbanes-Oxley Act, 8 U.S.C. § 1514A, *et seq.*

To state an actionable claim under the whistleblower protection provisions of the Sarbanes-

Oxley Act of 2002, it is mandatory that a plaintiff first file of a complaint with the Department of

Labor through OSHA. *Newman v. Lehman Bros. Holdings Inc.*, 901 F.3d 19, 25 (1st Cir. 2018).

The administrative complaint must be filed within 180 days of a plaintiff's termination. *Digital*

*Realty Tr.*, 138 S. Ct. at 776 (citing 18 U.S.C. § 1514A(b)(2)(D)); *Newman,* 901 F.3d at 25 n.5.

Failure to file a timely administrative complaint renders a plaintiff "ineligible for relief under

Sarbanes-Oxley." *Digital Realty Tr.*, 138 S. Ct. at 776 (citations omitted); *Newman*, 901 F.3d at

25-26 (internal quotation marks and citations omitted) ("In considering administrative exhaustion

requirements in similar statutes, we have held that such requirements are mandatory, though not

jurisdictional, and akin to a statute of limitations. Like a statute of limitations, unexcused non-

compliance with prescribed time limits of administrative remedies bars the courthouse door for a

would-be federal plaintiff.").

Here, Trivedi filed a complaint with OSHA[9] on May 3, 2014, 355 days after she was

terminated from GE Healthcare and well outside the 180-day filing deadline. (#51-3 at 56.) Having

---

[9] Of note, OSHA rejected the substance of Trivedi's complaint, writing that "[t]he OSHA Whistleblower Protection Program does not have jurisdiction over terminations due to reporting errors in medical device software, HIPAA, nationality and gender." (#51-3 at 56.)

failed timely and properly to exhaust her administrative remedies, plaintiff's claim for violation of the whistleblower protection provisions of the Sarbanes-Oxley Act should be dismissed.

Any contention that the claim is somehow preserved under a theory of equitable tolling, *see*, e.g., #51 ¶ 276, is without merit. Apart from her *pro se* status and purported lack of legal knowledge, Trivedi has alleged nothing more to suggest any "extraordinary circumstance" that impeded her ability to file her complaint with OSHA within 180 days of her termination. *See Pace*, 544 U.S. at 418; *Correia,* 2013 WL 6383107, at *3; *LaBadie,* 230 F. Supp.3d at 45.

### D. Count IV – refraining from intimidation or retaliation, 45 C.F.R. § 160.316, 45 C.F.R. § 164.530(g) (Health Insurance Portability and Accountability Act of 1996 (HIPAA) regulations).

Trivedi's claim under HIPAA regulations, 45 C.F.R. § 160.316 and 45 C.F.R. § 164.530(g), for intimidation or retaliation, should be dismissed because there is no private right of action for violation of HIPPA or its implementing regulations. *Miller v. Nichols*, 586 F.3d 53, 59 (1st Cir. 2009); *Amran v. Cowin*, No. CV 19-10454-DJC, 2019 WL 3530916, at *4 (D. Mass. Aug. 2, 2019) (citation omitted) ("There is no private right of action under Health Insurance Portability and Accountability Act of 1996, 29 U.S.C.A. § 1181 *et seq*. ("HIPAA")."); *Deluca v. Reliant Med. Grp.*, No. CV 18-40028-TSH, 2018 WL 6587621, at *4 (D. Mass. Oct. 4, 2018), *report and recommendation adopted*, No. 4:18-CV-40028, 2018 WL 6596223 (D. Mass. Nov. 16, 2018) (citation omitted) ("there is no federal private cause of action that arises from a violation of HIPAA"); *Muldoon v. Dep't of Correction*, No. 15-CV-13892-DJC, 2017 WL 506250, at *11 (D. Mass. Feb. 7, 2017).

### E. Count V – disparate treatment in violation of Title VII of the Civil Rights Act including retaliation, violation of Civil Rights Act of 1991, 42 U.S.C. § 2000e-3a.

Plaintiff identifies Count V as a discrimination and retaliation claim under Title VII. "Title VII requires an employee to file an administrative charge as a prerequisite to commencing a civil

action for employment discrimination." *Fantini v. Salem State Coll.,* 557 F.3d 22, 26 (1st Cir. 2009) (citing 42 U.S.C. § 2000e–5(f)); *Posada v. ACP Facility Servs., Inc*., 389 F. Supp.3d 149, 158 (D. Mass. 2019) (citation omitted) ("Both Title VII and Chapter 151B require an employee to exhaust the administrative process before filing a civil suit in court and failure to do so normally precludes the filing of that claim."). Trivedi does not allege in the amended complaint that she filed an administrative charge with the EEOC within 180 days of any alleged unlawful employment. *See* 42 U.S.C. § 2000e-5(e)(1). She has not submitted a copy of an administrative charge or a right-to-sue letter in her 900-plus pages of exhibits. *Franceschi v. U.S. Dep't of Veterans Affairs*, 514 F.3d 81, 85 (1st Cir. 2008) (citing 42 U.S.C. § 2000e–5(f)(1)) ("Administrative remedies [can]not be considered to [be] exhausted . . . until the EEOC issue[s] [the plaintiff] a right-to-sue-letter.").

"[I]n a Title VII case, a plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door." *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005) (citations omitted). Trivedi's "status as a *pro se* litigant does not relieve h[er] of h[er] obligation to comply with procedural and substantive law." *Harper v. Melendez*, No. CV 18-12137-FDS, 2019 WL 6307201, at *2 (D. Mass. Nov. 22, 2019) (citations omitted). Plaintiff's Title VII claims should be dismissed for failure to exhaust administrative remedies.

## F. Count VI – whistleblower protections for contractor employees, 10 U.S.C. § 2409.

The Defense Contractor Whistleblower Protection Act, 10 U.S.C. § 2409, provides, in relevant part:

> (1) A person who believes that the person has been subjected to a reprisal prohibited by subsection (a) may submit a complaint to the Inspector General of the Department of Defense, or the Inspector General of the National Aeronautics and Space Administration in the case of a complaint regarding the National Aeronautics and Space Administration. Unless the Inspector General determines that the

complaint is frivolous, fails to allege a violation of the prohibition in subsection (a), or has previously been addressed in another Federal or State judicial or administrative proceeding initiated by the complainant, the Inspector General shall investigate the complaint and, upon completion of such investigation, submit a report of the findings of the investigation to the person, the contractor concerned, and the head of the agency.

*****

(4) A complaint may not be brought under this subsection more than three years after the date on which the alleged reprisal took place.

10 U.S.C. § 2409(b)(1), (4).  Trivedi does not contend that she submitted a complaint within the limitation period. To the contrary, plaintiff admits that she failed to file a reprisal complaint with the Department of Defense (DOD) "until it was a little over/after three years." (#51 ¶ 463.) Plaintiff alleges that she submitted a complaint to the Inspector General for the DOD on August 19, 2016, more than three years after she was "subjected to reprisal," i.e., terminated, on May 31, 2013. *Id.* ¶ 466.[10]

Count VI should be dismissed as time-barred; plaintiff did not exhaust her administrative remedies in a timely manner. Trivedi's declared ignorance of law, *id.* ¶ 463 ("she was not aware of her rights to file [an] administrative complaint"), is an insufficient basis upon which to find that an extraordinary circumstance warrants the equitable tolling of her claim. *See Pace*, 544 U.S. at 418; *Correia*, 2013 WL 6383107, at *3.

G. <u>Count VII – relief available under Dodd-Frank Act,</u>
<u>12 U.S.C. § 5565(a), 12 U.S.C. § 5536, 12 U.S.C. § 5567.</u>

Under the Consumer Financial Protection Act, 12 U.S.C. § 5567, no "covered employee" may be "terminate[d] or in any other way discriminate[d] against" because such employee

provided, caused to be provided, or is about to provide or cause to be provided, information to the employer, the Bureau, or any other State, local, or Federal,

---

[10] Trivedi further alleges that the DOD Director of Investigations would not consider her complaint because it was filed outside the three-year statute of limitations. (#51 ¶ 466.)

> government authority or law enforcement agency relating to any violation of, or any act or omission that the employee reasonably believes to be a violation of, any provision of this title or any other provision of law that is subject to the jurisdiction of the Bureau, or any rule, order, standard, or prohibition prescribed by the Bureau.

12 U.S.C. § 5567(a)(1). By definition, "the term 'covered employee' means any individual performing tasks related to the offering or provision of a consumer financial product or service[.]" 12 U.S.C. § 5567(b). A "consumer financial product or service," which would include such things as "extending credit and servicing loans" or "checking cashing," *see* 12 U.S.C. § 5481(15)(A), is one "offered or provided for use by consumers primarily for personal, family, or household purposes[.]" 12 U.S.C. § 5481(5)(A).

In the amended complaint, plaintiff describes working as an engineer to develop and test software products that remotely communicated with medical devices such as "ultrasound, MRI, surgery, lunar, and radiology servers[,]" #51 ¶ 134, "medical products [that] were critical to the care of hospital patients." *Id.* ¶¶ 146, 424. Nothing alleged in the amended complaint suggests that Trivedi is a covered employee within the meaning of the statute. Plaintiff has no standing to bring a claim under Consumer Financial Protection Act, and Count VII should be dismissed.[11]

Alternatively, Trivedi's Consumer Financial Protection Act claim should be dismissed because she does not allege that she exhausted her administrative remedies under the statute by

---

[11] There is no private right of action to bring a direct claim under the Consumer Financial Protection Act. *See*, e.g., *Zubair v. Conedison Co. of NY*, No. 1:20-CV-1313 (LLS), 2020 WL 2857206, at *2 (S.D.N.Y. June 1, 2020) ("Courts within this Circuit have held that the CFPA provides no private right of action.") (listing cases); *Clayborn v. Walter Inv. Mgmt. Corp*, No. 18-CV-3452, 2019 WL 1044331, at *7-8 (N.D. Ill. Mar. 5, 2019) ("Plaintiff may not state a claim under the CFPA or EESA because neither statute provides her with a private right of action.") (listing cases).

timely filing a complaint with the Secretary of Labor.[12] *Hall v. Bank of Am. Corp.*, No. 18-CV-00108, 2019 WL 215617, at *6 (W.D.N.C. Jan. 16, 2019), *aff'd*, 765 F. App'x 33 (4th Cir. 2019).

H. Count VIII - prohibition of intimidation or retaliation, 8 U.S.C. § 1324.

Title 8 U.S.C. § 1324b prohibits unfair employment practices, such as termination of employment, because of an individual's national origin or immigration status. In pertinent part, the statute provides:

> It is also an unfair immigration-related employment practice for a person or other entity to intimidate, threaten, coerce, or retaliate against any individual for the purpose of interfering with any right or privilege secured under this section or because the individual intends to file or has filed a charge or a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section. An individual so intimidated, threatened, coerced, or retaliated against shall be considered, for purposes of subsections (d) and (g), to have been discriminated against.

8 U.S.C. § 1324b(a)(5). The statute further provides that "[n]o complaint may be filed respecting any unfair immigration-related employment practice occurring more than 180 days prior to the date of the filing of the charge with the Special Counsel." 8 U.S.C. § 1324b(d)(3). "An individual may initiate a private action only if the OSC [Office of Special Counsel] fails to file a complaint within 120 days of receiving a claim." *Weiss v. City Univ. of N.Y.*, No. 17-CV-3557 (VSB), 2019 WL 1244508, at *12 (S.D.N.Y. Mar. 18, 2019) (citing 8 U.S.C. § 1324b(d)(2); *Gen. Dynamics Corp. v. U.S.*, 49 F.3d 1384, 1385 (9th Cir. 1995)).

---

[12] The statute provides:
> A person who believes that he or she has been discharged or otherwise discriminated against by any person in violation of subsection (a) may, not later than 180 days after the date on which such alleged violation occurs, file (or have any person file on his or her behalf) a complaint with the Secretary of Labor alleging such discharge or discrimination and identifying the person responsible for such act.

12 U.S.C. § 5567 (c)(1)(A).

Trivedi does not allege that she filed a charge with the Special Counsel for Immigration-Related Unfair Employment Practices within 180 days of her termination from GE Healthcare.[13] She has not alleged that the Office of Special Counsel failed to file a complaint within 120 days of receiving her claim. In these circumstances, Trivedi has not exhausted her administrative remedies; her claim is time-barred and should be dismissed. *Weiss*, 2019 WL 1244508, at *12 ("Plaintiff does not allege that she filed a claim with the OSC and that OSC failed to file a complaint within 120 days; therefore, Plaintiff cannot initiate a private action under the statutes.").

I. <u>Count IX – breach of contract, breach of the implied covenant</u>
<u>of good faith and fair dealing and breach of fiduciary duty.</u>

These state law claims should be dismissed because they are time-barred. Massachusetts law incorporates a six-year statute of limitations for breach of contract claims, as well as breach of the implied covenant of good faith and fair dealing, which sounds in contract. *See* Mass. Gen. L. c. 260, § 2 ("Actions of contract, other than those to recover for personal injuries, founded upon contracts or liabilities, express or implied, . . . shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues."); *Feloni v. Coco*, No. CV 16-12178-GAO, 2019 WL 2387761, at *14 (D. Mass. Mar. 4, 2019) ("Under Massachusetts law, breach of contract and breach of covenant of good faith and fair dealing claims each have a six-year statute of limitations."); *Gideon v. Wells Fargo Bank, N.A.*, No. CV 19-12094-LTS, 2020 WL 1332838,

---

[13] Plaintiff alleges "I filed form to the Immigrant and Employee Rights Section (IER), formerly Office of Special Counsel for Immigration-Related Unfair Employment Practices in the Civil Rights Division of the U.S. Department of Justice." (#51 ¶ 497.) This general allegation does not suffice to support the timeliness of that charge. As the GE defendants observed, "Trivedi's allegation that she filed with the 'Immigration and Employees Rights Section' suggests that she was several years late [in filing because] . . . [i]t was only as of January 18, 2017 that the office was renamed from [the] way it is identified in the statute." (#73 at 20 n.12) (citation omitted).

at *2 (D. Mass. Mar. 23, 2020). Plaintiff was terminated on May 31, 2013, and she filed her complaint in this case on August 30, 2019, outside the applicable period of limitations.

The claim for breach of fiduciary duty sounds in tort and is subject to a three-year statute of limitations under Massachusetts law. *See* Mass. Gen. L. c. 260, § 2A ("[A]ctions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action accrues."); *Gideon*, 2020 WL 1332838, at *2 (citing *Passatempo v. McMenimen*, 293, 960 N.E.2d 275, 288 (Mass. 2012)). With the complaint being filed more than six years after her termination from GE Healthcare, this claim, too, falls outside the limitations period.[14]

J. Count X – 31 U.S.C. § 3729, *et seq*., and 31 U.S.C. § 3802, whistleblower reprisals.

Count X purports to allege a violation of the False Claims Act, 31 U.S.C. § 3729, *et seq*. As a pro se plaintiff, Trivedi may not pursue a *qui tam* claim. *Nasuti v. Savage Farms Inc*., No. 14-1362, 2015 WL 9598315, at *1 (1st Cir. Mar. 12, 2015) (citations omitted) ("[W]e agree that a pro se plaintiff cannot bring this [*qui tam*] action."); *U. S. ex rel. Lu v. Gamboa-Ruiz*, No. 1:18-CV-10105-IT, 2019 WL 608837, at *2 (D. Mass. Feb. 13, 2019) ("A pro se plaintiff cannot bring a *qui tam* action under First Circuit law."); *U.S. ex rel. Verrinder v. Wal-Mart Corp*., No. CA 13-11147-PBS, 2015 WL 898034, at *2 (D. Mass. Mar. 3, 2015) ("Because a relator pursues claims for which the United States is the real party in interest, he cannot proceed pro se."). Her retaliation

---

[14] The same outcome would result under Wisconsin law. *See* Wis. Stat. § 893.43(1) ("[A]n action upon any contract, obligation, or liability, express or implied . . . shall be commenced within 6 years after the cause of action accrues or be barred."); Wis. Stat. § 893.53 ("An action to recover damages for an injury to the character or rights of another, not arising on contract, shall be commenced within 3 years after the cause of action accrues, except where a different period is expressly prescribed, or be barred.").

claim is time-barred because it was not filed within three years of her termination from GE Healthcare. *See* 31 U.S.C. § 3730(h)(3) ("A civil action under this subsection may not be brought more than 3 years after the date when the retaliation occurred."); *U.S. ex rel. Dyer v. Raytheon Co.*, No. CIV.A. 08-10341-DPW, 2011 WL 3294489, at \*12 (D. Mass. July 29, 2011).

### K. Count XI – wrongful termination in violation of public policy.

The state law claim for wrongful termination in violation of public policy is a rehash of Trivedi's other claims, i.e., "Plaintiff's termination was in retaliation for Plaintiff's opposing and reporting illegal activity[.]" (#51 ¶ 548.) That said,

> The baseline common law rule in Massachusetts is that an employer may lawfully terminate a relationship with an at-will employee at any time - for any reason, for no reason, and even for a reason that might be seen by some as unwise or unkind. As a narrow exception, the Commonwealth protects at-will employees from terminations that conflict with sufficiently important and clearly defined public policies in Massachusetts. However, not all statutes relating to an employer's discharge decision are pronouncements of public policy that will protect, in every instance, an [at-will] employee from termination. Indeed, Massachusetts courts have acknowledged very few statutory rights the exercise of which would warrant invocation of the public policy exception. Thus far, the state's highest court has held that [r]edress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury).

> Beyond these categories, legal redress may be available in certain circumstances for employees terminated for performing important public deeds, even though the law does not absolutely require the performance of such a deed. This limited extension of the public policy exception aligns with the *Smith–Pfeffer* [*Smith–Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 533 N.E.2d 1368, 1371 (1989)] categories because allowing the employer to terminate employees for reasons that directly contradict the public policy of the Commonwealth would seriously impair that policy. By contrast, the public policy exception does not protect at-will employees from termination for performing generally socially desirable duties or for raising workplace complaints about internal company matters.

*Murray v. Warren Pumps, LLC*, 821 F.3d 77, 89-90 (1st Cir. 2016) (internal quotation marks and citations omitted);*U.S. ex rel. Karvelas v. Tufts Shared Servs., Inc*., 433 F. Supp.3d 174, 184-85 (D. Mass. 2019); *Elliott-Lewis v. Abbott Labs., Inc*., 411 F. Supp.3d 195, 208 (D. Mass. 2019).

Assuming without deciding that plaintiff has alleged a viable claim for wrongful termination within this exception, whether viewed as a contract claim or a tort claim, it is time-barred. Again, Trivedi commenced this action over six years after her termination from GE Healthcare, which puts her claim outside the longer six-year contract statute of limitations. *See* Mass. Gen. L. c. 260, § 2. Count XI should be dismissed.

L. Count XII – tampering with a witness, victim, or an informant, 18 U.S.C. § 1512, *et seq*., and retaliating against a witness, victim, or an informant, 18 U.S.C. § 1513, *et seq*.

There is no explicit private right of action under the federal criminal statutes for witness tampering and retaliation, 18 U.S.C. §§ 1512, 1513, nor could such a right be reasonably inferred. *Lundgren v. Universal Wilde*, 384 F. Supp.3d 134, 136 (D. Mass. 2019) ("[I]t is well-settled that criminal statutes do not provide a private cause of action.") (listing cases); *McNeil v. Bristol Cty. Prob*., No. CV 16-11712-FDS, 2017 WL 275601, at *2 (D. Mass. Jan. 20, 2017) (internal quotation marks and citations omitted) ("[A] private citizen has no authority to initiate a federal criminal prosecution, nor to seek other relief based on alleged violations of federal criminal statutes. In the context of claims based on federal statutes, the fact that a federal statute has been violated . . . does not automatically give rise to a private cause of action. Rather, [p]rivate rights of action to enforce federal law must be created by Congress. To demonstrate a private right of action, the plaintiff must show that a statute creates either an explicit private right of action or an implied private right of action."), *aff'd sub nom. McNeil v. Bristol Cty. Prob. & Family Court Div*., No. 17-1278, 2017 WL 4358825 (1st Cir. Sept. 7, 2017). Count XII should be dismissed.

M. Count XIII – 9 U.S.C. § 12 and 9 U.S.C. § 10
and challenging arbitration award under common law.

Trivedi's challenge to the arbitration award fails. The Federal Arbitration Act provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. The arbitration award in this case was dated August 11, 2014, and Trivedi received it that month. (#51 ¶ 219.) The objection to the award, in the form of complaint in this action, was filed on August 30, 2019, years after the three-month deadline. Count XIII is time-barred and should be dismissed. *E. Seaboard Const. Co. v. Gray Const., Inc*., 553 F.3d 1, 6 (1st Cir. 2008) ("Eastern did not within three months request modification of the award with respect to the denial of prejudgment interest, *see* 9 U.S.C. § 12, and therefore, it is bound by the award."); *Lobaito v. Chase Bank*, No. 11 CIV. 6883 PGG, 2012 WL 3104926, at *5 (S.D.N.Y. July 31, 2012) (quoting 9 U.S.C. § 12) ("Even construing the Complaint as a motion to vacate the arbitration award, however, [pro se plaintiff] is entitled to no relief, because any such motion would be time-barred. The Federal Arbitration Act ("FAA") provides that a '[n]otice of motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.'"), *aff'd*, 529 F. App'x 100 (2d Cir. 2013).

N. Count XIV – promissory estoppel and equitable estoppel.

Plaintiff's claims arise out of her employment with GE Healthcare in Wisconsin. Under a conflicts of law analysis, Wisconsin laws applies to the claims in Count XIV. *Abolhassani v. Advanced Polymers, Inc.*, No. CIV.A. 10910519-PBS, 2009 WL 3246117, at *2 n.2 (D. Mass. Oct. 2, 2009) (internal quotation marks and citations omitted).

Trivedi's claim for equitable estoppel should be dismissed because "equitable estoppel is a defense under Wisconsin law, not a cause of action[.]" *Olson v. Bemis Co.*, 800 F.3d 296, 306 (7th Cir. 2015) (citation omitted).

Again applying Wisconsin law, in order to state a claim for promissory estoppel, "a plaintiff must allege that (1) the promise is one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) the promise induced such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise." *Reif v. Assisted Living by Hillcrest LLC*, No. 18-C-884, 2018 WL 5810514, at *4 (E.D. Wis. Nov. 6, 2018) (citation omitted). In this case, there is no doubt that Trivedi was an at-will employee: she signed an acknowledgment of the conditions of employment at GE Healthcare, which provided that there was no "guarantee of employment for any specific period[,]" that she understood that her employment was "not for a fixed period of time," and that her "employment-at-will status may not be modified or changed except in a writing by a duly authorized officer of [GE Healthcare]." (#51-3 at 185.)

Plaintiff claims that in accepting employment with GE Healthcare, she relied on the company's promise that "in [the] future" it would file a PERM [Labor Certification] with the Department of Labor and pursue permanent residency status for her. (#51 ¶¶ 581, 583.) These "allegations do not give rise to that kind of promise [the kind that would support a viable estoppel claim] because the promises were too vague and general to constitute anything more than a typical at-will relationship." *Neville v. Ariens Co.*, No. 13-C-700, 2013 WL 6732123, at *3 (E.D. Wis. Dec. 19, 2013). Trivedi points to a September 20, 2011 email from David Mehring, wherein he asks her to confirm certain timing:

> You transferred from F-1 student status to H-1 in September 2007. H-1 visas have
> a mx date of 6 years which in your case is September 2013 (absent of any time you

> [have] spent outside the US during your 6 years in H-1 Status). This means we [GE Healthcare] would have to [sponsor] your green card immediately upon hire with the hope of filing PERM by September 2012 – which is very risky in the conditions of approvals and processing the Government is doing.

#51-3 at 146. Plaintiff responded to the email and suggested different options to pursue her immigration process. *Id*. at 145. After beginning her employment, Schrager advised Trivedi by email that Fragomen had "been authorized by GE to begin the process of assisting you in applying for permanent resident status[,]" and explained the process involved. *Id.* at 150-58. Plaintiff was specifically advised that "the application for Adjustment of Status or Immigrant Visa Processing on your behalf must be supported by a confirmation from the sponsoring employer that an offer of employment is still available to you." *Id*. at 153.

There are no allegations that any GE or Fragomen defendant made any definitive promise to Trivedi about her immigration process, or what the outcome of that process would be. In fact, the cited emails suggest the opposite. Plaintiff asserts that GE Healthcare did pursue the immigration process for her and, in fact, that the company "did get past the most difficult part of the green card process – the U.S. Department of Labor did certify a Labor Certificate Application for her (Immigration has approved Ms. Trivedi's petition as a person with exceptional ability/advanced degree individual.)" (#51 ¶ 525.) The process was halted when Trivedi was terminated.

Plaintiff has not alleged facts sufficient to support a claim of promissory estoppel under Wisconsin law. Count XIV of the amended complaint should be dismissed.

V. <u>Recommendation</u>.

For the reasons stated, I RECOMMEND that Defendants Fragomen, Del Rey, Bernsen & Loewy, LLP and Jenny Schrager's Motion to Dismiss the Amended Complaint (#68) be GRANTED.

VI. <u>Review by the District Judge</u>.

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within fourteen days of service of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Federal Rules Civil Procedure, shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

August 13, 2020                                    /s/ M. Page Kelley
                                                   M. Page Kelley
                                                   Chief United States Magistrate Judge